## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| FRESHUB, INC. and FRESHUB, LTD.,<br><br>               Plaintiffs,<br><br>     v.<br><br>AMAZON.COM, INC., a Delaware Corporation, AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation,<br><br>               Defendants. | Case No. 1:19-CV-00885-ADA<br><br><br>**PUBLIC VERSION** |

## MOTION TO EXCLUDE FRESHUB'S DAMAGES EXPERT MARCUS READING

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION -------------------------------------------------------------------- 1

II.   FACTUAL BACKGROUND ----------------------------------------------------------- 1

III.  ARGUMENT -------------------------------------------------------------------------- 4

     A.    Mr. Reading's reliance on irrelevant and unaccepted marketing
          presentations renders his opinions flawed and unreliable ---------------------------- 5

     B.    Mr. Reading improperly fails to perform any apportionment analysis ------------- 7

     C.    Mr. Reading impermissibly assumes a hypothetical negotiation date prior
          to the issue date of three of the asserted patents --------------------------------------- 9

IV.   CONCLUSION ----------------------------------------------------------------------- 10

# TABLE OF AUTHORITIES

***Cases:***                                                                                               ***Page(s):***

*Donnelly Corp. v. Gentex Corp.*,
    918 F. Supp. 1126 (W.D. Mich. 1996) ----------------------------------------------------------------- 7

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ----------------------------------------------------------------------- 4–5

*Finalrod IP, LLC v. John Crane, Inc.*,
    No. MO 15-CA-097-ADA (W.D. Tex.), Dkt. 372 (Transcript of Feb. 21, 2020
    Hearing) ("*Finalrod* Hrg. Tr.," attached as Ex. 17)-----------------------------------------------9–10

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)----------------------------------------------------------------- 3, 5

*IP Innovation L.L.C. v. Red Hat, Inc.*,
    705 F. Supp. 2d 687 (E.D. Tex. 2010) ---------------------------------------------------------------- 4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) --------------------------------------------------------------------- 7–9

*Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*,
    No. 17-269-RGA, 2019 WL 4198194 (D. Del. Sept. 4, 2019)------------------------------------- 9

*MiiCs & Partners, Inc. v. Funai Elec. Co., Ltd.*,
    No. 14-804-RGA, 2017 WL 6268072 (D. Del. Dec. 7, 2017) ------------------------------------- 6

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ----------------------------------------------------------------------- 7

*Riles v. Shell Exploration & Prod. Co.*,
    298 F.3d 1302 (Fed. Cir. 2002)--------------------------------------------------------------------- 4

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)--------------------------------------------------------------------- 9

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012) ----------------------------------------------------------------------- 6

*Wi-LAN Inc. v. LG Elecs., Inc.*,
    No. 18-cv-01577-H-BGS, 2019 WL 5681622 (S.D. Cal. Nov. 1, 2019) ------------------------ 6

***Other Authorities:***

Fed. R. Evid. 702 -------------------------------------------------------------------------------1, 4, 7, 10

## I.     INTRODUCTION

Freshub's damages expert Marcus Reading makes at least three fundamental errors in his damages report, each of which requires exclusion under Rule 702.  First, he bases his estimated royalty exclusively on proposed prices and commissions in marketing presentations of Freshub and its predecessor Ikan.  But these prices are irrelevant because no one actually paid the prices in the proposals; the proposals were created *years before* any of the patents issued; and the proposals are for unrelated products, not the asserted patents.  Second, Mr. Reading does not apportion his per-unit royalty, which he bases on proposed pricing for Ikan and Freshub products, to account for the irrelevant features of those products or for the admittedly non-accused features of the accused Amazon products.  Third, Mr. Reading assumes a single hypothetical negotiation, which would take place *before* three of the four asserted patents issued, and thus before the date of first alleged infringement of those patents.  He performs no analysis of the parties' negotiating positions as of the later patents' issue dates.  Mr. Reading's opinions are flawed, unreliable and must be excluded.

