**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| FRESHUB, INC., a Delaware Corporation, and FRESHUB, LTD., an Israeli Limited Liability Company,<br><br>         Plaintiffs,<br><br>   vs.<br><br>AMAZON.COM INC., a Delaware Corporation, AMAZON.COM SERVICES, LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation,<br><br>         Defendants. | Case No.: 6:21-cv-00511-ADA |

<u>**FINAL JOINT PRETRIAL ORDER**</u>

Plaintiffs Freshub, Inc. and Freshub, Ltd. ("Freshub") and Defendants Amazon.com Inc., Amazon.com Services, LLC, Prime Now LLC, (collectively, "Amazon") and Whole Foods Market Services, Inc. ("Whole Foods") (together, "Defendants") submit the following proposed Joint Pre-Trial Order pursuant to the Court's Order (Dkt. No. 89), the Court's Standing Order on Pre-Trial Procedures and Requirements in Civil Cases, Federal Rules of Civil Procedures, and Local Rules of this Court.  The parties have stipulated to various matters identified herein and having identified exhibits, witnesses, factual contentions and triable issues:

It is hereby ORDERED as follows:

## I.     APPEARANCE OF COUNSEL

### A.     Attorneys for Freshub

Paul J. Andre (Pro Hac Vice)
California Bar No. 196585
Lisa Kobialka (Pro Hac Vice)
California Bar No. 191404
James Hannah (Pro Hac Vice)
California Bar No. 237978
Christina M. Finn (Pro Hac Vice)
California Bar No. 247838
Melissa T.G. Brenner (Pro Hac Vice)
California Bar No. 316712
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
cfinn@kramerlevin.com
mbrenner@kramerlevin.com

Eileen Patt (Pro Hac Vice)
New York Bar No. 4695201
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
epatt@kramerlevin.com

John Palmer
Texas Bar No. 15430600
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76701
Telephone: (254) 755-4100
Facsimile: (254) 754-6331
palmer@namanhowell.com

**B.**     **Attorneys for Defendants**

Barry K. Shelton (TX Bar #24055029)
Bradley D. Coburn (TX Bar #24036377)
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Telephone: (512) 263-2165
Facsimile: (512) 263-2166
bshelton@sheltoncoburn.com
coburn@sheltoncoburn.com

J. David Hadden, CSB No. 176148
Saina S. Shamilov, CSB No. 215636
Ravi R. Ranganath, CSB No. 272981
Allen Wang, CSB No. 278953
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200
allen.wang@fenwick.com
dhadden@fenwick.com
sshamilov@fenwick.com
rranganath@fenwick.com
vsalmastlian@fenwick.com

Todd R. Gregorian, CSB No. 236096
Eric B. Young, CSB No. 318754
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94041
Telephone: (415) 875-2300
Facsimile: (415) 281-1350
tgregorian@fenwick.com
eyoung@fenwick.com

Deron R Dacus, CSB No. 790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: 903-705-1117
Facsimile: 903-581-2543
ddacus@dacusfirm.com

## II.   JOINT STATEMENT OF THE CASE

This is an action for patent infringement.  Freshub accuses Defendants of infringing:

- Claims 1 and 6 of U.S. Patent No. 9,908,153 ("the '153 Patent"),

- Claim 1 of U.S. Patent No. 10,213,810 ("the '810 Patent"), and

- Claims 20 and 30 of U.S. Patent No. 10,232,408 ("the '408 Patent")

by making, using, selling, offering for sale, and/or importing into the United States the Accused Products.  Freshub additionally alleges that Defendants' infringement is willful.  Freshub seeks damages of no less than a reasonable royalty for the foregoing infringement, together with interest and costs, as well as enhanced damages under 35 U.S.C. § 284 and attorneys' fees under 35 U.S.C. § 285.

Defendants deny that they infringed or infringe any of the Asserted Claims, and that any of their alleged infringement is willful.  Defendants further contend that the Asserted Claims are invalid under 35 U.S.C. §§ 101, 102, and/or 103, including, without limitation, because they are anticipated and/or rendered obvious by prior art, are directed to patent-ineligible subject matter, and fail the written description and enablement requirements.  Defendants further contend that the asserted patents are unenforceable due to inequitable conduct.  Defendants thus deny that Freshub is entitled to any relief whatsoever.  Defendants contend that this an exceptional case and will seek their reasonable attorneys' fees under 35 U.S.C. § 285.

## III.   CONTENTIONS OF THE PARTIES

### A.   Freshub's Contentions

1.      Freshub, Ltd. is a subsidiary of Ikan Holdings, LLC.  Ikan merged with Freshub, Ltd. and granted all rights, title, and interest in the patents in this case to Freshub, Ltd. Freshub Ltd. is the owner of the Asserted Patents.  Freshub, Ltd. granted a license to the patents to Freshub, Inc.

