# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

|  |  |
|---|---|
| FRESHUB, INC. and FRESHUB, LTD., | Case No. 6:21-CV-00511-ADA |
| Plaintiffs, | |
| v. | |
| AMAZON.COM, INC., a Delaware Corporation, AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation, | |
| Defendants. | |

### PLAINTIFFS FRESHUB, INC. AND FRESHUB, LTD.'S PRELIMINARY PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW REGARDING INEQUITABLE CONDUCT

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

John Palmer
Texas Bar No. 15430600
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76703
Telephone: (254) 755-4100
Facsimile: (254) 754-6331
palmer@namanhowell.com

*Attorneys for Plaintiffs,*
FRESHUB, INC. and FRESHUB, LTD.

Dated: June 15, 2021

## INTRODUCTION

In accordance with the Court's Standing Order on Pretrial Procedures and Requirements in Civil Cases, Plaintiffs Freshub, Inc. and Freshub, Ltd. (collectively, "Freshub") provide the following preliminary proposed findings of fact and conclusions of law on Defendants' alleged inequitable conduct defense.[1]

Defendants cannot meet their burden of proving by clear and convincing evidence a material misrepresentation made with a specific intent to deceive the Patent Office, and have in fact presented no evidence supporting this baseless claim.  Ikan properly revived its '291 Application in early 2017, which matured into the parent to the Asserted Patents in this case.[2]  Ikan promptly followed the Patent Office's established revival procedure when it realized it had inadvertently missed responding to a final office action that caused the Patent Office to deem the application abandoned in 2012.

Based on unsupported conjecture alone, Defendants attempt to suggest that the affirmation submitted with the revival petition was a material misrepresentation filed with the intent to deceive the Patent Office.  The affirmation under penalty of perjury submitted with Ikan's petition to revive confirmed that the '291 Application was unintentionally abandoned and there was no intent to deceive the Patent Office.  Indeed, Ikan's prosecution counsel David Weiss, a seasoned patent prosecutor and managing partner at Knobbe Martens LLP, satisfied himself after an investigation that the abandonment was unintentional in accordance with his duty of candor to the Patent Office.

---

[1] "Defendants" collectively refers to Amazon.com, Inc., Amazon.com Services LLC, Prime Now, LLC, and Whole Foods Market Services, Inc.

[2] Contrary to Defendants' Preliminary Proposed Findings of Fact and Conclusions of Law, the Asserted Patents in this case are U.S. Nos. 9,908,153 ("the '153 patent"), 10,213,810 ("the '810 patent"), and 10,232,408 ("the '408 patent").  Defendants improperly included U.S. Patent No. 10,239,094, which is not part of this case, and should be omitted from any findings of fact and conclusions of law that the Court may make.  *See* Dkt. No. 219 at 4 (Final Joint Pretrial Order).

Defendants simply have no evidence that Ikan intentionally abandoned the '291 Application or that Mr. Weiss or Ikan specifically intended to deceive the Patent Office with the revival petition. Thus, the Court should adopt Freshub's proposed findings of fact and conclusions of law as set forth below and find no inequitable conduct occurred.

Freshub does not agree to any findings of fact or conclusions of law as presented in Defendants' proposed findings of fact and conclusions of law, provided to the Court on June 11, 2021, by email.  Freshub reserves the right to supplement or amend these preliminary findings of fact and conclusions of law, and to rely on additional and subsidiary facts and evidence at the bench trial on inequitable conduct, when it submits its final proposed findings of fact and conclusions of law in accordance with the Court's Standing Order.  To the extent any finding of fact is deemed a conclusion of law, Freshub incorporates it into its conclusions of law, and vice versa.

## FINDINGS OF FACT

**A.      The '291 Application was Inadvertently Abandoned**

1.      The parent patent to the Asserted Patents is U.S. Patent No. 9,821,344 (the "'344 Patent").

2.      The application for the '344 Patent was filed by Ikan Technologies, Inc., on December 12, 2005, as U.S. Serial App. No. 11/301,291 (the "'291 Application").

