# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

|  |  |
|---|---|
| FRESHUB, INC. and FRESHUB, LTD., | |
| Plaintiffs, | |
| v. | Case No. 6:21-CV-00511-ADA |
| AMAZON.COM, INC., a Delaware Corporation, AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation, | |
| Defendants. | |

## DEFENDANTS' RULE 50(A) FOR JUDGMENT AS A MATTER OF LAW

# TABLE OF CONTENTS

**Page**

I.   THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF
     LAW AS TO WHOLE FOODS. ........................................................................1

II.  FRESHUB PRESENTED NO EVIDENCE OF WILLFUL
     INFRINGEMENT..........................................................................................1

III. FRESHUB PRESENTED NO EVIDENCE OF INFRINGEMENT
     UNDER THE DOCTRINE OF EQUIVALENTS ("DOE"). ...................................3

IV.  THE EVIDENCE AT TRIAL CANNOT SUPPORT A DAMAGES
     VERDICT. .................................................................................................4

     A.   Freshub's expert failed to apportion damages to the accused
          technology...........................................................................................4

     B.   Freshub's proposed royalty rate had no record support.............................5

     C.   Freshub's proposed form of a running reasonable royalty had no
          record support. ...................................................................................6

     D.   Freshub used an incorrect hypothetical negotiation date.............................6

V.   FRESHUB FAILED TO PROVIDE SUFFICIENT EVIDENCE OF
     LITERAL INFRINGEMENT. ...........................................................................7

     A.   Freshub failed to provide sufficient evidence that the accused
          devices meet the "digitized order" limitation ('153 patent, claims
          1, 6; '810 patent, claim 1; '408 patent, claim 20). ...................................7

     B.   Freshub failed to provide sufficient evidence that the accused
          devices "identify an item corresponding to the text" ('153 patent
          claims 1, 6) when a user creates a shopping list via Alexa.........................8

     C.   Freshub failed to provide sufficient evidence that the accused
          devices "match[]… text… to a text description" ('408 patent
          claims 20, 30) or "use the text… to identify an item corresponding
          to the text description" ('810 patent claim 1) when a user adds
          roducts to shopping cart via Alexa............................................................9

     D.   The accused devices do not contain the server-side "non-transitory
          memory" ('153 patent claims 1 and 6; '810 patent claim 1; '408
          patent claim 30) or practice any server-side steps ('408 patent
          claim 20). ........................................................................................10

i

## TABLE OF CONTENTS
## (CONTINUED)

Page

E.    Defendants cannot infringe under the Federal Circuit's *Centillion* precedent ('153 patent claims 1, 6)...........................................................10

VI.    THE ASSERTED PATENTS FAIL TO CLAIM PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101....................................................12

VII.    THE PATENTS ARE INVALID UNDER 35 U.S.C. § 112. ...............................14

A.    The asserted patents lack written description. ...........................................14

B.    The asserted patents are not enabled...........................................................16

VIII.    THE ASSERTED PATENTS ARE INVALID UNDER 35 U.S.C. § 103............17

A.    Nuance OMS in combination with Partovi and HeyAnita in combination with Partovi render obvious claim 1 of the '153 patent.........................................................................................................18

B.    Nuance OMS in combination with Partovi and HeyAnita in combination with Partovi render obvious claim 6 of the '153 patent.........................................................................................................20

C.    Nuance OMS in combination with Partovi and HeyAnita in combination with Partovi render obvious claim 20 of the '408 patent.........................................................................................................20

D.    Nuance OMS in combination with Partovi and HeyAnita in combination with Partovi render obvious claim 30 of the '408 patent.........................................................................................................21

E.    Nuance OMS in combination with Partovi and Kuhn and HeyAnita in combination with Partovi and Kuhn render obvious claim 1 of the '810 patent...........................................................................................21

F.    The record lacks evidence of secondary considerations sufficient to overcome the strong prima facie case of obviousness. .............................23

# TABLE OF AUTHORITIES

**CASES**                                                                                                         **PAGE(S)**

*AK Steel Corp. v. Sollac,*
   344 F.3d 1234 (Fed. Cir. 2003)........................................................................................16

*Alice Corp. v. CLS Bank International,*
   573 U.S. 208 (2014)........................................................................................................12

*Am. Home Assurance Co. v. United Space All.,*
   378 F.3d 482 (5th Cir. 2004) .........................................................................................1

*Apple, Inc. v. Ameranth, Inc.,*
   842 F.3d 1229 (Fed. Cir. 2016).....................................................................................12

*Ariad Pharms, Inc. v. Eli Lilly & Co.,*
   598 F.3d 1336 (Fed. Cir. 2010) (en banc).....................................................................14

*Bayer HealthCare LLC v. Baxalta Inc.,*
   989 F.3d 964 (Fed. Cir. 2021)....................................................................................1, 2

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.,*
   631 F.3d 1279 (Fed. Cir. 2011)...........................................................................7, 10, 11

*Cephalon, Inc. v. Watson Pharm., Inc.,*
   707 F.3d 1330 (Fed. Cir. 2013).....................................................................................16

*ChargePoint, Inc. v. SemaConnect, Inc.,*
   920 F.3d 759 (Fed. Cir. 2019).......................................................................................13

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC,*
   958 F.3d 1178 (Fed. Cir. 2020).....................................................................................12

*Ericsson, Inc. v. D-Link Sys., Inc.,*
   773 F.3d 1201 (Fed. Cir. 2014)....................................................................................4, 5

*Finalrod IP, LLC v. John Crane, Inc.,*
   No. 15-CA-097-ADA, Dkt. 372 ...................................................................................4, 7

*Gemalto S.A. v. HTC Corp.,*
   754 F.3d 1364 (Fed. Cir. 2014).......................................................................................3

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
   136 S. Ct. 1923 (2016)................................................................................................1, 2

*Intell. Ventures I LLC v. Symantec Corp.,*
   234 F. Supp. 3d 601 (D. Del. 2017)................................................................................2

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)..........................................................................5, 6

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)..........................................................................4

*MagSil Corp. v. Hitachi Global Storage Techs., Inc.*,
    687 F.3d 1377 (Fed. Cir. 2012)........................................................................16

*Oiness v. Walgreen Co.*,
    88 F.3d 1025 (Fed. Cir. 1996)............................................................................4

*Quake v. Lo*,
    928 F.3d 1365 (Fed. Cir. 2019)........................................................................14

*Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996)............................................................................3

*UCB, Inc. v. Watson Labs. Inc.*,
    927 F.3d 1272 (Fed. Cir. 2019)..........................................................................3

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)..........................................................................4

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)..........................................................................6

