UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| FRESHUB, INC. and FRESHUB, LTD.,<br><br>        Plaintiffs,<br><br>    v.<br><br>AMAZON.COM, INC., a Delaware Corporation, AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation,<br><br>        Defendants. | Case No. 6:21-CV-00511-ADA |

**PROPOSED FINAL FINDINGS OF FACTS AND CONCLUSIONS OF LAW
REGARDING INEQUITABLE CONDUCT**

**INTRODUCTION**

Plaintiffs Freshub, Inc. and Freshub, Ltd. (collectively, "Freshub") asserted four related patents against Amazon.com, Inc., Amazon.com Services LLC, Prime Now, LLC, and Whole Foods Market Services, Inc. (collectively, "Amazon").[1]  The asserted patents all spring from a common parent application that was originally assigned to Ikan Technologies, Inc.  That application, directed to a smart refrigerator, was abandoned during prosecution after Ikan failed to respond to a final Office Action rejecting the claims, failed to respond to a later Notice of Abandonment, and then explicitly confirmed knowledge of the abandonment in a writing prepared by the prosecuting attorney and signed by Sony Douer, a named inventor and Ikan's principal.

---

[1] U.S. Nos. 9,908,153 (JTX-1), 10,213,810 (JTX-2), 10,232,408 (JTX-3), and 10,239,094 (JTX-4) (collectively, the "asserted patents").

After Amazon released the accused technology—the virtual voice assistant Alexa—Ikan petitioned to revive the application, stating, as required by Patent Office rules, that its entire five-year delay in responding to the final Office Action was "unintentional." After the revival, Ikan proceeded to file several continuation applications and added claims directed to voice shopping. Amazon alleged for its inequitable conduct defense that this statement was false, that Ikan made it to deceive the Patent Office, and that the Patent Office relied on the statement to grant revival.

Amazon provides these proposed final findings of fact and conclusions of law in compliance with the Court's standing order on pretrial procedures, which requires parties to submit two versions of their proposed findings: (1) a preliminary document in a format suitable for ruling from the bench; and (2) a final document following trial with detailed references to the record. Any finding of fact below deemed to be a conclusion of law is hereby incorporated into the proposed conclusions of law, and vice versa.

## FINDINGS OF FACT

**A.    The asserted patents share the '344 patent as their common parent.**

1. The asserted patents share a specification and title, and claim priority to a common parent, U.S. Patent No. 9,821,344 ("the '344 patent"). (Defendants' Trial Exhibit D0002.)

2. Ikan Technologies Inc. filed the application that matured into the '344 patent, No. 11/301,291 ("the '291 application"), in 2005. (D0002.)

3. The Patent Office published the '291 application on August 10, 2006. (D0002.)

4. The '291 application originally contained claims related to presenting a user with a shopping list based on a voice recording, but Ikan cancelled them in response to an Office Action. Ikan amended the application to focus on a refrigerator with a camera that could recognize product images. (D0492, D0002.)

**B.     After prosecuting the '291 application for several years, Ikan abandoned it.**

5. The Patent Office issued a Final Office Action rejecting the claims of the '291 application on June 6, 2011  (Dkt. 243-4 (D0291); Dkt. 243-1 at 84:23-85:10.)

6. Ikan's prosecuting attorney, David Weiss of Knobbe Martens LLP, received this rejection for Ikan, and he forwards all such material Patent Office communications to his client. (Dkt. 243-4 (D0291); Dkt. 243-1 at 84:23-85:10, 86:9-86:15.)

7. Ikan did not respond by the deadline to continue prosecution.  (Dkt. 243-5 (D0292); Dkt. 243-4 (D0291); Dkt. 243-1 at 92:18-92:20.)

8. After six months, on January 3, 2012, the Patent Office sent a Notice of Abandonment.  (Dkt. 243-5 (D0292); Dkt. 243-1 at 91:15-92:17.)

9. Mr. Weiss received this notice for Ikan, and he forwards all such material Patent Office communications to his client. (Dkt. 243-5 (D0292); Dkt. 243-1 at 91:15-92:17, 94:13-16, 94:18.)

10. To avoid claims of malpractice, Mr. Weiss does not allow a patent application to go abandoned without first obtaining his client's express approval. (Dkt. 243-1 at 39:2-14, 40:16-19, 40:20-25.)

