**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| FRESHUB, INC., a Delaware Corporation, and FRESHUB, LTD., an Israeli Limited Liability Company, | Case No.: 6:21-CV-00511-ADA |
| Plaintiffs, | |
| vs. | |
| AMAZON.COM INC., a Delaware Corporation, AMAZON.COM SERVICES, LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation, | |
| Defendants. | |

**PLAINTIFFS FRESHUB, INC.'S AND FRESHUB, LTD.'S**
**MOTION FOR JUDGMENT ON PARTIAL FINDINGS**
**PURSUANT TO FED. R. CIV. PROC. 52(C)**

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

John Palmer
Texas Bar No. 15430600
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76703
Telephone: (254) 755-4100
Facsimile: (254) 754-6331
palmer@namanhowell.com

*Attorneys for Plaintiffs,*
FRESHUB, INC. and FRESHUB, LTD.

Dated: June 23, 2021

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 52(c), Plaintiffs Freshub, Inc. and Freshub, Ltd. (collectively, "Freshub") move for judgment on partial findings that Defendants have failed to meet their clear and convincing burden of proof for their alleged inequitable conduct defense.[1] Defendants have presented no evidence, much less clear and convincing evidence, to support the baseless claim that Ikan Holdings, LLC made a material misrepresentation to the United States Patent and Trademark Office ("PTO") when it revived U.S. Serial App. No. 11/301,291 (the "'291 Application") following an inadvertent abandonment.[2]  Defendants offer the Court nothing other than some snippets of testimony from Ikan's prosecution counsel David Weiss and only *six* documents—the final office action, the notice of abandonment, the petition to revive, an assignment of patent assets from one Ikan entity to another, the grant of the petition to revive, and a privilege log from Mr. Weiss' firm Knobbe Martens LLP.  These documents do not provide any evidence that the '291 Application was somehow deliberately abandoned and then subsequently revived with a specific intent to deceive the PTO.  Because Defendants cannot meet their high burden on the issue of inequitable conduct, judgment in Freshub's favor on this issue is appropriate.

## II.    FRESHUB IS ENTITLED TO JUDGMENT THAT THERE IS NO INEQUITABLE CONDUCT

Judgment on partial findings is appropriate when the non-moving party "has been fully heard" on a claim or defense, and that claim or defense "can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. Proc. 52(c).  Notably, Federal Rule of Civil

---

[1] "Defendants" collectively refers to Amazon.com, Inc., Amazon.com Services LLC, Prime Now, LLC, and Whole Foods Market Services, Inc.

[2] Ikan Technologies, Inc. applied for the '291 Application and it was included in an assignment of various patent assets to Ikan Holdings, LLC in 2012.  *See* D-293.

Procedure 52(c) "does **not** require the district court 'to draw any inferences in favor of the non-moving party' and permits the court to make a determination 'in accordance with its own view of the evidence.'" *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 964 n.1 (5th Cir. 2016) (emphasis added) (quotation omitted) (affirming district court's grant of judgment on partial findings and setting forth the Rule 52(c) standard).

Here, Defendants bore the burden of showing by clear and convincing evidence that "the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (citation omitted).  The Court has now reviewed the six documents and the snippets of testimony constituting Defendants' purported evidence, which the Court can weigh for itself as Defendants are not entitled to any favorable inferences or deference. *See Fairchild*, 815 F.3d at 964 n.1. Since Defendants' presentation to the Court cannot satisfy the requisite clear and convincing standard, Freshub respectfully requests the Court enter judgment in its favor and find no inequitable conduct.[3]

### A.    There Is No Material Misrepresentation to the Patent Office

Defendants were required to prove by clear and convincing evidence that there was a material misrepresentation to the PTO during prosecution of the '291 Application. *See Therasense,* 649 F.3d at 1287.  Defendants contend that Ikan and its prosecution counsel David

---

[3] "A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)."  Fed. R. Civ. Proc. 52(a).  "In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."  Fed. R. Civ. Proc. 52(a). With its Motion, Freshub has submitted its proposed final proposed findings of fact and conclusions of law pursuant to the Court's Standing Order on Pretrial Procedures and Requirements in Civil Cases.  Freshub respectfully requests that if the Court grants this Motion, that it also adopts Freshub's findings and conclusions in support of its decision.

