IN UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| FRESHUB, INC., FRESHUB, LTD., <br> *Plaintiffs* <br><br> -vs- <br><br> AMAZON.COM INC., PRIME NOW, LLC, <br> WHOLE FOODS MARKET INC., WHOLE <br> FOODS MARKET SERVICES, INC., <br> AMAZON.COM SERVICES LLC, <br> *Defendants* | § § § § § § § § § § § § §    6:21-CV-00511-ADA |

**FINDINGS OF FACTS AND CONCLUSIONS OF LAW
REGARDING THE INEQUITABLE CONDUCT ISSUE**

**INTRODUCTION**

Plaintiffs Freshub, Inc. and Freshub, Ltd. (collectively, "Freshub") asserted four related patents against Defendants Amazon.com, Inc., Amazon.com Services LLC, Prime Now, LLC, and Whole Foods Market Services, Inc. (collectively, "Amazon"): U.S. Patent Nos. 9,908,153 ("the '153 patent"), 10,213,810 ("the '810 patent"), 10,232,408 ("the '408 patent"), and 10,239,094 ("the '094 patent") (collectively, the "asserted patents"). The asserted patents are all issued from a common parent application No. 11/301,291 ("the '291 application"), which was originally assigned to Ikan Technologies, Inc. ("Ikan").

The '291 application was abandoned in January 2012 for failure to respond to a Final Office Action issued by the U.S. Patent and Trademark Office ("Patent Office"). Five years later, in January 2017, Ikan petitioned the Patent Office to revive the '291 application. The Patent Office subsequently granted Ikan's petition and revived the '291 application, which was later issued as the parent of the asserted patents. As part of its defenses, Amazon contends that the

asserted patents are unenforceable due to inequitable conduct on the part of Ikan, because Ikan made a material misrepresentation to the Patent Office in its petition to revive the '291 application. The Court decided to hold a bench trial for the inequitable conduct issue and a jury trial for all other disputes between the parties.

Jury trial for this case started on June 14, 2021 in the Waco courthouse. On June 21, 2021, after sending the jury to the jury room to deliberate, the Court asked the parties about their witnesses for the bench trial regarding the inequitable conduct issue. The parties represented that they were only going to play the deposition of Mr. David Weiss, the patent attorney who handled the prosecution and revival of the'291 application. *See* Dkt. 244 (6/21/2021 Trial Transcript) at 1442:25-1443:22. The parties did not object to the proposal that the Court review the recording of Mr. Weiss's deposition in private instead of in open court. *Id*. The parties provided the recording of Mr. Weiss's deposition to the Court right afterwards, and the Court duly reviewed the deposition the same day. Also on June 21, 2021, Amazon filed a Notice re Evidence for Bench Trial on Inequitable Conduct (Dkt. 243) and offered the following evidence to prove its case regarding inequitable conduct:

- January 27, 2021 Designated Deposition Testimony of David Weiss (Dkt. 243-1, 243-2);
- Defendants' trial exhibit D0288, Log of Documents Withheld or Redacted for Privilege by Mr. Weiss's law firm – Knobbe, Martens, Olsen & Bear LLP (Dkt. 243-3);
- Defendants' trial exhibit D0291, Final Rejection – U.S. Patent Application 11/301,291 (U.S. 9,821,344 file history) Office Action, dated June 6, 2011 (Dkt. 243-4);

- Defendants' trial exhibit D0292, Notice of Abandonment – U.S. Patent Application 11/301,291 (U.S. 9,821,344 file history), dated Jan. 3, 2012 (Dkt. 243-5);

- Defendants' trial exhibit D0293, Ikan Technologies Inc. Patent Assignment, dated December 4, 2012 (Dkt. 243-6);

- Defendants' trial exhibit D0296, Decision on Petition for Revival – U.S. Patent Application 11/301,291 (U.S. 9,821,344 file history), dated April 20, 2017 (Dkt. 243-7); and

- Defendants' trial exhibit D0490, Petition for Revival of an Application for Patent Abandoned Unintentionally Under 37 CFR 1.137(a) – U.S. Patent Application 11/301,291 (U.S. 9,821,344 file history), dated January 20, 2107 (Dkt. 243-8).

Based on the evidence of record, the Court hereby enters the following findings of facts and conclusions of law.

## FINDINGS OF FACT

1. The asserted patents share a specification and title, and claim priority to a common parent, U.S. Patent No. 9,821,344 ("the '344 patent"). (Defendants' trial exhibit D0002.)

2. Ikan filed the application that matured into the '344 patent, No. 11/301,291 ("the '291 application"), on December 12, 2005. (D0002.)

3. The Patent Office published the '291 application on August 10, 2006. (D0002.)

4. The Patent Office issued a Final Office Action rejecting the claims of the '291 application on June 6, 2011. (Dkt. 243-4 (D0291); Dkt. 243-1 at 84:23-85:10.)

5. David Weiss of Knobbe, Martens, Olsen & Bear LLP was the patent prosecuting attorney for Ikan for the '291 application.

