UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| FRESHUB, INC. and FRESHUB, LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware Corporation, AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation,<br><br>Defendants. | Case No. 6:21-CV-00511-ADA |

**DEFENDANTS' MOTION TO AMEND FINDINGS UNDER FRCP 52(b)**

On July 30, 2021 the Court issued findings of facts and conclusions of law regarding the inequitable conduct defense. (Dkt. 271 ("Findings of Facts").) On August 3, 2021, the Court issued a memorandum opinion and order that granted Freshub's motion for judgment on partial findings under Fed. R. Civ. P. 52(c). (Dkt. 272 ("Order").) On August 10, 2021, the Court vacated its Findings of Facts as "rendered unnecessary by the Court's August 3, 2021 Order." (Dkt. 274). Defendants Amazon.com, Inc., Amazon.com Services LLC, Prime Now, LLC, and Whole Foods Market Services, Inc. (collectively "Defendants") petition the Court to amend its Findings of Facts and Order under Fed. R. Civ. P. 52(b) as outlined below.

**I.      LEGAL STANDARD**

Under Rule 52(b), a party may petition the trial court to amend its findings of fact following a bench trial. *See, e.g.*, *DDB Techs., L.L.C. v. Fox Sports Interactive Media, LLC*, No. A-11-CV-929-LY, 2015 WL 7709458, at *1 (W.D. Tex. Mar. 31, 2015) (citing *Fontenot v. Mesa Petroleum*

*Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986)).  The purpose of motions to amend is generally to correct errors of law or fact.  *Id*.  A party may move to amend the findings of fact even if the modified or additional findings would in effect require the court to reverse the judgment: "If the trial court has entered an erroneous judgment, [the court] should correct it."  *Fontenot* at 1219 (citing 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 52.11[2] (2d ed. 1985)).  Moving under Rule 52(b) in the trial court is sufficient to preserve a party's appeal that the record supported additional or more specific findings.  *See Irving Tanning Co. v. Kaplan*, 876 F.3d 384, 390 (1st Cir. 2017) (citing Wright & Miller, *Federal Practice and Procedure* § 2582 at 358–59 (3d ed. 2013)).

**II.   ARGUMENT**

Defendants request that the Court reinstate the Findings of Facts, particularly any findings of fact or conclusions of law that are not set forth in the Order.  *See* Fed. R. Civ. P. 52(a)(1) & (c).  Defendants also proposed additional findings of fact that the Court did not adopt before granting judgment to Freshub on partial findings.  The evidence at the bench trial supported these findings (as well as more specific constituent findings), which, if adopted, require judgment in favor of Defendants on the inequitable conduct defense.  The Court should therefore also amend or supplement its findings to include all the following facts, which are uncontroverted in the record:

1. To avoid claims of malpractice, Mr. Weiss does not allow a patent application to go abandoned without first obtaining his client's express approval. (*See* Dkt. 255 at ¶ 10.)  The evidence at trial established this fact, as well as the more specific constituent facts that:

    1a. Mr. Weiss has previously intentionally allowed patent applications to go abandoned at the direction of the client (Dkt. 243-1 at 23:23–24:4);

    1b. The "vast majority of the time" he does that by just failing to respond to office action (*id.* at 24:10–13);

    1c. Mr. Weiss knew that letting a patent application go abandoned can be a

basis for malpractice (*id.* at 26:17–26:20);

1d.     Mr. Weiss's law firm, Knobbe, has a docketing system so that patent lawyers know when deadlines are due so that they do not miss a date and let a patent application go abandoned (*id.* at 24:18–24:22; 26:21–27:3; 28:4–28:8);

1e.     Knobbe would communicate office actions that they received to the client and inform the client on the timing of the response (*id.* at 26:21–27:3);

1f.     It was Knobbe's procedure in 2011 that it would not just respond to an office action without first getting authorized by the client, except if the client had already authorized the response, *i.e.*, given Knobbe specific instructions to respond automatically (*id.* at 31:12–19);

1g.     A notice of abandonment is a material patent office communication that Knobbe forwards to the client (*id*. at 37:16–37:23; *see also* Findings of Fact at p. 4, ¶ 9);

1h.     Knobbe has a practice of documenting the fact that the client was notified of a deadline and agreed to let it lapse, by telling the docketing department to document that Knobbe received an instruction to allow the application to go abandoned (*id.* at 39:2–14; 39:16–40:1);

1j.     Knobbe and Mr. Weiss do this so that they have a record to show that what they did was approved by the client (*id.* at 40:16–19); and

1k.     There is a resulting indication in the docketing system that one can go back and look at as evidence that it was approved by the client to let a deadline lapse and let a patent go abandoned (*id.* at 40:20–25).