## II.     FACTUAL BACKGROUND

Freshub asserts four U.S. Patents:  Nos. 9,908,153 (the "'153 Patent"), 10,213,810 (the "'810 Patent"), 10,232,408 (the "408 Patent"), and 10,239,094 (the "'094 Patent") (collectively, the "Asserted Patents").  (Dkt. 30 (FAC) ¶¶ 15-27.)  The earliest of the patents, the '153 patent, issued on March 6, 2018.  (Ex. 1 ('153 patent).)[1]  The '810 patent, '408 patent, and '094 patent all issued a year later, on February 26, 2019, March 19, 2019, and March 26, 2019, respectively.  (Exs. 2-4.)  The asserted patents were each issued to Ikan Holdings LLC.  (Exs. 1-4.)  Freshub had no formal connection to Ikan and the asserted patents until mid-2019:  Ikan assigned the patents to Freshub in May 2019 and the companies completed a merger in June 2019.  (Ex. 5 (Assignment

---

[1] All exhibits refer to attachments to the Declaration of Ravi R. Ranganath.

Agreement), Ex. 6 (Press Release Announcing Merger).)

Freshub accuses the voice shopping functionality of Amazon's Alexa-enabled devices—Echo smart speakers, Fire TV streaming devices, and Fire tablet devices.  (Ex. 7 (Reading Report) ¶ 13.)  Amazon launched its Alexa virtual assistant and the first Echo device in late 2014, years before the earliest of the asserted patents issued.  (Ex. 8 (Bakewell Report) ¶ 31.)  The earliest models of the accused Fire tablet and Fire TV devices able to access Alexa were launched in September 2016 and October 2018, respectively.  (Bakewell Rep. ¶¶ 53, 57.)

Freshub served the damages report of its expert Marcus D. Reading on February 10, 2021. (Reading Rep.)  In his report, Mr. Reading states that Ikan developed a bar code scanning device, which it began to sell ████████████████████████████████████████████ ████████████████████████████████ Mr. Reading states, without identifying any source, that the Ikan bar code scanner had ████████████████████████████████ ███████████████████████████████ Mr. Reading also states, relying on another of Freshub's experts, that Freshub ██████████████████████████████ █████████████████████████████████████████████████

Mr. Reading opines that the hypothetical negotiation ██████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████ Mr. Reading opines that the royalty he estimates is not dependent on the specific parties involved in the negotiation:

████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

████████████████████████████████████████████

████ Mr. Reading does not separately analyze the bargaining positions of the parties as of the 2019 issue dates of the '810, '408, and '094 patents.

In performing his analysis under the *Georgia-Pacific* factors, Mr. Reading focuses almost exclusively on Ikan and Freshub marketing presentations and proposals.  ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████   ████████████

████████████████   The proposals are as follows:

- ████████████████████████████████████████

  ████████████████████████████████████████

- ████████████████████████████████████████

  ████████████████████████████████

- ████████████████████████████████████████

  ████████████████████████████████

- ██████████████████████████████████████████████

  ████████████████████████████

None of the presentations mentions the asserted patents or any other patents.  All but one of the presentations are dated before the earliest of the patents issued.  And all of the Freshub proposals are dated well before it took title to the asserted patents.  Mr. Reading cites no evidence that any of the offered prices in the proposals were ever accepted, and admitted in deposition that he had no such evidence.  (Ex. 16 (Reading Dep. Tr.) at 125:8-14; 160:23-161:15.)

Mr. Reading nevertheless concludes that ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████

## III.    ARGUMENT

"Under Rule 702 of the Federal Rules of Evidence, a court may permit opinion testimony from an expert only if such testimony 'will assist the trier of fact' and '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'"  *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 688-89 (E.D. Tex. 2010).  The testimony of damages experts in particular must be based on "sound economic and factual predicates."  *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002).  "[T]he ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more."  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226

(Fed. Cir. 2014).  "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product."  *Id.*

Mr. Reading's opinions must be excluded because:  (1) he relies on unaccepted offers that are untethered to the asserted patents; (2) he does not perform any apportionment of his claimed royalty for the accused devices; and (3) he improperly estimates damages based on a single hypothetical negotiation date occurring before three of the four asserted patents issued.

**A.      Mr. Reading's reliance on irrelevant and unaccepted marketing presentations renders his opinions flawed and unreliable.**



*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Mr. Reading's reliance on the proposals renders his analysis unreliable for at least two reasons.