2.      Amazon is and has been aware of Freshub since at least as early as 2015.

3.      Freshub had discussions with Whole Foods over the course of several years from December 2014-2017.

4.      In early 2019, Amazon reached out to Freshub to arrange a meeting with Amazon's General Manager for Alexa Shopping, Rajiv Mehta.  Amazon's Head of Startup and Venture Capital Business Development in Israel organized a meeting on April 3, 2019, with Freshub's CEO Mr. Zohar and several Amazon employees, where Freshub described its technology, provided a video demonstration of its patented voice technology, and described the general subject matter of its patent portfolio.

5.      Defendants make, use, sell, offer for sale and import products that use Defendants' Alexa technology that are accused of infringing the Asserted Patents.  Defendants' products accused of infringement are as follows (collectively "the Accused Products"):

a)      The "Amazon Echo Products": Echo (Amazon Echo 1st Generation, Amazon Echo 2nd Generation, Amazon Echo 3rd Generation); Echo Plus (Amazon Echo Plus 1st Generation and Amazon Echo Plus 2nd Generation); Echo Dot (Amazon Echo Dot 1st Generation, Amazon Echo Dot/KEE Echo Dot 2nd Generation, and Amazon Echo Dot/KEE Echo Dot 3rd Generation); Amazon Echo Spot; Echo Show (Amazon Echo Show 1st Generation, Amazon Echo Show 2nd Generation, Echo Show 5, and Echo Show 8); Amazon Echo Input; and Amazon Echo Auto, all of which include Alexa.

b)      The "Amazon Fire TV Products":  Fire TV Cube (Amazon Fire TV Cube 1st Generation and Amazon Fire TV Cube 2nd Generation); and Fire TV Stick with Alexa Voice Remote (Fire TV Stick (1st Generation) in combination with Alexa Voice Remote (1st Generation), Fire TV Stick (2nd Generation) in combination with the Alexa Voice Remote

(2nd Generation for Fire TV Stick), Fire TV Stick 4k (3rd Generation) in combination with the Alexa Voice Remote (2nd Generation for Fire TV Stick), Fire TV Stick 4k (4th Generation) in combination with the Alexa Voice Remote (2nd Generation for Fire TV Stick)), all of which include Alexa.

c) The "Amazon Fire Tablets":  7" Fire Tablet5th Generation; 7" Fire Tablet 6th Generation; 7" Fire Tablet7th Generation; 7" Fire 9th Generation; 8" Fire HD Tablet 5th Generation; 8" Fire HD Tablet 6th Generation; 8" Fire HD 7th Generation; 8" Fire HD Tablet 8th Generation; 10" Fire HD Tablet 5th Generation; 10" Fire HD 7th Generation; and 10" Fire HD 9th Generation, all of which include Alexa.

6. Defendants infringe Claim 1 and 6 of the '153 Patent, directly or under the doctrine of equivalents, by making, using, selling and offering for sale the Accused Products in the United States.

7. Defendants infringe Claim 1 of the '810 Patent, directly or under the doctrine of equivalents, by making, using, selling and offering for sale the Accused Products in the United States.

8. Defendants infringe Claims 20 and 30 of the '408 Patent, directly or under the doctrine of equivalents, by making, using, selling and offering for sale the Accused Products in the United States.

9. Defendants' infringement has been and continues to be willful.

10. At no point in time did Defendants redesign the Accused Products in an attempt to avoid infringement of the Asserted Patents.

11.     Freshub has suffered damages in an amount to be determined at trial as a direct and proximate cause of Defendants' direct infringement, and is entitled to an award of damages adequate to compensate it for Defendants' infringement.

12.     Freshub is also entitled to enhanced damages for past and continued willful conduct, as well as an award of interest, costs, attorneys' fees and any other relief the Court deems equitable and just.

13.     Defendants' infringement and conduct justifies finding this dispute an exceptional case.

**B.     Defendants' Contentions**

Defendants do not infringe any asserted claim of the '153, '810, or '408 Patents, each asserted claim is invalid and directed to patent-ineligible subject matter, and the asserted patents are the but-for result of a misrepresentation on the Patent Office, and are thus unenforceable for inequitable conduct.  Freshub is not entitled to any relief it seeks.  Defendants further contend that:

1.     The Accused Products do not include each element of any asserted claim, whether literally or under the doctrine of equivalents, and therefore do not directly infringe as a matter of law;

2.     Defendants do not "make" or "use" the claimed systems under any infringement theory and thus do not and cannot infringe any claim of the asserted patents.