3.      Ikan prosecuted the '291 Application using the firm Knobbe Martens LLP ("Knobbe") with partner, David Weiss, over the course of the following 6 years.

4.      Mr. Weiss is the managing partner of Knobbe's Los Angeles Office and has over 25 years of experience as a patent attorney.

5.      On June 6, 2011, the Patent Office issued a Final Rejection.

6.      Ikan inadvertently did not respond to the Final Rejection.

7.     The Patent Office considered the '291 Application to be abandoned as of January 3, 2012.

8.     Ikan did not realize that the prosecution of the '291 Application had lapsed.

**B.     There Was an Unintentional Delay Between the Patent Office Issuing Its Notice of Abandonment and Ikan Filing Its Revival Petition**

9.     In 2011, Ikan shut down some of its public-facing operations.

10.    Ikan laid off its formal employees in 2011.

11.    Ikan consistently prosecuted its patent portfolio, including patents related to facilitating easy and convenient in-home shopping, with Mr. Weiss to protect its inventions, making express abandonment of the '291 Application inconsistent with Ikan's general practice.

12.    Despite the changes to its business, Ikan maintained its focus on protecting its intellectual property from 2011 onward.

13.    During the time that the '291 Application was abandoned, Ikan was prosecuting unrelated patents which would not raise the issue of the abandonment of the '291 Application.

14.    Ikan was a small company and there is no evidence of what systems, if any, it had in place to monitor patent prosecution.

15.    All communications relating to the '291 Application through January 2012 were only between Knobbe and Ikan inventors Messrs. Zsigmond and Wagner.

16.    Ikan's CEO and inventor Sion ("Sony") Douer was not included on any communications with Knobbe regarding the prosecution of the '291 Application before October 2016.

17.    Knobbe did not provide any information directly to Mr. Douer about the '291 Application during its prosecution, at the time of the abandonment, or at the time of the rejection.

18.     After January 2012, there were no communications regarding the '291 Application until October 2016.

19.     Revival efforts for the '291 Application began with Mr. Weiss in 2016.

20.     There is no evidence of a deliberate decision abandon the '291 Application or instruction to Mr. Weiss not to respond to the Final Rejection.

21.     There is no evidence of a deliberate decision to delay submitting a revival petition for the '291 Application.

22.     On January 20, 2017, Ikan filed a procedurally compliant petition to revive the '291 Application, which included the inadvertently missed response to the Final Rejection, the required petition fee, and a statement under penalty of perjury that the entire delay in filing the required response from the due date for the response until the filing of the petition was unintentional.

**C.     Ikan Technologies Assigned All Its Patent Assets to Ikan Holdings**

23.     In December 2012—more than a year after Ikan Technologies had shut down some of its public-facing operations and almost a year after Knobbe's last communication to Messrs. Zsigmond and Wagner—Mr. Douer signed an assignment to transfer a number of patent assets.

24.     The assignment merely moved these assets from Ikan Technologies to another Ikan company, Ikan Holdings, for $1.00.

25.     Mr. Weiss oversaw the preparation of the assignment document, not Ikan.

26.     The assignment document contains several charts spanning two pages reflecting numerous patents and patent applications from various countries.

27.     The assignment document lists the '291 Application in a chart with the ambiguous title "Inactive/Abandoned/Expired Applications," which lists numerous patent applications of mixed status from around the world.

28.     The assignment has a typographical error fully obscuring the country of origin for the '291 Application.

29.     There is no indication as to whether the '291 Application is inactive, abandoned, or expired.

30.     There is no definition of the statuses "inactive," "abandoned," or "expired," or whether there is even any difference between them.

31.     Mr. Weiss testified that he could not speak as to Mr. Douer's state of mind.

32.     There is no evidence as to what Mr. Douer did or did not understand about any particular asset based on the document.

33.     There is no evidence that Mr. Douer intended to issue a deliberate instruction to Mr. Weiss as to what to do with any specific asset listed in the assignment.

34.     There is no evidence that Mr. Douer intended anything other than to assign patent assets as a matter of course from one Ikan entity to another.