*VOIT Techs., LLC v. Del-Ton, Inc*,
    No. 5:17-CV-259-BO, 2018 WL 385188 (E.D.N.C. Jan. 11, 2018), *aff'd*,
    757 F. App'x 1000 (Fed. Cir. 2019) ................................................................12

*W. Union Co. v. MoneyGram Payment Sys.*,
    626 F.3d 1361 (Fed. Cir. 2010)........................................................................23

*Wavetronix LLC v. EIS Elec. Integrated Sys.*,
    573 F.3d 1343 (Fed. Cir. 2009)..........................................................................3

*Weyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010)........................................................................23

*White Consol. Indus. v. Vega Servo-Control*,
    713 F.2d 788 (Fed. Cir. 1983)..........................................................................16

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Whitserve, LLC v. Computer Packages, Inc.*,
 694 F.3d 10 (Fed. Cir. 2012)..................................................................5

*Williams v. Manitowoc Cranes, LLC*,
 898 F.3d 607 (5th Cir. 2018) ................................................................1

**STATUTES**

35 U.S.C. § 101........................................................................12, 13

35 U.S.C. § 103................................................................................17

35 U.S.C. § 112................................................................................14

35 U.S.C. § 271(a) ...........................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50(a) .......................................................................1

## INTRODUCTION

Defendants Amazon.com, Inc., Amazon.com Services LLC, Prime Now, LLC, and Whole Foods Market Services, Inc. ("Defendants") respectfully move under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law.[1]

## I.     THE COURT SHOULD GRANT JUDGMENT AS A MATTER OF LAW AS TO WHOLE FOODS.

Freshub failed to present any evidence of infringement by Whole Foods; no expert witness mapped any elements of any asserted claim to any technology provided by Whole Foods; and Mr. Reading (Freshub's damages expert) did not opine that Freshub is entitled to damages from Whole Foods.  The only testimony Freshub offered was its expert's bare statement that the Whole Foods application "absolutely" "uses Alexa."  (Tr. Tx. at 350:22-351:5.)  But the Whole Foods application undisputedly *has no voice shopping capability.*  (Tr. Tx. at 757:2-22.)  Whole Foods cannot possibly infringe and is entitled to judgment on both liability and damages.  *See* Dkt. 103 at 15-16.

## II.    FRESHUB PRESENTED NO EVIDENCE OF WILLFUL INFRINGEMENT.

Liability for willful infringement requires specific intent: it depends on a defendant's *subjective* awareness that it is infringing a valid patent.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016); *Bayer HealthCare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021) ("the accused infringer [must have] specific intent to infringe at the time of the challenged conduct").  Moreover, knowledge of the patents is "necessary, but not sufficient" for willfulness.

---

[1]     Judgment as a matter of law is proper "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a); *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 614 (5th Cir. 2018).  The Court should grant Defendants' motion unless there is "substantial evidence" in support of each essential element of Freshub's claims.  *See Am. Home Assurance Co. v. United Space All.*, 378 F.3d 482, 487 (5th Cir. 2004).

*Id.* at 988.  It requires conduct that is "wanton, malicious, and bad-faith behavior required for willful infringement."  *Id.* (quoting *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019)).  Willfulness is reserved for "egregious cases of misconduct beyond typical infringement" and are *not* to be awarded "in garden-variety cases."  *Halo*, 136 S. Ct. at 1935.

Freshub presented no willful infringement case to the jury.  First, Freshub presented no evidence that Defendants had pre-suit knowledge of the asserted patents—Freshub's attorneys did not ask Amazon's witnesses a single question about this topic.  In its case in chief, Freshub presented evidence of pre-suit contacts between Amazon and Ikan and Whole Foods and Freshub (*see* Tr. Tx. 159:23-164:18; 191:7-202:8), but these occurred *years before* the asserted patents were even filed and, thus, unsurprisingly, not a single witness in Freshub's case-in-chief testified that Amazon or Whole Foods had knowledge of the asserted patents, nor did Freshub elicited any such testimony during cross-examination of Amazons witnesses.  No reasonable jury could find that Defendants had the knowledge of the patents before this lawsuit was filed and had the intent necessary to infringe them willfully.

Second, Freshub failed to present that any alleged post-suit infringement was "wanton," "malicious," and beyond "garden variety" infringement.  *Halo*, 136 S. Ct. at 1935-36; *Bayer*, 989 F.3d at 987.  Amazon developed and released the accused products *years before* the asserted patents were filed and while the parent '344 *application* (not any issued patent) was abandoned and thus dedicated to the public.  (Tr. Tx. 114:2-22; 357:22-360:17; 540:11-22.)  Merely continuing to produce and sell the accused products after the lawsuit was filed does not establish willfulness.  *See Intell. Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 612 (D. Del. 2017) (finding no willfulness as a matter of law).  Freshub adduced no evidence beyond the fact that it brought a lawsuit and Amazon

chose to defend itself.  That is not enough to create a jury question.[2]

## III.   FRESHUB PRESENTED NO EVIDENCE OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ("DOE").

Freshub failed to present sufficient testimony on any DOE theory at trial.  To prove DOE infringement, the plaintiff must prove either that the differences between the accused devices and claim elements are "insubstantial" or that "*on a limitation-by-limitation basis* that the accused product performs substantially the same function in substantially the same way with substantially the same result as *each claim limitation* of the patented product."  *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1360 (Fed. Cir. 2009) (emphasis added); *UCB, Inc. v. Watson Labs. Inc.*, 927 F.3d 1272, 1284 (Fed. Cir. 2019); *Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1374 (Fed. Cir. 2014).  With either approach, a plaintiff must "provide particularized testimony and linking argument."  *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996); *Gemalto*, 754 F.3d at 1374.

Here, Freshub: (1) presented no evidence at all concerning DOE infringement for the '810 and '408 patents; and (2) presented only its expert's bare conclusions for a single claim limitation ("identify") from the '153 patent—Dr. Medvidovic testified only in a conclusory fashion that that accused products met the function/way/result test for the "identify" limitation of claims 1 and 6, without any documentary evidence, or particularized testimony analyzing the actual operation of the system or explaining any differences and why they are insubstantial.  (Tr. Tx. at 308:19-309:17.)  Under Federal Circuit law, this is insufficient.  The Court should enter judgment on both grounds.

---

[2]     Any communications introduced by Freshub only in its *rebuttal* case (and over Amazon's objection) cannot be considered on issues, such as willfulness, where Freshub bore the burden of proof; in any event, no evidence exists that Amazon knew of the patents at the time of those communications.