11. Ikan and Mr. Weiss took no action in response to the abandonment notice and allowed the '291 application to go abandoned. (Dkt. 243-1 at 92:18-20.)

12. Mr. Weiss continued to communicate with the inventors of the '291 application following the June 6, 2011 Final Rejection and the January 3, 2012 Notice of Abandonment. (Dkt. 243-4 (D0291); Dkt. 243-5 (D0292); Dkt. 243-2 (D0288); Dkt. 243-1 at 86:9-15; 86:18-19; 87:3-19; 93:2-15; 93:17-18.)

3

**C.     Ikan confirmed that it knew and intended to abandon the application.**

13.    On December 4, 2012, Ikan transferred its patent rights to a different Ikan entity, Ikan Holdings LLC, in an assignment eventually recorded at the Patent Office. (Dkt. 243-6 (D0293); Dkt. 243-1 at 101:25-102:5.)

14.    Mr. Weiss prepared the assignment document and Sony (Sion) Douer, Ikan's principal and a named inventor on the application, represented both entities in the transaction and signed the document before a notary on behalf of Ikan Technologies. (Dkt. 243-6 (D0293); Dkt. 243-1 at 103:23-105:1, 103:3-19.)

15.    The assignment included lists of issued patents and pending applications, as well as a list of "Inactive/Abandoned/Expired" applications. The '291 application is listed as "Inactive/Abandoned/Expired." (Dkt. 243-6 (D0293); Dkt. 243-1 at 103:23-105:1.)

**D.     Mr. Weiss knew that Ikan had abandoned the '291 application intentionally but swore to the opposite to deceive the Patent Office into reviving the application.**

16.    The '291 application remained abandoned for over five years. (Dkt. 243-8 (D0490); Dkt. 243-1 at 110:14-111:2.)

17.    Ikan petitioned the Patent Office to revive the '291 application on January 20, 2017. (Dkt. 243-8 (D0490); Dkt. 243-1 at 115:6-115-15, 122:2-12.)

18.    Mr. Weiss prepared the petition for Ikan and was aware when he filed the petition that Ikan had abandoned the '291 application for over five years. (Dkt. 243-8 (D0490); Dkt. 243-1 at 105:11-18, 115:6-15.)

19.    Mr. Weiss knew the Patent Office standards for determining whether and abandonment was intentional or inadvertent. (Dkt. 243-8 (D0490); Dkt. 243-1 at 115:16-21, 125:3-12, 125:17-23.)

20. Mr. Weiss knew that the Patent Office would not revive the application unless he swore that the entire period of the abandonment of the '291 application was unintentional. (Dkt. 243-1 at 118:19-119:4.)

21. The same day that Mr. Weiss filed the petition to revive, he also recorded the assignment document that Mr. Douer signed in December 2012, wherein Ikan had acknowledged that it had abandoned the '291 application. (PTX-629, Dkt. 243-1 at 105:11-18, 108:25-109:1, 109:3-4, 109:18-110:6, 118:19-119:4.)

22. In the petition to revive, Mr. Weiss swore falsely under penalty of perjury that the entire five-year delay in responding to the Patent Office's last rejection of the application was "unintentional." (Dkt. 243-8 (D0490); Dkt. 243-1 at 118:19-119:4.)

**E.    Mr. Weiss knew also that he had to investigate the abandonment before swearing that it was unintentional, and he failed to do so.**

23. Mr. Weiss knew that the rules required him the investigate the abandonment before requesting revival of the '291 application. (Dkt. 243-8 (D0490); Dkt. 243-1 at 128:13-16.)

24. Mr. Weiss did not perform such an investigation before swearing to the false statement that Ikan had abandoned the '291 patent unintentionally. (Dkt. 243-1 at 128:13-16, 137:17-19, 138:22-23.)

25. Mr. Weiss could identify no step he had taken to investigate the abandonment other than looking at the December 2012 assignment document confirming that as of that date Ikan knew that it had abandoned the application. (Dkt. 243-1 at 128:13-16, 137:17-19, 138:22-23.)

26. Mr. Weiss could not point to any fact he identified during the preparation of the petition that would indicate that the abandonment of the '291 application was unintentional rather than intentional. (Dkt. 243-1 at 40:16-19, 137:17-19, 138:22-23.)