Weiss misrepresented to the PTO that the '291 Application was unintentionally abandoned and that the period of delay before reviving the application was also unintentional.  As such, Defendants bore the burden to show that the '291 Application was intentionally abandoned, which the Manual of Patent Examining Procedure ("MPEP") defines as "'[w]here the ***applicant deliberately permits*** an application to become abandoned (e.g., due to a conclusion that the claims are unpatentable, that a rejection in an Office action cannot be overcome, or that the invention lacks sufficient commercial value to justify continued prosecution) . . . [that is a] deliberately chosen course of action, and the resulting delay cannot be considered as 'unintentional' . . . ."  MPEP § 711.03(c) (citing *In re Application of G*, 11 U.S.P.Q.2d 1378, 1380 (Comm'r Pat. 1989)) (emphasis added).  The extent of Defendants' purported support for this contention is some testimony from Mr. Weiss, five documents taken directly from the '291 Application's file history, and a privilege log.

Mr. Weiss' testimony does not support any material misrepresentation.  Nowhere in Mr. Weiss' testimony does he state that the averment of unintentional abandonment and unintentional delay was incorrect.  Nowhere does he identify any fact or circumstance that would indicate to him that Ikan had made a deliberate decision to abandon the '291 Application.  Nor was Mr. Weiss ever instructed to abandon the '291 Application.  Thus, Mr. Weiss' testimony fails to establish any fact supporting that a misrepresentation occurred.  To the contrary, his testimony demonstrated that he is an experienced practitioner that is aware of the specific rules in the MPEP which govern unintentional abandonment, he strives to comply with PTO regulations and his duty of candor, and he investigated the abandonment and satisfied himself that the '291 Application was indeed unintentionally abandoned before filing the petition.  *See* Weiss Designated Dep. Tr. at 109:23-110:6, 110:14-111:2, 115:6-15, 115:16-21, 118:16-18, 118:19-

119:4, 119:5-16, 121:3-7, 121:9, 189:13-190:1, 127:14-20, 128:13-16, 189:13-190:1; *see also* D-490 (Petition to Revive).  Specifically, Mr. Weiss understood that the MPEP deems an intentional abandonment to be a directed course of action ***by the applicant*** resulting in abandonment, which is consistent with the actual language of MPEP § 711.03(c) that an intentional abandonment occurs when "the ***applicant deliberately permits*** an application to become abandoned" and that a "deliberately chosen course of action" resulting in abandonment will prevent a delay from being deemed unintentional.  *See* Weiss Designated Dep. Tr. at 117:6-118:13; *see also* Dkt. No. 105-9 (Stoll Report, Ex. 8 to Kobialka Decl. in Support of Freshub's Motion for Summary Judgment of No Inequitable Conduct ("Freshub's MSJ") at ¶¶ 78, 97 (quoting MPEP § 711.03(c) and confirming accuracy of Mr. Weiss' statement of the law) (emphasis added).  The relevant intent to abandon is that of the ***applicant***, which is unrelated to any knowledge of Mr. Weiss.  Given that Mr. Weiss determined there was no intentional abandonment by Ikan, his averment in the revival petition was accurate.