6. Mr. Weiss received the June 6, 2011 Final Rejection, and testified that it was the type of material he would normally forward to his client. (Dkt. 243-4 (D0291); Dkt. 243-1 at 84:23-85:10, 86:9-86:15.)

7. Ikan did not respond by the deadline to continue prosecution. (Dkt. 243-5 (D0292); Dkt. 243-4 (D0291); Dkt. 243-1 at 92:18-92:20.)

8. After six months, on January 3, 2012, the Patent Office sent a Notice of Abandonment. (Dkt. 243-5 (D0292); Dkt. 243-1 at 91:15-92:17.)

9. Mr. Weiss received the Notice of Abandonment, and testified that it was the type of material he would normally forward to his client. (Dkt. 243-5 (D0292); Dkt. 243-1 at 91:15-92:17, 94:13-16, 94:18.)

10. Ikan and Mr. Weiss took no action in response to the Notice of Abandonment and allowed the '291 application to go abandoned. (Dkt. 243-1 at 92:18-20.)

11. On December 4, 2012, Ikan transferred its patent rights to a different Ikan entity, Ikan Holdings LLC, in an assignment eventually recorded at the Patent Office. (Dkt. 243-6 (D0293); Dkt. 243-1 at 101:25-102:5.)

12. Mr. Weiss prepared the assignment document. Sony (Sion) Douer, Ikan's principal and a named inventor on the '291 application, represented both entities in the transaction and signed the document before a notary on behalf of Ikan Technologies Inc. (Dkt. 243-6 (D0293); Dkt. 243-1 at 103:23-105:1, 103:3-19.)

13. The assignment included lists of issued patents and pending applications, as well as a list of "Inactive/Abandoned/Expired" applications. The '291 application is listed as "Inactive/Abandoned/Expired." (Dkt. 243-6 (D0293); Dkt. 243-1 at 103:23-105:1.)

14. The '291 application remained abandoned for about five years. (Dkt. 243-8 (D0490); Dkt. 243-1 at 110:14-111:2.)

15. Ikan petitioned the Patent Office to revive the '291 application on January 20, 2017. (Dkt. 243-8 (D0490); Dkt. 243-1 at 115:6-115-15, 122:2-12.)

16. Mr. Weiss prepared the petition for Ikan and was aware when he filed the petition that Ikan had abandoned the '291 application for over five years. (Dkt. 243-8 (D0490); Dkt. 243-1 at 105:11-18, 115:6-15.)

17. Mr. Weiss knew that the Patent Office would not revive the application unless he swore that the entire period of the abandonment of the '291 application was unintentional. (Dkt. 243-1 at 118:19-119:4.)

18. The same day that Mr. Weiss filed the petition to revive, he also recorded the assignment document that Mr. Douer signed in December 2012, wherein Ikan had acknowledged that it had abandoned the '291 application. (PTX-629, Dkt. 243-1 at 105:11-18, 108:25-109:1, 109:3-4, 109:18-110:6, 118:19-119:4.)

19. In the petition to revive, Mr. Weiss made a sworn statement that the entire five-year delay in responding to the Patent Office's last rejection of the application was "unintentional." (Dkt. 243-8 (D0490); Dkt. 243-1 at 118:19-119:4.)

20. Mr. Weiss knew that the rules required him to investigate the abandonment before requesting revival of the '291 application. (Dkt. 243-8 (D0490); Dkt. 243-1 at 128:13-16.)

21. Mr. Weiss could not identify specific actions he took to investigate the abandonment of the '291 application other than looking at his firm's docketing system. (Dkt. 243-1 at 128:13-16, 135:19-23; 136:6-8; 137:17-19, 138:22-23.)

22. The Patent Office considered Ikan's January 20, 2017 petition to revive the '291 application and granted Ikan's petition on April 20, 2017.

23. In its decision granting Ikan's revival petition for the '291 application, the Patent Office stated:

> This application has been abandoned for an extended period of time. The U.S. Patent and Trademark Office is relying on petitioner's duty of candor and good faith and accepting the statement that "the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137 was unintentional."

(Dkt. 243-7 (D0296); Dkt. 243-1 at 122:2-123:1, 125:3-125:12, 125:17-23.)

24. The Patent Office also noted that the applicant is "obligated under 37 CFR 11.18 to inquire into the underlying facts and circumstances when providing the statement required by 37 CFR 1.137." (Dkt. 243-7 (D0296); Dkt. 243-1 at 127:14-127:20.)

## CONCLUSIONS OF LAW

1. "To prove inequitable conduct, the challenger must show by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012); *see also Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011).

2. "Inequitable conduct may involve actions by both 'the patentee and the attorney who prosecuted the application that resulted in the patent-in-suit, because the knowledge and actions of applicant's attorney are chargeable to [the] applicant.'" *Barry v. Medtronic, Inc.*, 245

F. Supp. 3d 793, 801 (E.D. Tex. 2017), *aff'd*, 914 F.3d 1310 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 869 (2020) (citation omitted); *see also Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995); *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 n.8 (Fed. Cir. 1987); *Regeneron Pharm., Inc. v. Merus N.V.,* 864 F.3d 1343, 1346 (Fed. Cir. 2017) (affirming district court's finding of inequitable conduct as to client based on patent prosecutor's withholding of material references); *see also TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1304 (Fed. Cir. 2016) (affirming district court's finding of inequitable conduct based on inventor and attorney both withholding of prior art during prosecution).