2.     Mr. Weiss communicated with the inventors of the '291 application after each of

the June 6, 2011 Final Rejection and the January 3, 2012 Notice of Abandonment. (*See* Dkt. 255 at ¶ 12 (citing Dkt. 243-4 (D0291); Dkt. 243-5 (D0292); Dkt. 243-2 (D0288); Dkt. 243-1 at 86:9–15; 86:18–19; 87:3–19; 93:2–15; 93:17–18).)[1]

3.  Mr. Weiss knew the Patent Office standards for determining whether an abandonment was intentional or inadvertent. (*See* Dkt. 255 at ¶ 19 (citing Dkt. 243-8 (D0490); Dkt. 243-1 at 115:16–21, 125:3–12, 125:17–23).) The evidence at trial established that fact, as well as the more specific constituent facts that:

>   3a.  Mr. Weiss knew what it meant for a patent application to go abandoned and that the consequence of abandonment was that prosecution would stop and no patent would issue from that application (Dkt. 243-1 at 22:15–23:22);
>
>   3b.  Mr. Weiss has practiced patent law for over 25 years and is reasonably familiar with the rules and regulations of the Patent Office (*id.* at 189:13–19);
>
>   3c.  Mr. Weiss understood that he had "an obligation to do a full investigation" concerning the statement required by 37 C.F.R. 1.137 concerning whether the abandonment of the '291 application was intentional or inadvertent (*id.* at 125:3–12; 127:14–20; 128:13–16).

4.  Mr. Weiss knew in December 2012 that the '291 application was abandoned and had provided his client, Sony Douer, the document that specifically listed it as abandoned. (Dkt. 243-1 at 119:5–16; 121:3–9.)

---

[1] The privilege log Knobbe produced in the case identifies those communications occurring shortly in time after Mr. Weiss received the Final Rejection and Notice of Abandonment, and Mr. Weiss confirmed them at his deposition, including the fact that the privilege log contains *only* communications relevant to the asserted patents, meaning these specific communications all concerned the prosecution of the '291 application. (*See id.*) The Court acknowledged the communications in its Order (at p. 11) but did not adopt any related findings.

5. Mr. Weiss knew in 2013, 2014, and 2015 that the '291 application was abandoned. (Dkt. 243-1 at 119:5–16.)

6. Mr. Weiss did nothing in 2012, 2013, 2014, or 2015 to revive the abandoned '291 application. (Dkt. 243-1 at 109:23–110:6; 110:14–111:2.)

7. Mr. Weiss did not perform an investigation before swearing to the statement that Ikan had abandoned the '291 patent unintentionally. (*See* Dkt. 255 at ¶ 24; (citing Dkt. 243-1 at 128:13–16, 137:17–19, 138:22–23).)

8. Mr. Weiss could identify no step he had taken to investigate the abandonment other than looking at the December 2012 assignment document. (*See* Dkt. 255 at ¶ 25 (citing Dkt. 243-1 at 128:13–16, 137:17–19, 138:22–23).)

9. Mr. Weiss did not point to any fact he had identified during the preparation of the petition that indicated that the abandonment of the '291 application was unintentional rather than intentional. (*See* Dkt. 255 at ¶ 26 (citing Dkt. 243-1 at 40:16–19, 137:17–19, 138:22–23).)

10. Mr. Weiss testified that his firm maintains a record showing when a client has expressly approved an abandonment. (Dkt. 255 at ¶ 27 (citing Dkt. 243-1 at 40:16–19, 137:17–19, 138:22–23).)

11. By consulting that record, Mr. Weiss could have confirmed whether Ikan had expressly approved abandoning the '291 application. (*See id.*; *see also* Dkt. 243-1 at 39:2–14; 39:16–18; 40:20–25.)

12. Nevertheless, Mr. Weiss did not investigate this record before filing the petition to revive the '291 application on behalf of Ikan. (*See* Dkt. 255 at ¶ 28 (citing Dkt. 243-1 at 40:16–19, 137:17–19, 138:22–23).)

13. Instead, Mr. Weiss testified that he did not know how approval of an abandonment

was noted in the docketing system because he had "never gone back to look." (Dkt. 243-1 at 39:20–40:1.)

14. And when asked specifically whether he had checked the docketing system for a notification that the abandonment of the '291 application was authorized, Mr. Weiss testified that he could not recall. (Ex. 1 at 137:17–19; 138:22–23.)[2]

***

Together, and when considered in connection with the Court's other findings, these uncontroverted facts establish that Ikan and Mr. Weiss knew and chose *for at least some* of the five-year period of abandonment to deliberately stop prosecuting the '291 application, and that Mr. Weiss knew his required statement in the revival petition was false but made it anyway to induce the Patent Office to revive the application. *See* Restatement (Second) of Torts § 8A (1965) ("Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.").

---

[2] The record demonstrates that Mr. Weiss did not identify any step he took to investigate the abandonment (though he knew that was his obligation); nor did he identify any fact that any alleged "investigation" uncovered to indicate the abandonment was unintentional (though he knew that was necessary to revival). Mr. Weiss did look at the 2012 assignment document, but even Mr. Weiss himself confirmed he had listed the '291 application *as abandoned* in that document and then had provided the document to Sony Douer of Ikan to sign. Moreover, the finding that the Court adopted concerning this subject is manifestly erroneous, because it states that Mr. Weiss *looked at his firm's docketing system* to investigate the abandonment of the '291 application, whereas Mr. Weiss clearly testified otherwise. (Findings of Fact at p. 6, ¶ 21; *see also* Order at 6.) The first citation the Court relied on shows only that Mr. Weiss knew that an investigation into the nature of the abandonment was *necessary*, not that he performed one. (Dkt. 243-1 at 128:13–16.) And while Mr. Weiss uttered a "yes" during a long colloquy concerning his counsel's objections to questioning about the docketing system (*see* Ex. 1 at 135:19–138:23; Ex. 2), his direct answers match Defendants' proposed findings above: that he did not know how abandonment approvals were noted in the docketing system because he *had never gone back to look*, and that *he did not recall* checking the docket to see if the abandonment of the '291 application was authorized.

### III.     CONCLUSION

Defendants request that the Court amend or supplement its Findings of Facts to include all facts identified above and amend its Order to hold that the statement offered to revive the '291 application was false and made with intent to deceive the Patent Office, and the asserted patents are unenforceable due to inequitable conduct.

Dated:  August 11, 2021                                          Respectfully submitted,

*Of Counsel:*                                                    */s/ Todd R. Gregorian*
                                                             J. David Hadden, CSB No. 176148
Barry K. Shelton (TX Bar #24055029)                              dhadden@fenwick.com
bshelton@sheltoncoburn.com                                       Saina S. Shamilov, CSB No. 215636
SHELTON COBURN LLP                                               sshamilov@fenwick.com
311 RR 620 S, Suite 205                                          Todd R. Gregorian, CSB No. 236096
Austin, TX 78734                                                 tgregorian@fenwick.com
 Tel: (512) 263-2165                                             Ravi R. Ranganath, CSB No. 272981
 Fax: (512) 263-2166                                             rranganath@fenwick.com
                                                             Vigen Salmastlian, CSB No. 276846
Deron R. Dacus (TX Bar #00790553)                                vsalmastlian@fenwick.com
ddacus@dacusfirm.com                                             Allen Wang, CSB No. 278953
THE DACUS FIRM, P.C.                                             allen.wang@fenwick.com
821 ESE Loop 323, Suite 430                                      Eric B. Young, CSB No. 318754
Tyler, TX 75701                                                  eyoung@fenwick.com
Tel: (903) 705-1117                                              **FENWICK & WEST LLP**
Fax: (903) 581-2543                                              801 California Street
                                                             Mountain View, CA  94041
                                                             Telephone:  650.988.8500
                                                             Facsimile:  650.938.5200

*Counsel for Defendants*
*AMAZON.COM, INC., AMAZON.COM*
*SERVICES LLC, PRIME NOW, LLC, and*
*WHOLE FOODS MARKET SERVICES, INC.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 11th day of August 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).

*/s/ Todd R. Gregorian*
Todd R. Gregorian