First, there is no evidence that anyone ever paid the prices reflected in these presentations; Mr. Reading *admitted* as much:





Because no one actually paid the prices in the various Ikan and Freshub proposals, they cannot establish a customary price for the patented technology as a matter of law.[3] *See Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 29-30 (Fed. Cir. 2012) (vacating jury award and remanding in part because "the jury was presented with a royalty rate . . . based on a *proposed*, but unaccepted, license," noting that such evidence is of limited, if any, value because "patentees could artificially inflate the royalty rate by making outrageous offers") (emphasis in original); *MiiCs & Partners, Inc. v. Funai Elec. Co., Ltd.*, No. 14-804-RGA, 2017 WL 6268072, at *4 (D. Del. Dec. 7, 2017) (precluding expert using patentee's unaccepted licensing offer as a "starting point" for the reasonable royalty, finding that an "unaccepted offer has limited, if any, value for determining a reasonable royalty"); *Wi-LAN Inc. v. LG Elecs., Inc.*, No. 18-cv-01577-H-BGS, 2019 WL 5681622, at *7 (S.D. Cal. Nov. 1, 2019) (precluding damage expert from relying on patentee's license "rate sheet" where "there is no evidence in the record showing that anyone has ever agreed to one of the specific rates offered in [the] rate sheet").

Second, the Ikan and Freshub proposals on which Mr. Reading relies do not offer to license

---

[2] In his deposition, Mr. Reading testified that ████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

the asserted—or any other—patents.  Instead, they are offers for completely unrelated products and services.  The Ikan business plans describe a kitchen bar-code scanner.  (*See* Exs. 9-10.)  They do not mention voice shopping.  Indeed, Mr. Reading admits in his report that as of 2005, the date of the earlier of the two Ikan presentations, ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Moreover, both of the Ikan proposals are dated *over a decade* before the earliest of the patents issued.  The Ikan proposals thus cannot reflect the value of the asserted claims or the claimed voice shopping inventions.  The Freshub presentations fare no better.  Like the Ikan presentations, the Freshub presentations do not include an offer to license patents, let alone the asserted patents.  Three of the presentations are dated before the patents issued, and Freshub had no rights to the asserted patents, or the applications that led to them, until a year after the latest proposal.  They are not relevant to the reasonable royalty analysis.  *See, e.g.*, *Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1133-34 (W.D. Mich. 1996) (precluding testimony about agreements concerning "arguably noncomparable" products as evidence of "an industry standard").

Mr. Reading's reliance on the purported prices in the Ikan and Freshub proposals renders his opinion flawed and unreliable, and subject to exclusion.  Fed. R. Evid. 702.

**B.    Mr. Reading improperly fails to perform any apportionment analysis.**

Under Federal Circuit law, a reasonable royalty must "carefully tie proof of damages to the claimed invention's footprint in the marketplace."  *ResQNet.com, Inc. v. Lansa*, *Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).  To do so, damages experts are required to "separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features."[4]  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012)

---

[4] The entire market value rule, under which an expert need not perform an apportionment analysis, does not apply here.  Mr. Reading testified that the patented inventions do not drive

(internal quotation and citation omitted).  Mr. Reading does not perform this required analysis.

Mr. Reading admitted that the Ikan devices described in the 2005 and 2007 business plans included numerous features completely unrelated to the claimed voice shopping inventions, and that he made no attempt to separate out the value of these features from the prices in the proposals. (Reading Dep. Tr. 163:14-188:5



The accused Amazon devices *also* have numerous features having nothing to do with the claimed voice shopping inventions.  (Bakewell Rep. ¶¶ 45-59 (providing overview of accused Amazon products, and identifying non-accused features such as the ability to play games and apps and stream video and music).)  Mr. Reading agrees.  (Reading Dep. Tr. at 22:24-23:18, 32:24-33:5,  223:16-18 ███████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████   Mr. Reading also acknowledges in his report that ██████████

████████████████████████████████████████████████████████

███████████████████████   While Mr. Reading claims to have taken the non-accused features and contributions into account, he could identify no specific analysis he performed that would attempt to estimate the value contributed by the non-accused features of the accused products.[5]

---

demand for the accused Amazon products.  (Reading Dep. Tr. at 20:20-22:1); *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product.").

[5] Mr. Reading's failure to account for the numerous non-accused features of Amazon's Alexa-

(*Id.* at 27:8-12 (testifying that he had not done an apportionment analysis "in a quantitative way").)

Because Mr. Reading performed no apportionment analysis to reduce his claimed royalty rates for the accused devices, his analysis violates Federal Circuit law and must be excluded. *LaserDynamics, Inc.*, 694 F.3d at 67; *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, No. 17-269-RGA, 2019 WL 4198194, at *6 (D. Del. Sept. 4, 2019) (excluding testimony of damages expert who relied on a royalty rate for a "flat panel display" that "includes multiple technological components" and "failed to provide sufficient facts or reliable evidence that the proper apportionment of the value of the patented invention was inherent in the [] license"); *see also, e.g.*, *Finalrod IP, LLC v. John Crane, Inc.*, No. MO 15-CA-097-ADA (W.D. Tex.), Dkt. 372 (Transcript of Feb. 21, 2020 Hearing) ("*Finalrod* Hrg. Tr.," attached as Ex. 17) at 30:18-22 (excluding Mr. Reading because his "method of apportionment was not properly done").

## C.   Mr. Reading impermissibly assumes a hypothetical negotiation date prior to the issue date of three of the asserted patents.

Under black-letter patent law, the hypothetical negotiation occurs on the date of first alleged infringement. *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); *LaserDynamics*, 694 F.3d at 75. Here, because the accused products predated the asserted patents, the date of first alleged infringement is the date each patent issued:  March 6, 2018 ('153 patent), February 26, 2019 ('810 patent), March 19, 2019 ('408 patent), and March 26, 2019 ('094 patent). (Exs. 1-4 (Patents).)

Mr. Reading assumes that the hypothetical negotiation ████████████████████████████ ██████████████████████████████████████████████████████ While that is the date of first alleged infringement of the '153 patent, it is *not* the correct date for the

---

enabled devices is even more significant here because the accused voice shopping features are infrequently used, particularly on Fire TV and tablet products for which Alexa use is already low. (*See* Bakewell Rep. ¶¶ 128-140.)

remaining three patents, which issued a year later.  Mr. Reading opines in conclusory fashion that the outcome of the negotiation would be no different if Freshub, rather than Ikan, was at the hypothetical negotiation, but does not consider how the negotiation would have differed as of the later patent issue dates.  (*Id.*)  To meet the *Daubert* standard, Mr. Reading was required to perform a detailed analysis of the parties' negotiating positions as of the date of the negotiation—*i.e.* the date of first alleged infringement—considering among other things the specific patents being licensed and the specific products at issue.  Because Mr. Reading fails to perform this analysis, his testimony must be excluded.  Fed. R. Evid. 702.

This Court previously excluded Mr. Reading's testimony on substantially similar grounds in *Finalrod IP, LLC v. John Crane, Inc.*  There, the plaintiff accused two categories of accused products—one released on June 2015 and another released on November 2018.  (*Finalrod* Hrg. Tr. at 4:17-25.)  In estimating damages for the later product, the Series 300, Mr. Reading assumed a hypothetical negotiation date of June 2015 even though "there was no infringement possible under the Series 300 until November of 2018."  (*Id.* at 5:7-8.)  The Court granted the defendant's *Daubert* motion and excluded Mr. Reading's testimony with "respect to the use of an incorrect hypothetical negotiation date."  (*Id.* at 30:18-22.)  Here, just as in *Finalrod*, the accused products could not have infringed the '810, '408, or '094 patents until those patents issued in February and March 2019, yet Mr. Reading assumes the hypothetical negotiation as to those patents would have occurred a year earlier.  Just as in *Finalrod*, Mr. Reading's testimony is based on an incorrect negotiation date, and therefore must be excluded.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude the unreliable and legally improper damages opinions of Freshub's expert Mr. Reading.

Dated:  April 22, 2021

Respectfully submitted,

*Of Counsel:*

/s/ Ravi R. Ranganath

Barry K. Shelton (TX Bar #24055029)
bshelton@sheltoncoburn.com
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Tel: (512) 263-2165
Fax: (512) 263-2166

J. David Hadden, CSB No. 176148
dhadden@fenwick.com
Saina S. Shamilov, CSB No. 215636
sshamilov@fenwick.com
Todd R. Gregorian
tgregorian@fenwick.com
Ravi R. Ranganath, CSB No. 272981
rranganath@fenwick.com
Vigen Salmastlian, CSB No. 276846
vsalmastlian@fenwick.com
Allen Wang, CSB No. 278953
allen.wang@fenwick.com
Eric B. Young, CSB No. 318754
eyoung@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.5200

Deron R. Dacus (TX Bar #00790553)
ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705-1117
Fax: (903) 581-2543

*Counsel for Defendants*
*AMAZON.COM, INC., AMAZON.COM*
*SERVICES LLC, PRIME NOW, LLC, and*
*WHOLE FOODS MARKET SERVICES, INC.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 22, 2021, a copy of the foregoing was served via email on all counsel of record who are deemed to have consented to such service.

*s/ Ravi R. Ranganath*
Ravi R. Ranganath