3.     Freshub has no evidence that any Whole Foods product or technology infringes any asserted claim;

4.     Each of the asserted claims of the asserted patents is directed to patent-ineligible subject matter under 35 U.S.C. § 101 and is therefore invalid;

5.     The asserted patents are unenforceable due to inequitable conduct;

6.      The undisputed public record reflects the following facts supporting a finding of inequitable conduct, including:

a.      On June 6, 2011, the Patent Office issued an Office Action rejecting the then-pending claims directed to a refrigerator with a camera that could recognize product images, and Ikan Technologies, Inc. did not respond to the Office Action by the stated deadline.

b.      On January 3, 2012, the Patent Office issued a notice of abandonment, received by Ikan Technologies, Inc.'s patent prosecution attorney, Mr. David Weiss.

c.      On December 4, 2012, Ikan Technologies, Inc. transferred its patent rights to Ikan Holdings LLC.  The transfer document was prepared by David Weiss and signed by Sony Douer, Ikan Holdings LLC's principle and named inventor on the Asserted Patents and the '291 Application.  The assignment document included a list of "Inactive/Abandoned/Expired" applications, which included the '291 application.

d.      On January 20, 2017, Ikan Holdings LLC petitioned the Patent Office to revive the '291 application.  In its petition, Ikan Holdings LLC represented that its abandonment of the '291 application was unintentional.

e.      The Patent Office granted Ikan Holdings LLC's petition to revive the '291 application on April 27, 2017.  The Patent Office's Decision on Petition states the following:

> This application has been abandoned for an extended period of time.  The U.S. Patent and Trademark Office is relying on petitioner's duty of candor and good faith and accepting the statement that 'the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137 was unintentional.'  See Changes to Representation of Others Before the United states Patent and Trademark Office, 73 Fed. Reg. 47650 (August 14, 2008), 1334 Off. Gaz. Pat. Office 338 (September 9, 2008) (applicant obligated under 37 CFR 11.18 to inquire into the underlying facts and circumstances when providing the statement required by 37 CFR 1.137 to the U.S. Patent and Trademark Office);

7.      Once revived, the '291 application issued as U.S. Patent No. 9,821,344 (the "'344 Patent");

8.      The '344 Patent is the parent patent to the Asserted Patents;

9.      Each asserted claim of each asserted patent is invalid because it is obvious in view of the prior art under 35 U.S.C. § 103;

10.     Each asserted claim of each asserted patent is invalid for failure to meet the written description and enablement requirements under 35 U.S.C. § 112;

11.     Defendants are not liable to Freshub under any cause of action or legal theory Freshub asserts;

12.     Freshub is not entitled to any of the recovery it seeks;

13.     Freshub is not entitled to any other costs, interests, or further relief;

14.     Freshub is not entitled to any damages, including but not limited to a reasonable royalty;

15.     Freshub is not entitled to an injunction;

16.     Freshub is not entitled to a finding of infringement;

17.     Freshub is not entitled to a finding of willful infringement;

18.     This case is exceptional; and

19.     Defendants are entitled to an order requiring Freshub to pay its costs and attorneys' fees reasonably incurred in defending this action.

By providing these contentions, Defendants do not concede that all of these issues are appropriate for jury trial or bench trial. Defendants also do not waive any of their pending or future motions which, if granted, would render some or all of these issues moot. Defendants' contentions in this case are detailed in part in their pleadings, discovery responses, expert reports, and motions,

including their motions for summary judgment, *Daubert* motions, motions to strike, and motions *in limine*.

## IV.    STIPULATED FACTS

The parties agree to the following stipulated facts:

1.      This Court has jurisdiction over the parties and all claims and defenses in this action.

2.      Freshub, Inc. is a Delaware corporation with its principal place of business at 29 South Third Street, Suite 1C, in Brooklyn, New York.  Freshub, Inc. is a wholly owned subsidiary of Freshub, Ltd.  Freshub, Ltd. is an Israeli limited liability company with its principal place of business in Giv'at Shmuel, Israel.  Freshub, Ltd. is a subsidiary of Ikan Holdings, LLC ("Ikan").

3.      Amazon.com, Inc. is a Delaware corporation which maintains its headquarters at 410 Terry Avenue North in Seattle, Washington.

4.      Amazon.com Services, LLC is a Delaware limited liability company and maintains its headquarters at 410 Terry Avenue North in Seattle, Washington.  Amazon.com Services, LLC is a wholly owned subsidiary of Amazon.com, Inc.

5.      Prime Now, LLC is a Delaware limited liability company and maintains its headquarters at 410 Terry Avenue North in Seattle, Washington.  Prime Now, LLC is a wholly owned subsidiary of Amazon.com, Inc.

6.      Whole Foods Market Services, Inc. is a Delaware corporation and maintains a principal place of business at 550 Bowie Street in Austin, Texas.  Whole Foods Market Services, Inc. is a wholly owned subsidiary of Whole Foods Market, Inc.

7.      On December 10, 2004, Provisional Application Serial No. 60/635,122 (the "'122 Application") was filed.

8.      On December 12, 2005, non-provisional Application No. 11/201,291 (the "'291 Application") was filed.

9.      The '153 Patent issued on March 6, 2018.

10.     The '810 Patent issued on February 26, 2019

11.     The '408 Patent issued on March 19, 2019.

12.     The Asserted Patents bear a common title: Systems and methods for scanning information from storage area contents.

13.     Ikan Holdings, LLC was the sole owner of the Asserted Patents at the time they were issued.  On June 19, 2019, Ikan Holdings, LLC merged with Freshub, Ltd.  As part of the merger, Freshub, Ltd. and Ikan Holdings, LLC entered into two agreements: An October 18, 2018 Shares Purchase Agreement and a May 14, 2019 IP Transfer Agreement.  Ikan Holdings, LLC assigned all rights to the Asserted Patents to Freshub, Ltd.  The assignment was recorded on June 24, 2019.

14.     On June 24, 2019, Freshub filed the Complaint asserting infringement of U.S. Patent No. 9,908,153 (the "'153 Patent"), U.S. Patent No. 10,213,810 (the "'810 Patent"), U.S. Patent No. 10,232,408 (the "'408 Patent"), U.S. Patent No. 10,239,094 (the "'094 Patent") (together, the "Asserted Patents").

## V.      DISPUTED ISSUES OF FACT AND LAW

The parties identify the following issues that remain to be litigated.  The parties reserve the right to identify additional factual or legal issues that may arise, including issues raised by any further discovery undertaken in this case, the Court's rulings on any pending motion, or ruling made at the pretrial conference in this action.  By providing this statement, the parties do not concede that all of these issues are appropriate for trial.  The parties also do not waive any of their pending motions.

### A.      Freshub's Positions

1.      Whether Defendants directly infringe Claims 1 and 6 of the '153 Patent.

2.      Whether Defendants directly infringe Claim 1 of the '810 Patent.

3.      Whether Defendants directly infringe Claims 20 and 30 of the '408 Patent.

4.      Whether Defendants' infringement has been and continues to be willful.

5.      Whether Freshub has suffered damages in an amount to be determined at trial as a direct and proximate cause of Defendants' direct infringement.

6.      What award of damages through trial should be awarded to Freshub to compensate for Defendants' direct infringement, which includes an accounting of sales and revenue information for any award for past damages, including pre-judgment and post-judgment interest.

7.      What award of damages after trial should be awarded to Freshub to compensate for continued infringement which is willful.

8.      Whether Defendants have proven by clear and convincing evidence that Claims 1 and 6 of the '153 Patent are invalid.

9.      Whether Defendants have proven by clear and convincing evidence that Claims 1 and 6 of the '153 Patent are not patent eligible.

10.     Whether Defendants have proven by clear and convincing evidence that Claims 1 and 6 of the '153 Patent are unenforceable.

11.     Whether Defendants have proven by clear and convincing evidence that infringe Claim 1 of the '810 Patent are invalid.

12.     Whether Defendants have proven by clear and convincing evidence that infringe Claim 1 of the '810 Patent are not patent eligible.

13.     Whether Defendants have proven by clear and convincing evidence that infringe Claim 1 of the '810 Patent are unenforceable.

14.     Whether Defendants have proven by clear and convincing evidence that Claims 20 and 30 of the '408 Patent are invalid.

15.     Whether Defendants have proven by clear and convincing evidence that Claims 20 and 30 of the '408 patent are not patent eligible.

16.     Whether Defendants have proven by clear and convincing evidence that Claims 20 and 30 of the '408 Patent are unenforceable.

**B.      Defendants' Position**

1.  Whether Defendants directly infringed or infringe any the asserted claims of the Asserted Patents under any theory including given that Freshub accuses only Defendants' devices and applications of infringement, yet maps elements of those claims to back-end components, services, and functionalities outside the accused devices and applications.

2. Whether Whole Foods directly infringed or infringes the asserted claims of the Asserted Patents under any theory including given that Freshub has mapped no Whole Foods product or technology to each and every limitation of any asserted claim nor identified any Whole Foods product or technology as accused or infringing.

3. Whether the accused Fire TV Devices directly infringe the asserted claims of the Asserted Patents, either literally or under the doctrine of equivalents, to the extent the Court allows any such theory.

4. Whether the accused Echo Devices directly infringed or infringe the asserted claims of the Asserted Patents, either literally or under the doctrine of equivalents, to the extent the Court allows any such theory.

5. Whether the accused Fire Tablet Devices directly infringed or infringe the asserted claims of the Asserted Patents, either literally or under the doctrine of equivalents, to the extent the court allows any such theory.

6. Whether the asserted claims of each of the Asserted Patents are invalid because they are directed to ineligible subject matter under 35 U.S.C § 101.

7. Whether the elements of the asserted claims, when taken individually or as an ordered combination, involve only activities which a person of ordinary skill in the art would have considered to be well-known, routine, and conventional as of the effective filing date.

8. Whether the asserted claims of each of the Asserted Patents are invalid under 35 U.S.C. §§ 103 (obviousness), and/or 112 (written description and enablement).

9.  Whether Freshub can prove that any alleged infringement by Defendants of any of the Asserted Patents by Defendants was willful.

10. Whether in accordance with *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1367 (Fed. Cir. 2011), the asserted claims reciting "configured to […]" require actual configuration, rather than the capability of being configured to perform a recited function.

11. Whether the asserted claims of the Asserted Patents are sufficiently described in Freshub's earliest claimed priority application, dated December 12, 2005.

12. Whether the claims of the Asserted Patents only issued because the Patent Office relied on material and intentional misrepresentations by Freshub's predecessor-in-interest, Ikan Holdings LLC or Ikan Technologies Inc. and their lawyer to revive the Asserted Patents' parent patent application, non-provisional Application No. 11/201,291 (the "'291 Application").

13. Whether Freshub is entitled to any damages, including, but not limited to, a reasonable royalty.

14. Whether any alleged damages are attributable to Whole Foods.

15. Whether Freshub is entitled to pre-judgment interest, and, if so, the dollar amount.

16. Whether Freshub is entitled to post-judgment interest and, if so, the dollar amount.

17. Whether Freshub is entitled to any enhanced damages.

18. Whether Freshub is entitled to any running royalty.

19. Whether Freshub is entitled to any injunctive relief.

20. Whether this case is exceptional.

21. Whether Defendants are entitled to an order requiring Freshub to pay its costs and attorneys' fees in defending against this action.

## VI.   EXHIBITS

A Joint Exhibit List, including documents identified by both parties and not objected to, is attached as **Exhibit A-1**.  Freshub's Exhibit List and Defendants' objections thereto are attached as **Exhibit A-2**.  Defendants' Exhibit List and Freshub's objections thereto are attached as **Exhibit A-3**.

## VII.   WITNESSES

Freshub's witness list for the jury trial, with Defendants' objections, is attached as **Exhibit B-1**.  Defendants' witness list for the jury trial, with Freshub's objections, is attached as **Exhibit B-2**.  Freshub's witness list for the bench trial regarding inequitable conduct, with Defendants' objections, is attached as **Exhibit B-3**.  Defendants' witness list for the bench trial regarding inequitable conduct, with Freshub's objections, is attached as **Exhibit B-4**.

## VIII.   DEPOSITION DESIGNATIONS

Freshub's deposition designations with Defendants' objections and counter-designations are attached as **Exhibit C-1**.  Defendants' deposition designations with Freshub's objections and counter-designations are attached as **Exhibit C-2**.

## IX.   STIPULATIONS AND TRIAL DISCLOSURES

The following stipulations were agreed upon by the parties as discussed below and are made a part of this Pretrial Order.

The parties agree to the following procedure which will govern the disclosure of witnesses, exhibits, deposition testimony and demonstratives to use at trial and the process to identify any objections remaining between the parties with regard to these disclosures:

### A.    Motions

All motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) may be brought to the Court orally or in writing.   Unless the Court sets alternative deadlines, all oppositions to motions filed pursuant to Fed. R. Civ. P. 50(b) must be filed within 28 days of the filing of the motion.  All replies in support of the motions must be filed within 21 days of service of any oppositions.  The parties reserve their right to seek reasonable extensions of these deadlines, subject to the Court's approval.

### B.    Exhibits

The Exhibit Lists set forth the parties' exhibits for their respective cases-in-chief; the lists do not include potential cross examination or impeachment exhibits that **[may or may not]** **[will not]** be introduced into evidence.  The parties reserve the right to offer exhibits for purposes of impeachment that are not included in the Exhibit Lists.

No later than **7:00 p.m.**[1] two (2) calendar days before their introduction (*i.e.,* Sunday evening for a witness to be called on Tuesday), counsel shall (1) provide opposing counsel with an identification of trial exhibits to be used on direct examination of each witness (both live and by deposition) and (2) make any non-documentary trial exhibits to be used with the witness available for physical inspection.  Any objections to the identified exhibits shall be provided no later than **7:00 p.m.** one (1) calendar day before the exhibits are proposed to be introduced and the parties shall meet and confer telephonically or in person in an attempt to resolve any

---

[1] All times noted herein are Central Time.

objections to the exhibits at **9:00 p.m.** the day the objections are provided.  The parties will continue in good faith to meet and confer regarding exhibits and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to the introduction of the exhibit.

The parties stipulate to the authenticity of each document that on its face appears to be generated by a party (plaintiff or defendant).  The parties reserve the right to add additional deposition designations to establish the foundation and authenticity of an exhibit to the extent the admissibility of a particular document is challenged.  Notwithstanding this stipulation, each party preserves its right to object to the document on any ground other than authenticity.  The Final Exhibit Lists must be filed by June 11, 2021.  Those Final Exhibit Lists shall not be supplemented without approval of all parties or leave of the Court upon a showing of good cause.

No exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit.  At some point before the completion of the witness's testimony, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence by exhibit number.  Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence.  Once admitted, counsel may publish exhibits to the jury without requesting to do so.  The parties may use each other's exhibits listed on the parties' respective exhibit lists attached hereto to the same effect as though it were on its own exhibit list, subject to all evidentiary objections.  However, another party's exhibit is not admissible by virtue of being on an exhibit list or over an objection; a party seeking to introduce another party's exhibit must still have a witness sponsor the exhibit into evidence as described above subject to any objections.

The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

Finally, legible copies of United States and foreign patents, the file prosecution histories of United States patents, published foreign patent applications, and certified translations thereof (if in English or translated into English) may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.

### C.     Witnesses

The parties agree to disclose the witnesses in the order that they will be called.  No later than **7:00 p.m.** two (2) calendar days before their introduction, counsel shall provide to opposing counsel the names and order of witnesses to be called (both live and by deposition).  Any objections to the identified witnesses shall be provided no later than **7:00 p.m.** the day before the witness is offered to testify and the parties shall meet and confer telephonically or in person in an attempt to resolve any objections to the witnesses at **9:00 p.m.** the day the objections are provided.  If counsel intends to change the order of witnesses or the matter of presentation of witness testimony (*i.e.* by live video feed) due to a COVID-19 pandemic-related disruption, they shall notify the other side immediately according to the parties' agreement regarding how to deal with such disruptions, set forth below in the undisputed portions of section XV.  The parties will continue in good faith to meet and confer regarding exhibits and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to the introduction of the exhibit.

Fact witnesses are not to be allowed into the courtroom before they testify on the stand. The only exception is the parties' client representative, who will be allowed in the courtroom even if testifying in the case.

**D.      Deposition Testimony[2]**

For any witnesses whose testimony Freshub intends to present by deposition on the first day of trial, it shall identify a list of deposition designations to be played or read to the jury by **5:00 p.m.** on Friday, June 11.  Defendants shall provide objections and counter-designations by **7:00 p.m.** on Saturday, June 12.  Going forward, the parties shall identify a list of deposition designations to be played or read to the jury by **7:00 p.m.** two (2) calendar days before the designations are to be played or read to the jury.  Any objections and counter-designations shall be provided no later than **3:00 p.m.** the day before the designations are to be played or read to the jury.  Any objections to counter-designations shall be provided no later than **7:00 p.m.** the day the counter-designations are provided.  The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony, and remove any attorney objections, and provide a final version of the deposition testimony excerpts (testimony clip report) to the other party by **7:00 p.m.** the day before it is to be shown to the jury.  If the party intends to read the deposition testimony into the record instead of playing the video, the party shall state that in writing by **7:00 p.m.** the day before the testimony is to be introduced.  The parties shall meet and confer at **9:00 p.m.** the day before the deposition testimony is to be shown to the jury in an attempt to resolve any objections to the deposition.  The parties will continue in good faith to meet and confer regarding the proposed deposition testimony

---

[2] To the extent permitted by the Federal Rules of Evidence and rulings from the Court, the parties agree that depositions may be used at trial whether or not the transcripts of such depositions have been signed and filed as set forth in Federal Rule of Civil Procedure 30(b).

and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to presenting the proposed testimony.[3]

Any deposition testimony not specifically identified on a party's deposition designation list may still be used at trial for the purposes of impeachment, if otherwise competent for that purpose. When a party uses deposition testimony for impeachment, the party may elect to either play the deposition testimony by video or to read the deposition testimony live, unless the Court orders otherwise.  All designated deposition testimony may be played by video or may be read live in court.  The parties agree that any counter-designations, to which the other party did not object or to which the Court overruled the objection, will be included in the reading or video playing of deposition designations.  To the extent that the trial is subject to specific time limitations, the time available for each party's trial presentation shall count against the length of its designated and counter-designated testimony read or played. The designations and counter-designations must be presented in the order they appear in the transcript.  All colloquy between counsel and objections will be eliminated when deposition testimony is presented at trial.  Demonstrative Exhibits

### E.    Demonstrative Exhibits

Demonstrative exhibits that the parties intend to use at trial need not be included on the parties' respective exhibit lists.   Demonstratives exchanged per the procedure below will not be used by an opposing party prior to being used by the disclosing party.

If a party intends to create a demonstrative during the opening statement itself, a mock-up of such demonstrative conveying all the details and substance of the demonstrative to be created during the opening statement must be disclosed at the same time as the other opening statement

---

[3] This procedure does not apply to any previously admitted witness deposition testimony the parties intend to present during the closing statements.

demonstratives.  The parties shall exchange copies of all documentary, graphic, slide, animation, and any other form of demonstratives, such as prototypes, that they plan to use at trial during direct examination, but not for cross-examinations, by **7:00 p.m.** one (1) calendar day before their anticipated use.  Any physical demonstratives, including any poster boards, must be made available for inspection at the same time and photos or electronic images of the physical demonstratives must be disclosed at the same time along with the other demonstratives.

Any objections to the demonstrative exhibits shall be provided by **8:00 p.m.** the day before their anticipated use.  The parties shall meet and confer telephonically in an attempt to resolve any objections to the demonstratives at **9:00 p.m.** the day the objections are provided.  The parties will continue in good faith to meet and confer regarding the proposed demonstratives and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to presenting the proposed testimony.

Demonstratives exchanged will not be used by an opposing party prior to being used by the disclosing party.

### F.    Disclosures for Opening Statements

Any demonstratives (documentary, graphic, slide, animation, mock-ups to be created during opening statements with detail regarding their substance, and any other form of demonstratives), deposition testimony, and exhibits to be used during opening statements are to be exchanged by **10 a.m.** one day before the opening statements.  Any physical demonstratives, including any poster boards, must be made available for inspection at the same time and physical demonstratives must also be made available for inspection at the same time along with the other demonstratives.

Any objections to the opening statement disclosures must be provided by **1:00 p.m.** the day the disclosures are received.  The parties shall meet and confer telephonically in an attempt to resolve any objections to these disclosures at **4:00 p.m.**  If the parties cannot resolve the objections, the unresolved issues will be raised with the Court in the morning, before opening statements are presented to the jury.  Demonstratives exchanged will not be used by an opposing party prior to being used by the disclosing party.

### G.    Stipulations Regarding Subject Matter Not To Be Presented To the Jury

The parties have stipulated to the following:

1.    There will not be any testimony, argument or evidence presented that is contrary to the Court's claim construction.

2.    There will not be any testimony, argument, or evidence presented regarding how Freshub is currently financed as a company or any Freshub attorney fee agreements.  For the avoidance of any doubt, nothing herein prevents Defendants from presenting evidence, testimony or argument about Freshub and Ikan's financial situations generally and/or regarding the efforts of Freshub and Ikan to secure funding.

3.    There will not be any testimony, argument, or evidence regarding whether the Western District is a popular venue for the purpose of forum shopping.

4.    There will not be any testimony, argument, or evidence disparaging the Patent Office and its Examiners.  This, however, does not prevent the parties from presenting any testimony, evidence, or argument going to the merits or relevance of any analysis by the Patent Office or Examiner during prosecution of the Asserted Patents or related patents.

5.    There will not be any lay witness opinions, or argument or evidence of lay witness opinions.

6.      There will not be any testimony, argument, or evidence about the possibility that damages could be enhanced.

7.      There will not be any testimony, argument, or evidence suggesting that the possibility of damages would have a negative impact on a party, such as lead to the increase in pricing of Defendants' products, lead to the loss of jobs and/or put manufacturers out of business.

8.      There will not be any testimony, argument, or evidence regarding settlement communications or negotiations between the parties, or the lack thereof.

9.      There will not be any testimony, argument, or evidence regarding any withdrawn, non-asserted, or dismissed claims or defenses.

10.      There will not be any testimony, evidence, or expert opinions from experts not disclosed in expert reports.

11.      There will not be any testimony, argument, or evidence regarding alleged prior art that is not specifically mentioned in Dr. Johnson's report.  Dr. Johnson can testify about the state of the art, but only with respect to art mentioned in his report.

12.      There will not be any testimony, argument, or evidence disparaging any of the parties and witnesses.  Disparaging comments about Amazon include, but are not limited to, personal information of Jeff Bezos or other Amazon executives (e.g. marriage, politics, etc.), discussion about labor disputes, unionization, warehouse conditions, payment of taxes, market power or monopoly power of Amazon.  Disparaging comments about Freshub include but are not limited to alluding or suggesting that it or its parent are 'not real companies' or are a 'patent troll' or similarly derogatory term.

13.      There will not be any testimony, argument, or evidence that Freshub or its damages expert, Mr. Reading, improperly relied on "keyword sales."

14.     There will not be any attempt to use the COVID-19 pandemic or related conditions against any party or its witnesses, or how any party structures its trial presentation (*i.e.*, through use of video testimony).

15.     There will be no testimony, argument, or evidence of pretrial discovery or other litigation disputes between the parties.

16.     There will be no evidence, argument, or testimony comparing the standard for removing a child from her parents under Texas law to the clear and convincing standard necessary to prove invalidity under the patent laws.

17.     There will be no evidence, argument, testimony, or reference regarding a purported pattern or practice by Amazon of meeting with smaller companies and stealing their technology.

**H.      Handling of Source Code and Confidential Material.**

The parties agree to request that the courtroom be sealed when a party's confidential information, including source code or evidence concerning highly sensitive business documents, testimony, or information is expected to be presented.

Regarding source code, the Protective Order allows for creating "an electronic image of a selected portion of source code for documents filed electronically with the Court or used during trial." Dkt. No. 72, para. 12(f).  The parties agree that for purposes of trial this includes creating an electronic image of the entirety of Freshub's and Defendants' printed hard copy source code in order to pre-mark the electronic copy as an exhibit.  The parties agree that only the specific code files or source code pages discussed at trial may be offered into evidence to become part of the record, not the entirety of the printed source code hard copies during fact discovery or their electronic image.  Once the trial is complete, the parties may retain a file copy of the admitted

version of the source code trial exhibit(s), but any other digitized source code should be deleted. A hard copy of the source code may be retained subject to the provisions of the Protective Order.

For the avoidance of any doubt, any presentation of the parties' source code in open court requires sealing of the court room.

## X.   PROPOSED JURY INSTRUCTIONS

The parties' joint and disputed proposed preliminary jury instructions are attached as **Exhibit D-1** and the joint and disputed proposed charge instructions are attached as **Exhibit D-2**. The final agreed preliminary jury instructions are attached as Exhibit **D-3**.

## XI.   LIST OF PENDING MOTIONS

The following motions remain pending:

- Defendants' Motion *in Limine* No. 6 to exclude reference to Whole Foods, including any pre-suit meetings between Plaintiffs/Ikan and Whole Foods; and

- Defendants' Motion for Summary Judgment of Invalidity (specifically, the basis—*Alice* Step 1 and/or Step 2—for the Court's denial of Defendants' motion for summary judgment of invalidity for failure to claim patent-eligible subject matter under 35 U.S.C. § 101).

## XII.   PROPOSED *VOIR DIRE*

The parties' joint proposed *voir dire* questions are attached as **Exhibit E-1**.  The parties' disputed proposed juror questionnaire is attached as **Exhibit E-2**.  The final juror questionnaire is attached as **Exhibit E-3**.  The voir dire has already concluded.

## XIII.   VERDICT FORM

Freshub's proposed verdict form is attached as **Exhibit F-1**.  Defendants' proposed verdict form is attached as **Exhibit F-2**.

## XIV.   DISPUTED MOTIONS *IN LIMINE*

Freshub's Motions *in Limine* are attached as **Exhibits G-1 through G-2**.  Defendants' Motion *in Limine* is attached as **Exhibit G-3**.  The parties filed their oppositions to these motions on May 7, 2021.

The parties' Motions *in Limine* were addressed at the continued Final Pre-trial Conference on May 27, 2021.  A separate proposed order has been submitted to the Court.  The Court has decided all the motions other than the still pending Defendants' Motion *in Limine* No. 6 as identified above.

## XV.   PROCEDURE FOR POTENTIAL COVID-19 WITNESS DISRUPTIONS

The Parties agree that, in the event any witness that is scheduled and disclosed to appear live to testify, becomes unable to do so due to COVID-19 illness or travel restrictions, the witness may be called via live videoconference.  To the extent that any party intends to offer testimony in this fashion, it will notify opposing counsel as soon as it becomes aware of the issue and provide a revised order of witness appearance if necessary.  In the event that a previously and properly disclosed witness is unavailable (as defined in Fed. R. Civ. P. Rule 32) to give live testimony in person or by video due to COVID-19 illness or travel restrictions, his or her deposition testimony will be permitted as a substitute.

## XVI.   LENGTH OF TRIAL

The length of trial will be 13 hours per side.  This time will not include opening statements and closing arguments, which are each limited to thirty (30) minutes per side.  A party may use an additional fifteen (15) minutes for closing arguments, so long as the party has reserved that time from its 13 hour total.  The 13 hours per side is also inclusive of the separate bench trial on inequitable conduct to be conducted immediately after the jury trial concludes.

This Joint Pre-Trial Order is hereby approved this ___ day of _____, 2021.


_____
Hon. Alan D. Albright
United States District Judge

Date: June 11, 2021

Respectfully submitted,

*/s/ Ravi R. Ranganath*
Barry K. Shelton (TX Bar #24055029)
Bradley D. Coburn (TX Bar #24036377)
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Telephone: (512) 263-2165
Facsimile: (512) 263-2166
bshelton@sheltoncoburn.com
coburn@sheltoncoburn.com


J. David Hadden, CSB No. 176148
Saina S. Shamilov, CSB No. 215636
Ravi R. Ranganath, CSB No. 272981
Allen Wang, CSB No. 278953
Vigen Salmastlian, CSB No. 276846
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200
allen.wang@fenwick.com
dhadden@fenwick.com
sshamilov@fenwick.com
rranganath@fenwick.com
vsalmastlian@fenwick.com


Todd R. Gregorian, CSB No. 236096
Eric B. Young, CSB No. 318754
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94041
Telephone: (415) 875-2300
Facsimile: (415) 281-1350
tgregorian@fenwick.com
eyoung@fenwick.com


Deron R Dacus, CSB 790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: 903-705-1117
Facsimile: 903-581-2543

*/s/ Lisa Kobialka*
Paul J. Andre (*Pro Hac Vice*)
California Bar No. 196585
Lisa Kobialka (*Pro Hac Vice*)
California Bar No. 191404
James Hannah (*Pro Hac Vice*)
California Bar No. 237978
Christina M. Finn (*Pro Hac Vice*)
California Bar No. 247838
Melissa T.G. Brenner (*Pro Hac Vice*)
California Bar No. 316712
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
cfinn@kramerlevin.com
mbrenner@kramerlevin.com


Eileen Patt (Pro Hac Vice)
New York Bar No. 4695201
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
epatt@kramerlevin.com


John Palmer
Texas Bar No. 15430600
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76703
Telephone: (254) 755-4100
Facsimile: (254) 754-6331
palmer@namanhowell.com

*Attorneys for Plaintiffs,*
Freshub, Inc. and Freshub, Ltd.

ddacus@dacusfirm.com

*Attorneys for Defendants* Amazon.com, Inc.,
Amazon.com Services, LLC, Prime Now
LLC, and Whole Foods Market Services, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 11, 2021, the foregoing document was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send a Notice of Electronic Filing on all counsel of record for all other parties who have appeared in this action on the date of such service.

*/s/ Lisa Kobialka*
Lisa Kobialka