**D.     Mr. Weiss Properly Investigated to Confirm the Abandonment and the Time Elapsed Before Revival was Unintentional**

35.     Mr. Weiss is an experienced patent attorney and affirmed that he acts in accordance with his duty of candor and with the rules of the Patent Office.

36.     Mr. Weiss understood that he had a duty to make an inquiry into the facts before submitting the revival petition.

37.     Mr. Weiss understood that the Manual of Patent Examining Procedure ("MPEP") defines an intentional abandonment as a directed course of action resulting in abandonment, which is consistent with the actual language of MPEP § 711.03(c) that an intentional abandonment occurs when "the applicant deliberately permits an application to become abandoned" and that a

"deliberately chosen course of action" resulting in abandonment will prevent a delay from being deemed unintentional.

38.     Mr. Weiss put his patent bar license on the line in submitting the affirmation of unintentionality with the revival petition.

39.     When Knobbe and Ikan resumed communications relating to the '291 Application in October 2016, Mr. Douer was included on the correspondence related to the '291 Application prosecution for the first time.

40.     On October 21, 2016, in addition to Mr. Douer, Mr. Weiss began including Mr. Zsigmond (who had previously worked on the prosecution of the '291 Application) on the resumed communications between Knobbe and Ikan.

41.     Mr. Weiss considered the assignment between the Ikan entities as part of his investigation into the unintentionality of the abandonment and found it immaterial.

42.     Mr. Weiss determined the assignment was not evidence of an intent to abandon the '291 Application.

43.     Mr. Weiss had two ways to confirm an abandonment was unintentional: reviewing his correspondence with the client and checking with the docketing department.

44.     Mr. Weiss properly affirmed under oath that the abandonment and the entire period of delay before the revival petition was unintentional when he filed the petition.

**E.     The Patent Office Properly Granted Ikan's Revival Petition**

45.     The Patent Office considered Ikan's January 20, 2017 petition to revive the '291 Application.

46.     The Patent Office acknowledged the length of the period of unintentional delay and did not request any further information from Ikan, although it had the discretion to do so.

47.     Petitions for revival are not simply rubberstamped by the Patent Office.   For example, the Patent Office only granted 69 percent of revival petitions for unintentional delay from January 2020 to January 2021.

48.     There is no evidence of any procedural deficiency or issue with Ikan's revival petition.

49.     In 2017, including additional statements regarding the circumstances of the unintentional delay was not common practice because it was not required.

50.     The Patent Office generally does not require further information and states in granted petitions that it relies upon the applicant's duty of candor and good faith in accepting the statement of unintentionality.

51.     From the perspective of the Patent Office, there was no evidence indicating that the petition should not be granted.

52.     The Patent Office granted Ikan's revival petition on April 20, 2017.

## CONCLUSIONS OF LAW

**A.     There is No Material Misrepresentation to the Patent Office**

1.     To prove inequitable conduct, Defendants must show by ***clear and convincing evidence*** that "the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (citation omitted).

2.     The Federal Circuit's decision in *Therasense* heightened the standard for inequitable conduct to eradicate claims brought "on the slenderest grounds" that "plagued not only the courts but also the entire patent system." *Id.* at 1289 (citations omitted).

3.     Ikan certified to the Patent Office under penalty of perjury that its abandonment was unintentional, under which circumstances the Patent Office permits applicants to revive an

abandoned application.   37 C.F.R. § 1.137(a) ("If the delay in reply by applicant . . . was unintentional, a petition may be filed pursuant to this section to revive an abandoned application"). Defendants have not identified evidence of any procedural deficiency in Ikan's petition.

4.      The Manual of Patent Examining Procedure defines an intentional abandonment as one "'[w]here the applicant ***deliberately permits*** an application to become abandoned (e.g., due to a conclusion that the claims are unpatentable, that a rejection in an Office action cannot be overcome, or that the invention lacks sufficient commercial value to justify continued prosecution) . . . [that is a] deliberately chosen course of action, and the resulting delay cannot be considered as 'unintentional' . . . ." MPEP § 711.03(c) (citing *In re Application of G*, 11 U.S.P.Q.2d 1378, 1380 (Comm'r Pat. 1989)) (emphasis added).

5.      Ikan's petition was procedurally compliant and properly granted.

6.      Defendants have not identified any ***evidence***—documents, testimony, or any other evidence—relating to a deliberately chosen course of action to abandon.

7.      The assignment transferring assets from one Ikan entity to another as a matter of course does not demonstrate that Ikan knew that the '291 Application specifically was abandoned and it did not constitute a deliberate instruction to Mr. Weiss to abandon the application.

8.      Abandonment "is not rendered unintentional when, upon reconsideration, the applicant changes his or her mind as to the course of action that should have been taken." M.P.E.P. § 711.03(c), (II)(C)(1) (citation omitted).

9.      In addition to no evidence of a deliberate decision, Defendants have not identified any ***evidence***—documents, testimony, or any other evidence—relating to a change of mind.

10.     Delaying revival "by a deliberately chosen course of action, until the industry or a competitor shows an interest in the invention is the antithesis of an 'unintentional' delay." *Id.* at (II)(D).

11.     Defendants have not identified any ***evidence***—documents, testimony, or any other evidence—relating to any consideration of industry or competitor interest in patent prosecution decisions.  To the extent Defendants concede that Amazon demonstrated its interest in Ikan and Ikan's voice shopping technology, Amazon demonstrated that interest in 2010 before the release of its first Echo and while the '291 Application was active, and that interest has no link to Ikan's revival efforts beginning in 2016.

12.     That the Patent Office accepted the statement of unintentionality and did not require further information evidences that from the perspective of the Patent Office, there was nothing in the record before it to suggest a purported material misrepresentation.

13.     Thus, there was no material misrepresentation to the Patent Office because Ikan and Mr. Weiss accurately affirmed to the Patent Office that the entire period of abandonment was unintentional, and there is no evidence supporting Defendants' allegations to the contrary.

**B.      There is No Specific Intent to Deceive**

14.     Since there was no material misrepresentation, the Court need not consider intent to deceive.  *Scanner Techs. Corp. v. ICOS Visim Sys. Corp.*, 528 F.3d 1365, 1375-76 (Fed. Cir. 2008) (reversing inequitable conduct based on erroneous finding that an affirmation to the PTO was somehow misleading, when there was an "equally reasonable inference" that prosecutor complied with PTO regulations in good faith).

15.     Regardless, Defendants have not proven intent to deceive.

16.     To heighten the standard for inequitable conduct, the Federal Circuit specified that "[i]ntent and materiality are separate requirements."  *Therasense,* 649 F.3d at 1290 (citation

omitted).  "A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa.  Moreover, a district court may not infer intent solely from materiality."  *Id.*

17.    Proof of intent requires clear and convincing evidence that "the specific intent to deceive must be the ***single most reasonable inference*** able to be drawn from the evidence."  *Id.* (emphasis added) (quotation omitted).

18.    If "several reasonable inferences, all just as likely as the inference [of intent to deceive]" can be supported by the evidence, then a finding of no inequitable conduct is appropriate. *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 695 (E.D. Tex. 2014) (finding no inequitable conduct where the evidence provided for "several reasonable inferences, all just as likely as the inference [of intent to deceive]"); *see also Therasense*, 649 F.3d at 1290-91 (if more than one reasonable inference can be drawn from the facts, there can be no finding of intent to deceive).

19.    "[T]he 'patentee need not offer any good faith explanation unless the accused infringer first ... prove[s] a threshold level of intent to deceive by clear and convincing evidence' … The absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive."  *Therasense,* 649 F.3d at 1291 (quoting *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1368 (Fed. Cir. 2008)).

20.    Mr. Weiss was not aware of any deliberate decision to abandon the '291 Application and did not have evidence to suggest to him that Mr. Douer knew the '291 Application was abandoned—Mr. Weiss concluded that the assignment document does not demonstrate otherwise.

21.     Mr. Weiss confirmed that he understood his obligation to make a reasonable inquiry and considered the assignment document, properly finding that it did not demonstrate an intentional abandonment.

22.     Mr. Weiss testified under oath that he conducted an investigation to confirm the affirmation of unintentionality was correct.

23.     Mr. Weiss' investigation is further evidenced by the fact that prior to the filing of the revival petition, he had multiple communications with Ikan, and specifically brought back into these communications Mr. Zsigmond who *had* been involved in the prosecution previously, through January 2012.

24.     Mr. Weiss thus complied with his duty of candor and good faith to the Patent Office and there was no reason not to grant the petition to revive.

25.     "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Therasense,* 649 F.3d at 1290 (citation omitted).

26.     Defendants' contention that Mr. Weiss' investigation came to the wrong conclusion cannot constitute evidence of an intent to deceive; at most, Defendants have asserted negligence.

27.     The receipt of a Notice of Abandonment itself does not evidence an intent to deceive—such a contention is inconsistent with the Patent Office's permission to file petitions for revival.

28.     A delay between the inadvertent abandonment and subsequent revival does not evidence an intent to deceive, nor does submission of a compliant petition that does not contain extra information regarding the circumstances of the unintentional abandonment that was neither required nor customary.

29.     The fact that Ikan actively prosecuted other applications, including ones related to in-home shopping, further shows that the "single most reasonable inference" cannot be that Ikan would intentionally single out and abandon an application like the '291 Application which is squarely within its technology space.

30.     Thus, there is no evidence supporting an intent to deceive, which cannot be reasonably inferred from the facts of this case, much less proven by clear and convincing evidence to be the single most reasonable inference.  Rather, the reasonable inference based on the facts is that the '291 Application was forgotten and unintentionally permitted to become abandoned, which precludes a finding of inequitable conduct.

## C.     The Asserted Patents are Valid and Enforceable

31.     The Court need not address Defendants' defense regarding the Asserted Patents, as Defendants have no inequitable conduct allegations specific to the Asserted Patents and have not proven inequitable conduct with respect to their parent patent.

32.     Inequitable conduct in the prosecution of a parent does not automatically render unenforceable other patents in the same patent family unless there is an immediate and necessary relation between "an unconscionable act that occurs during the prosecution of one patent has an immediate and necessary relation to the equity sought in the prosecution of another patent." *Hoffmann-La Roche, Inc. v. Promega Corp*, 319 F. Supp. 2d 1011, 1017 (N.D. Cal. 2004) (rejecting motion to hold patents unenforceable under the doctrine of infections enforceability because while inequitable conduct occurred during the prosecution of one patent, defendant failed to demonstrate an immediate and necessary relation to subsequent patents).  Immediate and necessary relation is a high standard.  *See id*. at 1021 (similarity in subject matter does not suffice to constitute an immediate and necessary relation); *see also Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998) ("[W]here the claims are subsequently separated from those

tainted by inequitable conduct through a divisional application, and where the issued claims have no relation to the omitted prior art, the patent issued from the divisional application will not also be unenforceable due to inequitable conduct committed in the parent application.").

33.     Here, there is no unconscionable act and Defendants do not even attempt to address (much less satisfy) their burden of proving immediate and necessary relation.

## **CONCLUSION**

Freshub respectfully requests the Court adopt its proposed findings of fact and conclusions of law as set forth above.

Respectfully submitted,

Dated: June 15, 2021

By: */s/ Lisa Kobialka*
Paul J. Andre (*Pro Hac Vice*)
Lisa Kobialka (*Pro Hac Vice*)
James Hannah (*Pro Hac Vice*)
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile:  (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

John Palmer
Texas Bar No. 15430600
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76703
Telephone: (254) 755-4100
Facsimile: (254) 754-6331
palmer@namanhowell.com

*Attorneys for Plaintiffs,*
FRESHUB, INC. and FRESHUB, LTD.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 15, 2021, the foregoing document was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send a Notice of Electronic Filing on all counsel of record for all other parties who have appeared in this action on the date of such service.

*/s/ Lisa Kobialka*

Lisa Kobialka