## IV.     THE EVIDENCE AT TRIAL CANNOT SUPPORT A DAMAGES VERDICT.

Freshub failed to meet its burden to establish reasonable royalty damages.  *See Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (reversing denial of JMOL).  The patentee must sufficiently tie any damages opinion to the facts of the case.  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).  Royalty rates that are arbitrary and "unrelated to the facts of [the] case" are unreliable and cannot support an award.  *Id*. at 1318.

### A.     Freshub's expert failed to apportion damages to the accused technology.

Freshub failed to adduce any evidence that the asserted patents are the basis for, or even contribute to, demand for the accused products.  The "royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more."  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).  And they must also account for the value of inventive elements in the claims relative to conventional elements.  *Id*.  In the *Finalrod* case, this Court set forth *exactly* what is required:  the technical expert must "do the hard work… to explain the value of the patented feature" relative to the other features in the overall product, "and then, the damages expert takes from what the technical expert said and says, based on that, I'm able to do this with respect to apportionment."  *Finalrod IP, LLC v. John Crane, Inc*., No. 15-CA-097-ADA, Dkt. 372 at 12:5-24.  The Court excluded Freshub's same damages expert, Mr. Marcus Reading, because apportionment was "not properly done."  *Id*. at 30:18-22; *see also Finalrod,* Dkt. 368.

Mr. Reading repeated these errors in this case.  He admitted that although he required a technical expert to inform him regarding the value of the patents to voice shopping, no technical expert provided him that information; indeed no technical expert testified as to that information to the jury.  And he admitted that the accused devices have many non-patented features, but that he

did not account for those features in his damages analysis.  (Tr. Tx. 611:24-619:9; 626:20-627:18.)

Because Mr. Reading performed no apportionment, his opinion violates Federal Circuit law and

the Court should enter judgment of no damages.  *See LaserDynamics, Inc. v. Quanta Computer,*

*Inc.*, 694 F.3d 51, 70 (Fed. Cir. 2012) (damages verdict could not be sustained where damages

expert failed to apportion to the value of the patented feature); *see also Ericsson,* 773 F.3d at 1226.[3]

**B.     Freshub's proposed royalty rate had no record support.**

Mr. Reading estimated a reasonable royalty of $3.50 per unit of the accused devices.  (Tr.

Tx. 579:19-25.)  But to do so, Mr. Reading relied on *unaccepted offers* that Ikan and Freshub made

in marketing presentations.  (Tr. Tx. 524:23-528:6; 530:2-540:10; 581:10-20; 621:19-622:9; PTX-

497; PTX-501; PTX-574; PTX-590; PTX-591; PTX-592.)  A "*proposed*, but unaccepted, license"

lacks evidentiary value because "patentees could artificially inflate the royalty rate by making

outrageous offers."  *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 29-30 (Fed. Cir.

2012) (vacating jury award and remanding in part) (emphasis in original).  Because no one actually

paid the prices demanded in the various Ikan and Freshub proposals, they cannot establish a price

for the patented technology.

Moreover, the proposals on which Mr. Reading relied *do not offer to license the asserted*

*patents or any other patents*.  (Tr. Tx. 602:6-603:10; 632:3-633:1; PTX-497; PTX-501; PTX-574;

---

[3]     There are in fact multiple different ways that Mr. Reading failed to properly apportion:  he did not account for the value of the patented feature in the Ikan and Freshub presentations that he relied on for determining the royalty rate (Tr. Tx. 623:4-627:18); he failed to apportion to the claimed "shopping speech" feature in the accused products, distinct from the other non-shopping speech features that he admitted are present (Tr. Tx. 614:3-19; 616:19-619:9);  he failed to apportion between patented and unpatented aspects of the "shopping speech" features, including, for example Amazon's *hundreds* of patents that cover aspects of the same voice shopping technology (Tr. Tx. 618:1-6:19-3; 639:1-641:25), he failed to apportion the total percentage of purchasers who actually use the patented features in the accused products (Sealed Tr. Tx. No. 3 at 34:3-38:7); and finally Mr. Reading did *not actually value* the patent's "shopping speech" feature, he "just valued simplified shopping."  (Tr. Tx. 535:15-19; 623:4-625:18.)

PTX-590; PTX-591; PTX-592.) [4]  Instead, they are offers for products and services not covered by the patents.  (Tr. Tx. 524:23-528:6; 530:2-540:10; 581:10-20; 621:19-622:9; 625:19-630:17; PTX-497; PTX-501; PTX-574; PTX-590; PTX-591; PTX-592.)  The Ikan business plans describe a kitchen bar-code scanner and do not mention voice shopping.  (Tr. Tx. 524:23-528:7; 625:19; PTX-574.)  Ikan did not have any voice shopping product.  The proposals are dated *over a decade before* the earliest asserted patent was filed.  (Tr. Tx. 627:22-630:17.)  Similarly, the Freshub presentations—dated *before* the patents issued—also do not include any offer to license the patents.  (Tr. Tx. 602:6-603:10; 632:3-633:1; PTX-497; PTX-501; PTX-590; PTX-591; PTX-592.)  Indeed, Freshub had no rights to the patents until a *year after* the last proposal on which Mr. Reading relied.  (Tr. Tx. 519:5-9; JTX-2; JTX-3; PTX-497; PTX-501; PTX-590; PTX-591; PTX-592.)  The proposals thus have nothing to do with the value of the claimed inventions.

### C.    Freshub's proposed form of a running reasonable royalty had no record support.

No evidence admitted at trial supports Mr. Reading's opinion the parties would have agreed to a running royalty.  (Sealed Tr. Tx. No. 3 at 37:22-38:7.)  The parties' license agreements in evidence were all for lump-sum amounts; Mr. Reading was in fact unaware of whether Amazon had or would accept a running royalty under *any* circumstances.  (Tr. Tx. 608:5-611:11.)  Accordingly, the record fails to support a running royalty form of damages.  *See LaserDynamics*, 694 F.3d at 57-58, 80-81 (vacating running royalty award where all licenses of record were lump-sum).

### D.    Freshub used an incorrect hypothetical negotiation date.

The hypothetical negotiation occurs on the date of first alleged infringement.  *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).  Here, because the accused products

---

[4]    By contrast, Mr. Reading disregarded *actual* Amazon licenses and agreements directed to speech processing and similar technology.  (Tr. Tx. 631:3-9; DX-131; DX-128.)

predated the asserted patents, the date of first alleged infringement is the date each patent issued: March 6, 2018 ('153 patent), February 26, 2019 ('810 patent), and March 19, 2019 ('408 patent). (Tr. Tx. 519:17-20; JTX-1; JTX-2; JTX-3.)  Mr. Reading testified that he assumed a hypothetical negotiation between Ikan Holdings and Amazon would take place in March 2018.  (Tr. Tx 519:5-9.)  While this is the date of the first alleged infringement of the '153 patent, it is *not* the correct date for the other two patents.  (*Id*.)  Mr. Reading further testified that Freshub would participate in the negotiation, even though Freshub did not own the patents and Ikan did not acquire Freshub until *after* March 2018.  (Tr. Tx. 519:5-520:12; Stipulated Fact 13.)  Thus, not only did Mr. Reading apply the wrong date for the hypothetical negotiation for the '810 and '408 patents, but both the parties and their circumstances would necessarily have been different at the correct 2019 dates. The Court previously excluded Mr. Reading's testimony for the same reason.  *Finalrod*, Dkt. 372 at 30:18-22.  It should enter judgment as a matter of law.

## V.  FRESHUB FAILED TO PROVIDE SUFFICIENT EVIDENCE OF LITERAL IN-FRINGEMENT.

It was Freshub's burden at trial to provide substantial evidence that the accused devices practice every element of the asserted claims.  35 U.S.C. § 271(a); *see also Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).

### A.  Freshub failed to provide sufficient evidence that the accused devices meet the "digitized order" limitation ('153 patent, claims 1, 6; '810 patent, claim 1; '408 patent, claim 20).

These claims all recite a "digitized order" received by the system, which is then converted to text for use in identifying an item.  The evidence confirms that this limitation is not met.  Dr. Medvidovic described each utterance sent from the accused devices to the Alexa cloud as a "user's order."  (Tr. Tx. at 293:14-16.)  But both sides' experts agreed that such utterances are not orders but rather free-form inquiries or requests for services (*e.g.*, tell a joke, time, the weather, etc.).  (Tr.

Tx. 97:5-10; 347:24-348:6; 872:9-18.)  Indeed, before converting the utterances to text and deter-

mining their meaning, Amazon's Alexa has no information about whether the utterance is an order,

a request for a joke, or command to play music.  Because a user can say *anything* to Alexa, it must

determine the user's intent by first considering all the words in the utterance it receives, whereas

the claims require the digitized orders to be received before any translation of the spoken words to

text even takes place.  A free-form utterance is not an "order," and Freshub did not present evi-

dence to the contrary.  Instead, Dr. Medvidovic argued that the Alexa cloud received "useless" or

"superfluous" words from free-form speech and ignores significant pieces of the utterances.  But

Alexa does not receive "useless" words; it uses the words to determine the user's intent.  This

differentiates the speech Alexa receives from the claimed "digitized order."  (Tr. Tx. 268:9-12.)

### B.   Freshub failed to provide sufficient evidence that the accused devices "identify an item corresponding to the text" ('153 patent claims 1, 6) when a user creates a shopping list via Alexa.

These claims require computer instructions to "identify an *item corresponding to the text*"

translated from the "digitized order."  The item is then added to a list.  Freshub asserted these

claims against the Alexa shopping list.  But Dr. Medvidovic's testimony shows that no items are

identified when adding entries to an Alexa shopping list as the claims require.  (Tr. Tx. 328:12-

329:4 (the ICE module finds products); 368:4-9 (ICE is not used for shopping list).)  As Dr. Medvi-

dovic further agreed, when a user says "Alexa, add 'sad' to my shopping list, the *word* 'sad' will

appear on the list."  (Tr. Tx. 369:5-7 (emphasis added).)  A word is not an item.  Dr. Medvidovic's

theory that the word "sad" meets both limitations—the translated "text" and the "item correspond-

ing to the text"—incorrectly conflates the two claim terms.  (Tr. Tx. 372:2-18; 373:1-6.)

**C.     Freshub failed to provide sufficient evidence that the accused devices "match[]... text... to a text description" ('408 patent claims 20, 30) or "use the text... to identify an item corresponding to the text description" ('810 patent claim 1) when a user adds products to shopping cart via Alexa.**

Freshub failed to present sufficient evidence to support a finding of infringement of the '408 and '810 patents based on Alexa's add to shopping cart feature.  The claim elements recited above both operate on "text": the '408 patent claims match this "text" to a text description, while '810 patent claim 1 similarly uses the "text" to identify an item corresponding to the text description.  (Tr. Tx. 375:19-21; 381:21-382:3; 386:6-11.)  According to Dr. Medvidovic, this "text" corresponds to the output from Alexa's automatic speech recognition component ("ASR").  (Tr. Tx. 374:8-18.)  Dr. Medvidovic testified to the jury that Alexa's ICE module performs the claimed matching step, but he admitted that ICE does *not* receive the text output from the ASR and thus does not and cannot use the text output from the ASR to match or identify an item based on a text description as the claims require.  (Tr. Tx. 374:19-375:2; 375:3-6.)  It is undisputed that the NLU creates intents; ICE uses these intents (and not text from the ASR) to search for relevant products.  (Tr. Tx. 269:5-14; 375:3-6.)

Dr. Medvidovic also failed to provide any evidence of computer instructions for matching text "to a text description" in a "data store" as recited by claim 30 of the '408 patent.  He offered two theories of what those "data stores" could be: the A9 index and DynamoDB.  (Tr. Tx. 376:24-377:4.)  The example he presented to the jury of adding apples to a shopping cart allegedly required a search to be performed by the A9 index.  (Tr. Tx. 327:5-14; 377:7-378:2.)  However, he only purported to show source code comparing text to a text description in DynamoDB, not A9.  (Tr. Tx. 378:11-15.)  The source code related to DynamoDB is not evidence of any matching in A9.  Dr. Medvidovic did not identify text descriptions in any data store to which translated text is matched.

**D.    The accused devices do not contain the server-side "non-transitory memory" ('153 patent claims 1 and 6; '810 patent claim 1; '408 patent claim 30) or practice any server-side steps ('408 patent claim 20).**

No reasonable jury could find that the accused products—Amazon's Echo, Fire TV, and Fire Tablet devices—include the non-transitory memory to run Alexa.  Claims 1 and 6 of the '153 patent require two "non-transitory memor[ies]," one of which is in a server-side "computer system."  Claim 1 of the '810 patent and claim 30 of the '408 patent only recite a server-side "non-transitory memory."  Dr. Medvidovic agreed that "non-transitory memory" is a physical structure like a hard drive.  (Tr. Tx. 362:1-11.)  According to Dr. Medvidovic, "a very large number of very powerful servers" power Alexa functionality and those servers are not part of the accused products.  (Tr. Tx. 260:11-17.)  Under his infringement theory, the server-side "non-transitory memory" is in these servers and not in the accused products.  (Tr. Tx. 364:3-15; 367:3-8.)  Thus, the accused products cannot infringe the asserted system claims.

Claim 20 of the '408 patent is a method claim reciting steps that Dr. Medvidovic argued all run on "the server system that runs in the cloud."  (Tr. Tx. 316:12-16.)  The accused products do not infringe this claim either because they do not contain the server system as Dr. Medvidovic admitted.

**E.    Defendants cannot infringe under the Federal Circuit's *Centillion* precedent ('153 patent claims 1, 6).**

Freshub never accused the Alexa back-end as an infringing product; all evidence of back-end hardware and functionality is therefore irrelevant to infringement.  (Tr. Tx. 94:24-95:13.)  Freshub's argument that the devices themselves "include" Alexa is wrong and not supported by any record evidence.  As explained in the previous section, the devices cannot infringe the asserted claims on their own, even under Freshub's infringement theory.  The evidence shows that Defendants do not "use" or "make" the claimed system as required to show direct infringement.  *Centillion*

10

at 1288.

To "use" the claimed system, Defendants must "put the invention into service, *i.e.*, control the system *as a whole* and obtain benefit from it." *Centillion* at 1284 (emphasis added). Like the asserted claims at issue in *Centillion*, claim 1 of the '153 patent recites a "first system," *i.e.*, a front-end client system, and a remote "computer system," *i.e.*, a back-end server system. *Id.* at 1281 (claims include "back-end" and "front-end" systems). In *Centillion*, the Federal Circuit held that users of the front-end system "put[] the system as a whole into service" by "creating a query and transmitting it to [the] back-end," thereby causing the back-end to "run a query and return a result." *Id.* at 1285. Here too, Freshub's experts admitted that the accused devices act in response to verbal utterances from the user. (Tr. Tx. 264:12-18; 349:9-13; Sealed Tr. Tx. No. 2 at 29:25-30:2.) Without a user utterance, the "back-end processing [of Alexa] would not be put into service." *See Centillion* at 1285. No evidence in the record attributes the actions of users of the accused devices to Defendants through vicarious liability, the "only way" that Freshub could establish "use" by Defendants. *Id.* at 1286-78. Thus, Defendants do not "use" the system of claims 1 and 6 of the '153 patent.

Defendants also do not "combine all of the claim elements" as required to "make" the claimed system, even if Defendants build the accused devices and the Alexa servers. *Centillion* at 1287-88 (rejecting argument that defendant infringed by "build[ing] all of the parts of the system including the client-side software" because users were the ones who "complete[d] the system by… installing the client software"). Dr. Medvidovic acknowledged that the accused devices lack the remote Alexa "back end system" which he maps to "the computer system" of claim 1. (Tr. Tx. 260:11-18; 364:3-15; 367:3-8.) Freshub's infringement theory requires users to provide a home wireless network and connect the accused devices before they can communicate with Alexa. (Tr.

Tx. 363:8-364:2 (Echo is "nothing more than a paper weight" until the user connects to the Alexa servers in the cloud).)  Because Defendants do not connect the accused device and the Alexa back-end, they cannot "make" the system of claims 1 and 6 of the '153 patent.

## VI.   THE ASSERTED PATENTS FAIL TO CLAIM PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101.

The Court is familiar with the two-step test of *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014).  "Patent eligibility under § 101 is an issue of law that sometimes contains underlying issues of fact."  *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020) (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)).  Defendants moved for summary judgment of ineligibility; the Court ruled that it was necessary to proceed past *Alice* step 1 and have the jury decide fact questions at *Alice* step 2.  (Tr. Tx. at 30:8-16 ("We're going to take it up under Step 2.").)

First, the Court's step 1 ruling is correct.  The asserted claims recite functional steps—receiving and translating a spoken order, identifying an item corresponding to the order, and displaying a list of identified items—implemented using only generic components and existing voice technology.  They claim no new algorithm or new software to accomplish any of the steps.  Nor does the specification describe any.  The two columns that reference the voice system describe only a generic "voice recording device" for capturing voice orders and "[a] remote computer processing system [that] receives, stores, and accesses" digitized voice orders, "match[es] the user's spoken order with a product," provides quotes from vendors, and allows the user to place an order. (*See* '153 patent at 8:17-9:14.)  These are not a specific solution.  *See Two-Way Media*, 874 F.3d at 1333, 1337-38; *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1235 (Fed. Cir. 2016); *VOIT Techs., LLC v. Del-Ton, Inc*, No. 5:17-CV-259-BO, 2018 WL 385188, at *1 (E.D.N.C. Jan. 11, 2018), *aff'd*, 757 F. App'x 1000 (Fed. Cir. 2019).  The claims amount to nothing more than a

12

command to the reader to use conventional computers to automate the age-old practice of taking an order at a store counter.

Second, at step 2, no reasonable jury could conclude that the claims disclose anything more than well-understood, routine, and conventional computing components and protocols for achieving the claimed results. "Where a claim is directed to an abstract idea, the claim must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 221). "These additional features cannot simply be 'well-understood, routine, conventional activit[ies]' previously known to the industry." *Id.* (citation omitted). "Instead, the inventive concept must be 'sufficient to ensure that the patent in practice amounts to significantly more' than a patent on the abstract idea." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 566 U.S. 66, 72-73 (2012)).

Freshub's claims recite nothing more than generic components performing functions inherent in the idea of voice shopping. The hardware elements of the Freshub patents—a microphone, wireless network interface, networks interface, digitizer, computers, and non-transitory memory that stores instructions—are routine and conventional components well known in the industry. (Tr. Tx. 930:25-931:8; 931:9-24; 932:23-933:15; 957:1-3; 1052:13-22; Polish Testimony) The instructions stored on the non-transitory memory—receiving using a network interface, translating to text, identifying an item from the text, adding the item to a list associated with a user, and displaying the list to the user—are similarly routine, conventional and well known. (932:21-936:5.) Indeed, both Dr. Polish and Dr. Singh testified that the patented system simply uses off-the-shelf third party speech recognition software. And nothing about the ordering or combination of these elements is inventive. (933:13-15.) The asserted patents are invalid for failing to claim

patent eligible subject matter under 35 U.S.C. § 101. The Court should grant judgment as a matter of law.

## VII.    THE PATENTS ARE INVALID UNDER 35 U.S.C. § 112.

### A.    The asserted patents lack written description.

To satisfy the written description requirement, the specification must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharms, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991)).  "In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* "'[T]he purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not,' and the requirement is particularly important when, as here, claims are added later during prosecution in response to development by others." *Quake v. Lo*, 928 F.3d 1365, 1373 (Fed. Cir. 2019) (citation omitted).

Evidence at trial established that the asserted claims lack written description because a person of ordinary skill in the art would not recognize that the inventors had possession of the full scope of the claims as of the 2005 filing date of the priority application (or in the 2017 and 2018 applications from which the patents issued). *Ariad*, 598 F.3d at 1351.  The applications that issued as the asserted patents were filed in 2017 and 2018, years after Alexa launched, but claim priority to the December 12, 2005 application that issued as the '344 patent.  (Tr. Tx. 898:23-899:16; D0002; JTX-1; JTX-2, JTX-3.)  The asserted patents share an identical description and figures with the '344 patent, and all are entitled "Systems and Methods for Scanning Information from Storage Area Contents."  (Tr. Tx. 899:17-900:9; D0002; JTX-1; JTX-2, JTX-3.)  The common specification focuses mainly on scanning things like food packaging using bar code scanners or

identifying them visually using image recognition.  (Tr. Tx. 900:10-901:13; D0002; JTX-1; JTX-2, JTX-3.)  The only difference between the '344 patent is the claims.  (*Id.*)  While the '344 patent claims an electronic refrigeration system, the asserted patents claim a voice processing system.  (*Id.*)

The common specification fails to provide substantive disclosures relating to voice processing—and in particular for the terms "translate..." and "identify…" in every asserted claim—so that a skilled artisan would recognize that the inventors were in possession of the invention.  (Tr. Tx. 901:14- 905:14; D0002; JTX-1; JTX-2, JTX-3.)  With regard to the claim term "translate," the specification states that the invention *should* perform translation, but lacks description showing how the invention performs this function.  (Tr. Tx. 901:14-904:23 D0002; JTX-1; JTX-2, JTX-3.)  Figure 8 simply says "perform voice recognition," which was not enough in 2005 to show that the inventors possessed a solution for a very difficult problem.  (*Id.*)  People speak with different voices using different words, and background noise further disrupts translating voice to text.  (Tr. Tx. 901:24-902:23.)  The patents do not describe any of this:  they disclose no commercial voice recognition system, no algorithm to use, scientific models, or any other details that show the inventors were in possession of an invention that "translat[es] at least a portion of the digitized order to text" as required by all of the asserted claims.  (Tr. Tx. 903:5-904:23; JTX-1; JTX-2, JTX-3; Singh Testimony.)

The limitation "identify an item corresponding to text" suffers from the same problem.  (Tr. Tx. 904:24-905:19.)  The specification says to perform this function—i.e., "the remote system can add the item(s) identified in the verbal order to the user's shopping cart or other shopping list."  (Tr. Tx. 905:10-14.)  However, the specification fails to describe *how* the invention does this.  (Tr. Tx. 905:13-19.)  The patents provide no description for how they perform the "translate" and

"identify" voice recognition features so that a skilled artisan would recognize the inventors actually possessed the full scope of the claims Freshub asserted against Amazon's Alexa. (Tr. Tx. 902:3-905:19.) Accordingly, the asserted patent claims are invalid for lack of written description.

### B.     The asserted patents are not enabled.

"To be enabling, the specification of a patent must teach those skilled in the art how to *make* and *use* the *full scope* of the claimed invention *without 'undue experimentation*.'" *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012) (citation omitted) (emphasis added). "The enablement determination proceeds as of the effective filing date of the patent." *Id.* "This important doctrine prevents both inadequate disclosure of an invention and overbroad claiming that might otherwise attempt to cover more than was actually invented." *Id.* at 1381.

Evidence at trial established that the asserted claims are not enabled because a person of ordinary skill in the art as of 2005 would not have been able to make and use the full scope of the claimed invention without undue experimentation. Again, the patents fail to disclose *how* they perform the claimed "translating" or "identifying" steps. (Tr. Tx. 900:14-905:19.) Accordingly, the specification failed to teach those skilled in the art in 2005 how to make and use the claimed invention without undue experimentation. (Tr. Tx. 908:19-909:13.)

Extrinsic evidence confirms that the asserted patents did not enable the invention. The Federal Circuit has held claims invalid for lack of enablement based on evidence that it would take 18 months to two years' work to practice the invention. *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1339 (Fed. Cir. 2013); *see also White Consol. Indus. v. Vega Servo-Control*, 713 F.2d 788, 791 (Fed. Cir. 1983) (same). A "patentee's own failures to make and use the later claimed invention at the time of the application" may establish that undue experimentation is required. *Id.*; *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003). Here, the patentee—

16

Ikan—never developed a functional voice processing system that could translate voice orders to text and identify a unique item corresponding to the text, as the patents claimed. (Tr. Tx. 175:24-181:2; 909:14-910:10; D0003; D0005; D0010, D0002, D0014.)  Having failed to develop this technology, Ikan obviously could not have provided adequate description in the specification to enable another to implement such a system.  Nor was there evidence that any others made the invention based on the disclosures in the patent application.  (Tr. Tx. 910:11-24; D0002.)  In fact, nearly a decade later when deciding whether to develop its own voice shopping enabled product, Freshub determined that it would take 1.95 man years to develop a "speech interpretation module." (Tr. Tx. 910:18-911:6; 921:7-24; D0370; *see also* Tr. Tx. 434:9-438:22; P0591.)  The evidence shows that at the specification failed to teach its own inventors and others how to make use the claimed inventions without undue experimentation.  Accordingly, the asserted claims are invalid for lack of enablement, and no reasonable juror could find otherwise.  (Tr. Tx. 911:7-912:4.)

## VIII.   THE ASSERTED PATENTS ARE INVALID UNDER 35 U.S.C. § 103

A patent is invalid for obviousness "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."  35 U.S.C. § 103(a).  Freshub presented evidence so that a reasonable jury could only conclude that that Nuance Order Management Suite ("Nuance OMS") in combination with U.S. Patent No. 7,376,586 ("Partovi") (D0474)and HeyAnita in combination with Partovi render obvious claims 1 and 6 of the '153 patent and claims 20 and 30 of the '408 patent. Freshub also presented evidence so that a reasonable jury could only conclude that Nuance OMS in combination with Partovi and U.S. Patent No. 6,553,345 ("Kuhn") (D0536) and HeyAnita in combination with Partovi and Kuhn render obvious claim 1 of the '810 patent.

The Nuance Order Management Suite (Nuance OMS) was a suite of components used to

build custom voice processing systems including e-commerce voice-based shopping and purchasing systems.  (Tr. Tx. 923:24-924:17.)  Nuance OMS was available and described in publicly available documents before the asserted December 12, 2005 priority date in D0466 (brochure), D0603 (technical data sheet), D0467 (functional overview), and D0464 (2001 press release).  (Tr. Tx. 925:22-928:24; 936:8-938:18.)  HeyAnita was a voice platform that gave access to applications and services through voice available before as described by Mr. Desai and disclosed in U.S. Patent Appl. Pub. No. US 2003/0078779 (D0472) before 2005.  (Tr. Tx. 836:1-850:17; 939:1-941:7.)  Partovi described the TellMe voice portal system enabling the purchases and reservations by voice.  (Tr. Tx. 947:24-948:20.)  Kuhn, which issued on April 22, 2003, describes a home entertainment remote control with speech control where you could download information.  (Tr. Tx. 957:4-958:7; D0536.)  Persons of ordinary skill in the art would have been motivated to combine Nuance OMS, Partovi, and Kuhn and HeyAnita Partovi, and Kuhn respectively and it would have been obvious try.  (Tr. Tx. 912:5-912:24; 925:7-21; 929:15-23; 949:2-10; 958:8-12; 960:6-11; 962:7-20.)

## A.   Nuance OMS in combination with Partovi and HeyAnita in combination with Partovi render obvious claim 1 of the '153 patent.

Defendants presented evidence at trial that Nuance OMS in view of Partovi disclose all of the claim limitations for claim 1 of the '153 patent.  Nuance OMS was "voice processing system" software that voice-enabled e-commerce systems, including those on the Internet. (Tr. Tx. 925:22-929:7.)  The servers with Nuance OMS installed received digitized spoken word orders originating from "first computers" such as personal computers, cellular phones, and voice-over-Internet (VoIP) phones.  (Tr. Tx. 929:8-931:24.)  These devices had computer chips, memory to store instructions, and microphones coupled with analog-to-digital voice converters.  (*Id.*)  They sent digitized verbal orders via a wireless network (e.g., cellular networks or WiFi) in real time to the networked servers running Nuance OMS.  (Tr. Tx. 931:25-933:23.)  Upon receipt, the Nuance

OMS 7.0 speech recognition server translated the digitized verbal order to text, and the system identified items to buy by name, code, or selection from a list (Tr. Tx. 933:24-934:25.)  Nuance OMS then provided for a user to add the item to a list (i.e., add it to her shopping cart) and enabled the display of this list on the enterprise e-commerce server.  (Tr. Tx. 935:1-936:5.)  Partovi also disclosed enabling the display of a voice-ordered item on a list with its example of a customer interfacing with the Southwest Airlines reservation system to place a reservation and/or purchase tickets.  (Tr. Tx. 948:11-949:1.)  Accordingly, Nuance OMS in view of Partovi renders claim 1 of the '153 patent obvious.  (Tr. Tx. 949:2-949:10.)

Defendants also presented evidence at trial that HeyAnita in view of Partovi disclose all of the claim limitations for claim 1 of the '153 patent.  HeyAnita was a "voice processing system" with a speech recognition engine, natural language engine, query engine, and web parser that interfaced with Kozmo.com, Amazon, Barnes & Noble, CDNow, and other third-party e-commerce sites to enable customers to reserve and purchase items using voice.  (Tr. Tx. 836:1-850:17; 939:1-941:7.)  The remote networked servers running HeyAnita software received digitized spoken word orders transmitted from the same types of "first computer" devices via wireless networks discussed in the Nuance OMS combination.  (Tr. Tx. 941:9-944:2.)  HeyAnita's speech recognition engine or other supported ASR systems like Nuance translated at least a portion of the digitized spoken word order into text.  (Tr. Tx. 943:25-944:5; 944:20-945:10.)  HeyAnita's natural language system running the dialog management identified an item corresponding to the text by lining up the text with a product catalog from the e-commerce website to determine the order (like ordering a sand-wich or buying a CD).  (Tr. Tx. 944:6-945:10; 945:11-946:12.)  HeyAnita then utilized an appli-cation wizard to add the user's identified item to the list associated with the user (i.e., the user's shopping cart).  (Tr. Tx. 946:3-947:1.)  HeyAnita enabled existing websites and applications to be

displayed through the user display (i.e., on the purchaser's computer).  (Tr. Tx. 947:5-19.)  Partovi also disclosed enabling the display of a voice-ordered item on a list as discussed in the Nuance OMS combination.  (Tr. Tx. 947:20-949:1.)  Accordingly, HeyAnita in view of Partovi renders claim 1 of the '153 patent obvious.  (Tr. Tx. 949:2-949:10.)

### B.   Nuance OMS in combination with Partovi and HeyAnita in combination with Partovi render obvious claim 6 of the '153 patent.

Claim 6 of the '153 patent depends on claim 1, further reciting that the computer system in claim 1 "is configured to cause the list to be provided to the user *via a website*."  Nuance OMS enabled display of lists on websites, including the identified item, in shopping carts on the purchase web pages on e-commerce websites.  (Tr. Tx. 935:1-936:5; 950:4-20.)  HeyAnita also enabled this display on web pages, including its Kozmo.com example.  (Tr. Tx. 946:13-947:19; 950:4-20.)  Partovi did this as well on the Southwest Airlines website.  (Tr. Tx. 948:11-949:1; 950:4-20.).  Accordingly, both Nuance OMS in view of Partovi and HeyAnita in view of Partovi render claim 1 of the '153 patent obvious.  (Tr. Tx. 950:15-950:20.)

### C.   Nuance OMS in combination with Partovi and HeyAnita in combination with Partovi render obvious claim 20 of the '408 patent.

Defendants also presented evidence at trial that Nuance OMS in view of Partovi disclose all of the claim limitations for claim 20 of the '408 patent.  Dr. Johnson testified that the limitations "receiving over a network . . .the remote system comprising," "translating, using . . . order to text," and "causing the identified item . . . processing system" correspond to the same limitations in claim 1 of the '153 patent and Nuance OMS in view of Partovi disclose these limitations for the same reasons.  (Tr. Tx. 950:21-951:9.)  There is also no meaningful difference between "computer-implemented method" and "voice processing system" claim 1 of the '153 patent with respect to the obviousness analysis.  (Tr. Tx. 952:9-14.)  For claim 20's remaining limitations, Nuance OMS matched text generated from translating the users' speech—employing a dialog box and

SpeechObject called "get product"—against a catalog or list containing unique product identifiers. (Tr. Tx. 951:19-952:8.)  Accordingly, Nuance OMS in view of Partovi renders claim 20 of the '408 patent obvious, and a reasonable jury could not find otherwise.  (Tr. Tx. 952:9-14.)

Defendants also presented evidence at trial that HeyAnita in view of Partovi disclose all of the claim limitations for claim 20 of the '408 patent.  In addition to meeting all of the overlapping claim elements shared with claim 1 of the '153 patent as discussed above, Hey Anita's dialog system matched the user's voice request with items in the catalog which used unique product IDs, and HeyAnita would send back to the user the exact matches with an embedded unique product identifier.  (Tr. Tx. 952:15-953:20.)  Accordingly, HeyAnita in view of Partovi renders claim 20 of the '408 patent obvious.  (Tr. Tx. 953:21-23.)

### D. Nuance OMS in combination with Partovi and HeyAnita in combination with Partovi render obvious claim 30 of the '408 patent.

Dr. Johnson testified that that claim 30 is for the "non-transitory memory" that includes computer instructions for performing the steps in claim 20.  As discussed for claim 1 of the '153 patent, Nuance OMS and HeyAnita disclose "non-transitory memory."  (Tr. Tx. 954:3-13; 954:18-23.)  Accordingly, Nuance OMS in view of Partovi and HeyAnita in view of Partovi render claim 30 of the '408 patent obvious.  (Tr. Tx. 954:14-17; 954:24-955:1.)

### E. Nuance OMS in combination with Partovi and Kuhn and HeyAnita in combination with Partovi and Kuhn render obvious claim 1 of the '810 patent.

Defendants also presented evidence at trial that Nuance OMS in view of Partovi and Kuhn disclose all of the claim limitations for claim 1 of the '810 patent.  Dr. Johnson testified that Nuance OMS in view of Partovi disclose the preamble and the limitations "a networks interface" through "comprising," "a microphone" through "digital representation," and "receive" through "text description" for the same reasons as discussed for corresponding limitations in the '408 patent, claim 20 and the '153 patent, claim 1.  (Tr. Tx. 955:2-12; *see also* Tr. Tx. 950:21-951:9.)

Nuance OMS and Partovi further disclose a unique identifier with the remote device that the user speaks into—i.e., a phone number for that user's phone.  (Tr. Tx. 955:13-956:9; 960:25-961:4.) Kuhn describes a remote control with a display that downloads to the device configuration information and program guides to the device.  (Tr. Tx. 956:10-958:12.)  Nuance OMS in combination with Partovi disclose enabling the display of the set of items on a device different than the remote system because the user could speak into a telephone or other speech device and view the display of the set of items on a computer screen.  (Tr. Tx. 958:13-959:7.)  Nuance OMS further enables providing items on the list, such as a shopping cart, to be communications to the e-commerce provider's enterprise system which makes ordering from them possible.  (Tr. Tx. 959:8-960:5.) Accordingly, Nuance OMS in view of Partovi and Kuhn renders claim 1 of the '810 patent obvious.  (Tr. Tx. 960:6-11.)

Hey Anita in view of Partovi and Kuhn also disclose all of the claim limitations for claim 1 of the '810 patent.  Like the Nuance OMS combination, HeyAnita in view of Partovi disclose the preamble and the limitations "a networks interface" through "comprising," "a microphone" through "digital representation," and "receive" through "text description" for the same reasons as discussed for corresponding limitations in the '153 patent, claim 1.  (Tr. Tx. 955:2-12; *see also* Tr. Tx. 950:21-951:9.)  Both HeyAnita and Partovi disclose the user's telephone number as a unique identifier associated with the user profile.  (Tr. Tx. 960:12-961:4.)  Kuhn discloses the "download configuration" as discussed in the Nuance OMS combination.  (Tr. Tx. 961:5-13.)  HeyAnita in combination with Partovi disclose enabling the display of the set of items on a device different than the remote system because, like the Nuance OMS combination, the user could speak into a telephone or other speech device and view the web page with displayed items from a computer screen (Tr. Tx. 961:14-22.)  Finally, HeyAnita sent this information to the provider's e-commerce

site for purchase (i.e., the Kozmo ordering system sending the user's requested order for the Guns N' Roses CD to the CDNow website for purchase).  (Tr. Tx. 961:23-962:6.)  Accordingly, Hey-Anita in view of Partovi and Kuhn renders claim 1 of the '810 patent obvious.  (Tr. Tx. 962:7-11.)

### F.   The record lacks evidence of secondary considerations sufficient to overcome the strong prima facie case of obviousness.

The record lacks evidence of secondary considerations of non-obviousness sufficient to overcome the evidence of obviousness based on primary factors discussed above.  *See Weyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (reversing denial of obviousness JMOL where defendants presented strong evidence of primary considerations and "the secondary considerations [presented by plaintiff were] inadequate to establish nonobviousness as a matter of law"); *W. Union Co. v. MoneyGram Payment Sys.*, 626 F.3d 1361, 1373 (Fed. Cir. 2010) ("weak secondary considerations generally do not overcome a strong prima facie case of obviousness").  Regarding the factors, the evidence at trial showed: (1) Ikan and Freshub experienced no commercial success associated with their use of the patents (Tr. Tx. 963:10-965:7); (2) the "praise by others" cited by Freshub's witnesses were not directed to voice technology (Tr. Tx. 965:10-966:14); (3) no one licensed the patents or even offered to purchase the patents despite numerous efforts (Tr. Tx. 966:15-967:3); (4) the patents failed to address a long-felt need because people were already voice shopping (Tr. Tx. 967:4-11); (5) the patents did not achieve unexpected results (Tr. Tx. 967:12-15); (6 & 7) and plaintiffs presented no evidence of copying or failure by others (Tr. Tx. 967:16-23).  Accordingly, no reasonable juror could find for Freshub on obviousness.

Dated: June 21, 2021

Respectfully submitted,

*Of Counsel:*

/s/ *Todd R. Gregorian*

Barry K. Shelton (TX Bar #24055029)
bshelton@sheltoncoburn.com
Bradley D. Coburn (TX Bar #24036377)
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Tel: (512) 263-2165
Fax: (512) 263-2166

Deron R. Dacus (TX Bar #00790553)
ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705-1117
Fax: (903) 581-2543

J. David Hadden, CSB No. 176148
dhadden@fenwick.com
Saina S. Shamilov, CSB No. 215636
sshamilov@fenwick.com
Ravi R. Ranganath, CSB No. 272981
rranganath@fenwick.com
Vigen Salmastlian, CSB No. 276846
vsalmastlian@fenwick.com
Allen Wang, CSB No. 278953
allen.wang@fenwick.com
**FENWICK & WEST LLP**
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.5200

Todd R. Gregorian, CSB No. 236096
tgregorian@fenwick.com
Eric B. Young, CSB No. 318754
eyoung@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:  650.938.5200

*Counsel for Defendants*
*AMAZON.COM, INC., AMAZON.COM SER-*
*VICES LLC, PRIME NOW, LLC, and*
*WHOLE FOODS MARKET SERVICES, INC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2021, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

<i>/s/ Todd R. Gregorian</i>

Todd R. Gregorian