27. Mr. Weiss testified that his firm maintains a record showing when a client has expressly approved an abandonment. By consulting that record, Mr. Weiss could have confirmed whether Ikan had abandoned the '291 application intentionally. (Dkt. 243-1 at 40:16-19, 137:17-19, 138:22-23.)

28. Nevertheless, Mr. Weiss did not investigate this record before filing the petition to revive the '291 application on behalf of Ikan. In fact, he testified that he was not even familiar with his firm's abandonment approval records because he had "never gone back to look" at them. (Dkt. 243-1 at 40:16-19, 137:17-19, 138:22-23.)

F. **The false statement was material to the Patent Office decision to revive the '291 application.**

29. The Patent Office expressly relied on Ikan's false statement to revive the application, stating:

> This application has been abandoned for an extended period of time. The U.S. Patent and Trademark Office is relying on petitioner's duty of candor and good faith and accepting the statement that "the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137 was unintentional."

(Dkt. 243-7 (D0296); Dkt. 243-1 at 122:2-123:1, 125:3-125:12, 125:17-23.)

30. The Patent Office also noted that the applicant is "obligated under 37 CFR 11.18 to inquire into the underlying facts and circumstances when providing the statement required by 37 CFR 1.137." (Dkt. 243-7 (D0296); Dkt. 243-1 at 127:14-127:20.)

## CONCLUSIONS OF LAW

A. **Legal Standard**

1. "To prove inequitable conduct, the challenger must show by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information material to

patentability, and (2) did so with specific intent to mislead or deceive the PTO." *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012).

2. "Inequitable conduct may involve actions by both 'the patentee and the attorney who prosecuted the application that resulted in the patent-in-suit, because the knowledge and actions of applicant's attorney are chargeable to [the] applicant.'" *Barry v. Medtronic, Inc.*, 245 F. Supp. 3d 793, 801 (E.D. Tex. 2017), *aff'd*, 914 F.3d 1310 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 869 (2020) (citation omitted); *see also Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995); *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 n.8 (Fed. Cir. 1987); *Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1346 (Fed. Cir. 2017) (affirming district court's finding of inequitable conduct as to client based on patent prosecutor's withholding of material references); *see also TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1304 (Fed. Cir. 2016) (affirming district court's finding of inequitable conduct based on inventor and attorney both withholding of prior art during prosecution).

**B.    Ikan's statement that it never intended to abandon the '291 application was material to the Patent Office's decision to revive the application.**

3. "To establish materiality, it must be shown that the [Patent Office] would not have allowed the claim but for the nondisclosure or misrepresentation." *Rosuvastatin*, 703 F.3d at 519.

4. The Patent Office will not revive an intentionally abandoned application. 37 C.F.R. § 1.137(a).

5. A misrepresentation of the applicant's intentional abandonment of an application is therefore material to the Patent Office's determination of whether to revive it. *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1273 (Fed. Cir. 2018).

6. The Patent Office would not have agreed to revive the '291 application had it not been for Mr. Weiss's sworn representation on behalf of Ikan that the entire period of abandonment was unintentional and as such the statement is material to patentability.

7. The Patent Office itself also expressly stated that it was relying on Ikan's statement of unintentional abandonment to grant the petition to revive, confirming that the statement is material.

### C. Ikan's statement that it never intended to abandon the '291 application was false.

8. "Where the applicant deliberately permits an application to become abandoned (e.g., due to a conclusion that the claims are unpatentable, that a rejection in an Office action cannot be overcome, or that the invention lacks sufficient commercial value to justify continued prosecution), the abandonment of such application is considered to be a deliberately chosen course of action, and the resulting delay cannot be considered as 'unintentional' . . . ." M.P.E.P. § 711.03(c), (II)(C)(1); *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d at 1272-73 (citing Changes to Patent Practice and Procedure, 62 Fed. Reg. 53,132, 53,158–59 (Oct. 10, 1997)).

9. Abandonment "is not rendered unintentional when, upon reconsideration, the applicant changes his or her mind as to the course of action that should have been taken." M.P.E.P. § 711.03(c), (II)(C)(1).

10. Delaying revival "by a deliberately chosen course of action, until the industry or a competitor shows an interest in the invention is the antithesis of an 'unintentional' delay." *Id.*, (II)(D).

11. Ikan's statement to the Patent Office that the entire period of abandonment was "unintentional" was false because Mr. Weiss and Ikan made a deliberate decision to abandon the '291 application.

**D.     Ikan's statement that it never intended to abandon the '291 application was made to deceive the Patent Office.**

12.     A patentee's actions "constitute material misrepresentation with intent to deceive" so long as the "intent to deceive the PTO [is] the single most reasonable inference able to be drawn from the evidence." *See Rembrandt*, 899 F.3d at 1272-73 (citation omitted).

13.     "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc); *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1345 (Fed. Cir. 2007).

14.     Here, the single most reasonable inference that can be drawn from the evidence is that Ikan misrepresented the abandonment to induce the Patent Office to grant the petition to revive. Mr. Weiss knew that intentional abandonment is a bar to revival and that he could not successfully revive the application for his client without attesting that the entire period of abandonment was unintentional. He also knew the application was abandoned for more than five years and that Ikan had confirmed the abandonment in the December 2012 assignment document. Mr. Weiss went ahead and swore to the false statement anyway.

15.     A party's failure to investigate whether an abandonment was intentional may also separately establish intent to deceive the Patent Office, because a party who has not investigated the truth or falsity of a claim has no basis from which to swear to its truth. *3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.*, 228 F. Supp. 3d 1331, 1339 (N.D. Ga. 2017).

16.     Here, Mr. Weiss performed no investigation of the abandonment before filing the petition to revive. He testified that he could have confirmed whether the abandonment was intentional by checking his law firm's docketing system, in which his firm records the client's express approval before allowing any patent application to go abandoned. But Mr. Weiss did not

know how the abandonment approval was even noted in his firm's system, because he had "never gone back to look." There is no other evidence of an investigation by Ikan or Mr. Weiss, nor of any results of an investigation.

17. This failure to investigate separately establishes Ikan's intent to deceive the Patent Office. *See id.*

**E. Ikan's inequitable conduct during the prosecution of the '291 application renders the asserted patents unenforceable.**

18. Inequitable conduct in the prosecution of a parent application has an immediate and necessary relation to the prosecution of a continuation application based on that parent. *Consol. Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804, 810 (Fed. Cir. 1990); *see also Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (affirming ruling of unenforceability of continuation patent based on inequitable conduct with respect to parent patent); *Fox Indus. v. Structural Pres. Sys.*, 922 F.2d 801, 803-04 (Fed. Cir. 1990) ("a breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application").

19. Here the asserted patents would not exist if not for the claim that Ikan's abandonment was "unintentional" and thus are rendered unenforceable by Ikan's inequitable conduct in the prosecution of the '291 application.

## CONCLUSION

Amazon respectfully requests the Court adopt its proposed final findings of fact and conclusions of law as set forth above.

| | |
|---|---|
| June 22, 2021 | Respectfully submitted, |
| | /s/ Todd R. Gregorian |
| *Of Counsel:* | J. David Hadden, (CSB No. 176148)<br>Email: dhadden@fenwick.com<br>Saina S. Shamilov, (CSB No. 215636)<br>Email: sshamilov@fenwick.com |
| Barry K. Shelton (TX Bar #24055029)<br>bshelton@sheltoncoburn.com<br>Bradley Dalton Coburn<br>coburn@sheltoncoburn.com<br>SHELTON COBURN LLP<br>311 RR 620 S, Suite 205<br>Austin, TX 78734<br>Tel: (512) 263-2165<br>Fax: (512) 263-2166 | Todd R. Gregorian (CSB No. 236096)<br>Email: tgregorian@fenwick.com<br>Ravi R. Ranganath (CSB No. 272981)<br>Email: rranganath@fenwick.com<br>Allen Wang (CSB No. 278953)<br>Email: allen.wang@fenwick.com<br>Eric B. Young (CSB No. 318754)<br>Email: eyoung@fenwick.com<br>**FENWICK & WEST LLP**<br>Silicon Valley Center<br>801 California Street<br>Mountain View, CA  94041<br>Telephone:  650.988.8500<br>Facsimile:  650.938.5200 |
| | *Counsel for Defendants*<br>*AMAZON.COM, INC., AMAZON.COM SERVICES LLC, PRIME NOW, LLC, and WHOLE FOODS MARKET SERVICES, INC.* |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 22nd day of June 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3). Any other counsel of record will be served by a facsimile transmission and/or first-class mail.

*/s/ Todd R. Gregorian*
Todd R. Gregorian