The documents that Defendants identified similarly do not support a finding of a material misrepresentation.  They simply note for the file history what happened during prosecution.  *See* D-291 (Final Rejection); D-292 (Notice of Abandonment); D-490 (Revival Petition); D-296 (Grant of Revival Petition).  Unintentional abandonment and revival is a relatively commonplace occurrence, and the Patent Office considers such revival petitions carefully.  *See* Dkt. No. 105-9 (Stoll Report, Ex. 8 to Kobialka Decl. to Freshub's MSJ) at ¶ 80 (Patent Office only granted 69 percent of revival petitions for unintentional delay from January 2020 to January 2021) (citing Dkt. No. 105-10 (USPTO Petition Data, Ex. 9 to Kobialka Decl. to Freshub's MSJ)).  Thus, the fact of the unintentional abandonment and subsequent revival does not demonstrate any purported misrepresentation.

In particular, the revival petition actually cuts against Defendants, as the PTO acknowledged that some years had passed between the abandonment and revival, but nonetheless granted the petition without exercising its discretion to inquire any further.  D-296 at KNOBBE-000704; *see also* Dkt. No. 105-9 (Stoll Report, Ex. 8 to Kobialka Decl. to Freshub's MSJ) at ¶ 101 (including additional statements in revival petitions to the Patent Office about circumstances of abandonment was not common practice in 2017 because it was not required). Nor is it particularly significant that the Patent Office noted that it was relying on the statement of unintentional delay, as the Patent Office generally does not require further information and states in granted petitions that it relies upon the applicant's duty of candor and good faith in accepting the statement of unintentionality.  *See* Dkt. No. 105-9 (Stoll Report, Ex. 8 to Kobialka Decl. to Freshub's MSJ) at ¶¶ 98-99.  Further, the assignment from the file history transferring assets from one Ikan entity to another as a matter of course does not demonstrate that Ikan knew that the '291 Application specifically was abandoned and it did not constitute a deliberate instruction to Mr. Weiss to abandon the application.  *See* D-293.  Thus, from the perspective of the Patent Office, nothing in the record indicated that the revival petition should not be granted. *See* Dkt. No. 105-9 (Stoll Report, Ex. 8 to Kobialka Decl. to Freshub's MSJ) at ¶¶ 96-100, 102.

Finally, the privilege log does not somehow evidence a deliberate decision by Ikan to abandon the '291 Application.  In fact, it confirms that after January 2012 there were no communications relating to the '291 Application until October 2016.  Further, before submitting the revival petition, Mr. Weiss corresponded with two of the inventors—one who had previously been involved in the prosecution of the '291 Application and Ikan's CEO who was also an inventor—demonstrating an investigation to confirm the unintentional circumstances of abandonment prior to filing the petition for revival.  *See* D-288 (Knobbe Log) at pp. 8-9, rows

82-85, 87, 89, 91-96 (communications through January 2012 were between Knobbe and two particular inventors, not Mr. Douer); *id.* at p. 10, row 108 (no communications about the '291 Application between January 2012 and October 2016); *id.* at p. 10, row 113 (Mr. Weiss copies previous point of contact on communication relating to '291 Application before revival).

For these reasons, Mr. Weiss' testimony, the handful of file history documents, and the Knobbe privilege log submitted by Defendants simply do not demonstrate a material misrepresentation to the PTO and cannot satisfy the burden of clear and convincing evidence.

### B.   There Is No Specific Intent to Deceive

Since there was no material misrepresentation, the Court need not consider intent to deceive. *Scanner Techs. Corp. v. ICOS Visim Sys. Corp.*, 528 F.3d 1365, 1375-76 (Fed. Cir. 2008) (reversing inequitable conduct based on erroneous finding that an affirmation to the PTO was somehow misleading, when there was an "equally reasonable inference" that prosecutor complied with PTO regulations in good faith). Still, Defendants contend that Ikan and Mr. Weiss submitted the revival petition with the specific intent to deceive the PTO, although they have no evidence to support this contention. To prove this contention, Defendants are required to show by clear and convincing evidence that "the specific intent to deceive must be the ***single most reasonable inference*** able to be drawn from the evidence." *Therasense,* 649 F.3d at 1290 (quotation omitted) (emphasis added).

Despite this high burden, the only purported support that Defendants identified for their contention is, again, Mr. Weiss' testimony, a handful of documents from the file history, and a privilege log. The facts identified by Defendants support other reasonable inferences, such that a finding of no inequitable conduct is appropriate. *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 695 (E.D. Tex. 2014) (no inequitable conduct where evidence supported "several reasonable inferences, all just as likely as the inference [of intent to deceive]"); *see also Therasense*, 649

F.3d at 1290-91 (no intent to deceive if there is more than one reasonable inference based on the facts).

Mr. Weiss' testimony does not support an inference of intent to deceive the PTO—to the contrary, he testified that he complies with his duty of candor to the PTO, that he understood that he had an obligation to make a reasonable inquiry into the abandonment, that he satisfied himself that the abandonment was unintentional before filing the petition, and that he knew of the assignment that Defendants raised, but nonetheless determined that Ikan had unintentionally abandoned the patent application. *See* Weiss Designated Dep. Tr. at 109:23-110:6, 110:14-111:2, 115:6-15, 115:16-21, 118:16-18, 118:19-119:4, 119:5-16, 121:3-7, 121:9, 189:13-190:1; *see also* D-490 (Petition to Revive).  Indeed, Mr. Weiss put his patent bar license on the line in submitting the affirmation of unintentionality with the revival petition, which is inconsistent with an inference of intent to deceive.  Dkt. No. 105-12 (3/19/21 Stoll Dep. Tr., Ex. 11 to Kobialka Decl. to Freshub's MSJ) at 104:19-105:7.  These facts demonstrate that the statement of unintentional abandonment in the revival petition was accurate.  Moreover, these facts are contrary to any inference of an intent to deceive the PTO and certainly do not support that the ***single most reasonable inference*** from the facts is an intent to deceive.

Again, Mr. Weiss also understood that the MPEP definition of intentional abandonment is focused on whether "***the applicant*** deliberately permits an application to become abandoned." MPEP § 711.03(c) (emphasis added); *see also id.* ("A delay resulting from a deliberately chosen course of action ***on the part of the applicant*** is not an 'unintentional' delay within the meaning of 37 CFR 1.137.") (emphasis added); *see also* Weiss Designated Dep. Tr. at 117:6-118:13; *see also* Dkt. No. 105-9 (Stoll Report, Ex. 8 to Kobialka Decl. to Freshub's MSJ) at ¶¶ 78, 97 (confirming accuracy of Mr. Weiss' statement of the law).  Mr. Weiss' knowledge as to the

7

status of an application is not relevant to determining whether the applicant abandoned an application intentionally, and thus his investigation into the circumstances of the unintentional abandonment properly focused on the applicant.  There was no evidence to even suggest that there was a deliberate decision by Ikan to abandon the '291 Application, so Mr. Weiss properly filed the revival petition—there is no deceptive intent involved.  *See* D-490.

The five file history documents cited by Defendants are not evidence of an intent to deceive the PTO.  Indeed, far from supporting deceptive intent as the single most reasonable inference, it is objectively ***unreasonable*** to infer deception from nothing more than the regular records in the file history.  *See* D-291 (Final Rejection); D-292 (Notice of Abandonment); D-490 (Revival Petition); D-296 (Grant of Revival Petition); D-293 (Assignment).  Similarly, the assignment reflected in the file history merely moved patent assets from one Ikan entity to another for $1.00.  D-293 at KNOBBE-000675-76.  It lists the '291 Application in an ambiguous chart titled "Inactive/Abandoned/Expired Applications," which lists numerous patent applications of mixed status from around the world, which also contains typographical errors in the row for the '291 Application.  D-293 at KNOBBE-000675-76.  The assignment does not indicate the actual status of the '291 Application or define the various statuses reflected in that mixed chart.  *See generally* D-293.  There is nothing about the assignment indicating an instruction as to the prosecution of any particular asset listed.  *Id.*  Mr. Weiss was aware of the assignment—and of the prosecution history of the '291 Application—and was satisfied that the ***applicant*** had unintentionally abandoned it and had not delayed to revive.  *See* Weiss Designated Dep. Tr. at 109:23-110:6, 110:14-111:2, 115:6-15, 115:16-21, 118:16-18, 118:19-119:4, 119:5-16, 121:3-7, 121:9, 189:13-190:1; *see also* D-490 (Petition to Revive).

Moreover, the Knobbe log introduced by Defendants actually supports that Mr. Weiss properly investigated before filing the revival petition. Revival efforts began in late 2016, shortly before filing the revival petition in January 2017. *See* D-288 (Knobbe Log) at p. 10; *see also* D-490. Before filing the petition, Mr. Weiss corresponded with one of the inventors that had been the original point of contact for the '291 Application prior to January 2012. *See* D-288 at p. 10, row 113. Thus, there is no clear and convincing evidence from the facts of any intent to deceive.

At most, Defendants have asserted that Mr. Weiss was negligent when he concluded in his investigation that the assignment did not constitute evidence of a deliberate decision to abandon the '291 Application. As a matter of law, such an assertion cannot support a finding of inequitable conduct because "[a] finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Therasense*, 649 F.3d at 1290 (citation omitted).

## C.     The Asserted Patents Are Valid and Enforceable

Defendants put on no evidence and have no contentions specific to the asserted patents in this case.[4] Since they have also not proven inequitable conduct with respect to the '291 Application, which matured into the parent patent to the asserted patents, the Court need not reach the enforceability of the asserted patents. Further, in addition to there being no unconscionable act, Defendants have failed to demonstrate an immediate and necessary relation between the alleged inequitable conduct and the issued claims of the later asserted patents. *See Hoffmann-La Roche, Inc. v. Promega Corp*, 319 F. Supp. 2d 1011, 1017 (N.D. Cal. 2004)

---

[4] The Asserted Patents for purposes of this Motion are U.S. Nos. 9,908,153 ("the '153 patent," JTX-1), 10,213,810 ("the '810 patent," JTX-2), and 10,232,408 ("the '408 patent," JTX-3), and 10,239,094 ("the '094 patent"). *See* Dkt. No. 219 at 4 (Final Joint Pretrial Order).

(rejecting motion to hold patents unenforceable under the doctrine of infections enforceability because while inequitable conduct occurred during the prosecution of one patent, defendant failed to demonstrate an immediate and necessary relation to subsequent patents).  Immediate and necessary relation is a high standard.  *See id*. at 1021 (similarity in subject matter does not suffice to constitute an immediate and necessary relation); *see also Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998) ("[W]here the claims are subsequently separated from those tainted by inequitable conduct through a divisional application, and where the issued claims have no relation to the omitted prior art, the patent issued from the divisional application will not also be unenforceable due to inequitable conduct committed in the parent application.").

## III.    CONCLUSION

For the foregoing reasons, Freshub respectfully requests a grant of its Motion for Judgment on Partial Findings finding no inequitable conduct.

Respectfully submitted,

Dated: June 23, 2021

By: */s/Lisa Kobialka*
Paul J. Andre (*Pro Hac Vice*)
Lisa Kobialka (*Pro Hac Vice*)
James Hannah (*Pro Hac Vice*)
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile:  (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

John Palmer
Texas Bar No. 15430600
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76703
Telephone: (254) 755-4100
Facsimile: (254) 754-6331

palmer@namanhowell.com

*Attorneys for Plaintiffs,*
FRESHUB, INC. and FRESHUB, LTD.

## **CERTIFICATE OF SERVICE**

The foregoing document was filed electronically on June 23, 2021, with the Clerk of
Court using the Court's CM/ECF system, which will send a Notice of Electronic Filing on
counsel of record for all other parties who have appeared in this action on the date of such
service.

*/s/ Lisa Kobialka*
Lisa Kobialka