**A.     Materiality**

3.     "To establish materiality, it must be shown that the [Patent Office] would not have allowed the claim but for the nondisclosure or misrepresentation." *Rosuvastatin*, 703 F.3d at 519.

4.     The Patent Office will not revive an intentionally abandoned application. 37 C.F.R. § 1.137(a).

5.     A misrepresentation of the applicant's intentional abandonment of an application is therefore material to the Patent Office's determination of whether to revive it. *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1273 (Fed. Cir. 2018).

6.     The Patent Office would not have agreed to revive the '291 application had it not been for Mr. Weiss's sworn representation on behalf of Ikan that the entire period of abandonment was unintentional and as such the statement is material to patentability.

7.     The Patent Office itself also expressly stated that it was relying on Ikan's statement of unintentional abandonment to grant the petition to revive, confirming that the statement is material.

### B.     Misrepresentation

8.      "Where the applicant deliberately permits an application to become abandoned (e.g., due to a conclusion that the claims are unpatentable, that a rejection in an Office action cannot be overcome, or that the invention lacks sufficient commercial value to justify continued prosecution), the abandonment of such application is considered to be a deliberately chosen course of action, and the resulting delay cannot be considered as 'unintentional' . . . ." M.P.E.P. § 711.03(c), (II)(C)(1).

9.      Abandonment "is not rendered unintentional when, upon reconsideration, the applicant changes his or her mind as to the course of action that should have been taken." M.P.E.P. § 711.03(c), (II)(C)(1).

10.     Delaying revival "by a deliberately chosen course of action, until the industry or a competitor shows an interest in the invention is the antithesis of an 'unintentional' delay." *Id.*, (II)(D).

### C.     Intent to Deceive

11.     If the Court finds that there was no material misrepresentation, the Court needs not consider intent to deceive. *Scanner Techs. Corp. v. ICOS Visim Sys. Corp.*, 528 F.3d 1365, 1375-76 (Fed. Cir. 2008).

12.     "Intent and materiality are separate requirements." *Therasense,* 649 F.3d at 1290 (citation omitted). "A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa. Moreover, a district court may not infer intent solely from materiality." *Id.*

13.     Proof of intent requires clear and convincing evidence that "the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Id.*; *see also Rembrandt*, 899 F.3d at 1272-73 (A patentee's actions "constitute material

misrepresentation with intent to deceive" when the "intent to deceive the PTO [is] the single most reasonable inference able to be drawn from the evidence." (citation omitted)).

14.     If "several reasonable inferences, all just as likely as the inference [of intent to deceive]" can be supported by the evidence, then a finding of no inequitable conduct is appropriate. *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 695 (E.D. Tex. 2014) (finding no inequitable conduct where the evidence provided for "several reasonable inferences, all just as likely as the inference [of intent to deceive]"); *see also Therasense*, 649 F.3d at 1290-91 (if more than one reasonable inference can be drawn from the facts, there can be no finding of intent to deceive).

15.     "[T]he 'patentee need not offer any good faith explanation unless the accused infringer first ... prove[s] a threshold level of intent to deceive by clear and convincing evidence' … The absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive." *Therasense,* 649 F.3d at 1291 (quoting *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1368 (Fed. Cir. 2008)).

16.     "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense*, 649 F.3d at 1290; *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1345 (Fed. Cir. 2007).

17.     "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Therasense,* 649 F.3d at 1290 (citation omitted).

### D.     Doctrine of Infectious Unenforceability

18.     Inequitable conduct in the prosecution of a patent may render unenforceable other related patents if there is an "immediate and necessary relation" between the misrepresentation and granting of the related patents. *Hoffmann-La Roche, Inc. v. Promega Corp*, 319 F. Supp. 2d

1011, 1017 (N.D. Cal. 2004) (citing *Consol. Aluminum Corp. v. Foseco Int'l Ltd*., 910 F.2d 804, 810 (Fed. Cir. 1990)).

19. Inequitable conduct in the prosecution of a parent application may have an "immediate and necessary relation" to the prosecution of a continuation application based on that parent. *Consol. Aluminum Corp. v. Foseco Int'l, Ltd.*, 910 F.2d 804, 810 (Fed. Cir. 1990); *see also Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (affirming ruling of unenforceability of continuation patent based on inequitable conduct with respect to parent patent); *Fox Indus. v. Structural Pres. Sys.*, 922 F.2d 801, 803-04 (Fed. Cir. 1990) ("[A] breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application.").

20. However, "where the claims are subsequently separated from those tainted by inequitable conduct through a divisional application, and where the issued claims have no relation to the omitted prior art, the patent issued from the divisional application will not also be unenforceable due to inequitable conduct committed in the parent application." *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998).

SIGNED this 30th day of July, 2021.

*[signature]*

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE