**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| FRESHUB, INC., a Delaware Corporation, and FRESHUB, LTD., an Israeli Limited Liability Company, <br><br> Plaintiffs, <br><br> vs. <br><br> AMAZON.COM INC., a Delaware Corporation, AMAZON.COM SERVICES, LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation, <br><br> Defendants. | Case No.: 6:21-CV-00511-ADA |

**PLAINTIFFS FRESHUB, INC. AND FRESHUB, LTD.'S**
**OPPOSITION TO DEFENDANTS' RULE 50(B) RENEWED**
**MOTION FOR JUDGMENT AS A MATTER OF LAW**

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

John Palmer
Texas Bar No. 15430600
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76703
Telephone: (254) 755-4100
Facsimile: (254) 754-6331
palmer@namanhowell.com

*Attorneys for Plaintiffs,*
FRESHUB, INC. and FRESHUB, LTD.

Dated: August 25, 2021

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................................1

II.  BACKGROUND ....................................................................................................2

III. ARGUMENT .........................................................................................................3

   A.   Defendants' Motion is Untimely ........................................................... 3

   B.   Defendants' Waived Their Section 101 Defense................................... 5

   C.   The Asserted Claims are Patentable Under 35 U.S. C. § 101................................ 7

      1.   Step 1: The Asserted Patents are not directed to an abstract idea.............. 8

      2.   Step 2: Freshub presented substantial evidence that the Asserted Claims do not involve only "well-understood, routine, and conventional" technology under Step 2. ................................................... 11

IV.  CONCLUSION.....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)...................................................................14

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)..........................................................................1, 7, 8, 9

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016)...................................................................13

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)...............................................................10, 11

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)...................................................................13

*Baylis v. Wal-Mart Stores, Inc.*,
  No. 1:10-cv-00069-GHD, 2012 WL 5354540 (N.D. Miss. Oct. 29, 2012)..............................4

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)................................................................7, 13

*C.R. Bard, Inc. v. Med. Components, Inc.*,
  No. 2:12-cv-00032-RJS-DAO, 2021 WL 3109914 (D. Utah July 22, 2021).........................14

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018).....................................................................8

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016).....................................................................8

*ESW Holdings, Inc. v. Roku, Inc.*,
  No. 6:19-cv-00044-ADA, 2019 WL 10303653 (W.D. Tex. May 13, 2019).........................13

*Guidry v. Kem Mfg. Co.*,
  604 F.2d 320 (5th Cir. 1979) ...................................................................6, 7

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018).....................................................................8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016)....................................................................13

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)...........................................................................14

*Randle v. Tregre*,
    No. 15-395, 2016 WL 760770 (E.D. La. Feb. 26, 2016)............................................4

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133, 150 (2000).......................................................................................14

*SimpleAir, Inc. v. Google Inc.*,
    136 F. Supp. 3d 745 (E.D. Tex. 2015) .....................................................................8

*Slade Gorton & Co. v. Millis*,
    794 F. Supp. 175 (E.D.N.C. 1992), *aff'd*, 62 F.3d 1433 (Fed. Cir. 1995) ................6

*Thales Visionix Inc. v. United States*,
    850 F.3d 1343 (Fed. Cir. 2017)............................................................................8, 9

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)...............................................................................10

*Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*,
    No. 9:09-cv-176, 2010 WL 11469881 (E.D. Tex. May 17, 2010) ...........................14

*VOIT Techs., LLC v. Del-Ton, Inc.*,
    No. 5:17-cv-259-BO, 2018 WL 385188 (E.D.N.C. Jan. 11, 2018), *aff'd*, 757
    F. App'x 1000 (Fed. Cir. 2019) .........................................................................10, 11

*Wahpeton Canvas Co. v. Frontier, Inc.*,
    870 F.2d 1546 (Fed. Cir. 1989)................................................................................6

**Statutes**

35 U.S.C. § 101....................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 6(b)(2) ................................................................3, 4

Federal Rule of Civil Procedure 50(b).................................................................1, 3, 5

## I.     INTRODUCTION

Nothing in the Federal Rules of Civil Procedure authorizes Defendants' Renewed Rule 50(b) Motion for Judgment as a Matter of Law (Dkt. No. 275, "Motion"), which is **_three weeks_** late under Rule 50(b) and seeks a "do-over" on the patent eligibility defense that Defendants waived at trial.  Defendants relinquished their alleged defense when they affirmatively declined to require the jury to answer the third question on the verdict form, which addressed the underlying factual questions of "Step 2" of the _Alice_ eligibility test.  As a result, there is no verdict on the defense and the entry of judgment does not address it.  Any renewed JMOL that "addresses a jury issue not decided by a verdict" is due "28 days after the jury was discharged." Fed. R. Civ. P. 50(b).  In this case, that was July 20, 2021—well before Defendants filed the instant Motion on August 11, 2021.

Moreover, Rule 50(b) is not a tool for resurrecting waived jury issues by post-trial motion.  Defendants, who elected not to have the jury deliberate on the issue, now seek to inappropriately substitute the Court for the jury.  Their request goes against both Federal and Fifth Circuit authority and should be denied.

Further, the record supports only one conclusion—that the Asserted Claims are patent eligible.  Defendants never attempted to prove both steps of the _Alice_ inquiry by clear and convincing evidence.  Defendants' Motion does nothing more than hand wave over Step 1, taking for granted that the Court had already decided it in Defendants' favor.  But there is no such decision on Step 1, evident from the fact that Defendants do not cite to one.  Both parties filed summary judgment motions on patent eligibility and the Court summarily denied them. That denial does not amount to a finding in Defendants' favor at Step 1.  Further, Defendants made no attempt to argue in their Motion, much less present the requisite clear and convincing evidence, that the Asserted Claims are somehow directed to an abstract idea.  Notwithstanding

Defendants' failures to meet its burden of proof which is fatal to Defendants' Motion, Freshub demonstrates how the Asserted Claims are directed toward novel distributed system architectures designed to provide specific improvements to voice processing, and has substantial trial evidence that the Asserted Claims are inventive concepts when examined as an ordered combination. Thus, Defendants' Motion should be denied.

## II.    BACKGROUND

There can be no dispute that the jury was asked to address Step 2 of patent eligibility.  By way of background, the Court summarily denied both parties' motions for summary judgment as to Defendants' patent eligibility defense.[1]  Dkt. No. 210, 5/21/21 Pretrial Hrg. Tr. at 51:14-16; Dkt. No. 111 at 6-16; Dkt. 106 at 17-22.   Defendants asked the Court to clarify whether the Court's denial of summary judgment was at Step 1 or Step 2.  *See* 6/14/21 Trial Tr. at 30:7-16. In response, the Court stated that the parties would be trying Step 2 to the jury.  *See id.*

After the close of all evidence on June 21, 2021, Defendants filed a Rule 50(a) Motion for Judgment as a Matter of Law which addressed their patent eligibility allegations (6/21/21 Trial Tr. at 1328:17-21; Dkt. No. 240 at 12-14).  The Court denied the motion (6/21/21 Trial Tr. at 1328:17-21).  The Court instructed the jury on Step 2 of Defendants' patent eligibility defense (Dkt. No. 247 at 30 (Instruction No. 2.20 on Patent Eligibility)) and the special verdict form included a question specifically asking the jury to make a finding as to the Step 2 inquiry (Dkt. No. 253 (Verdict) at 5).

On June 22, 2021, the jury returned a unanimous verdict as to question one regarding infringement and question two regarding validity.  After the verdict was read, counsel for Defendants inquired as to whether the jury answered question three regarding patent eligibility,

---

[1] Defendants also filed an unsuccessful Motion to Dismiss based on patent eligibility at the outset of the case. *See* Dkt. No. 28.

stating that a response to the question was not conditional, i.e., it was required as it was set forth on the special verdict form. *See* 6/22/21 Trial Tr. at 1452:1-21, 1452:25-1453:12. The Court informed the parties that question three was not answered and asked counsel for Defendants whether they wanted the jury to "go back and answer" question three. *Id*. at 1452:25-1453:7. After counsel for Defendants conferred, they confirmed "We don't need anything further," allowing the Court to excuse the jurors without answering question three. *Id*. at 1453:11-12.

On July 15, 2021, the Court entered judgment "in accordance with the jury verdict" that the Asserted Claims are not infringed by Amazon and are not invalid, and that no damages are awarded to Freshub. *See* Dkt. No. 268 at 1-2. The Court's judgment did not address patent eligibility. *Id*.

On August 11, Defendants "move[d] under Rule 50(b) of the Federal Rules of Civil Procedure for judgment as a matter of law that the asserted claims in this case are invalid under 35 U.S.C. § 101." *See* Motion at 1.

## III.   ARGUMENT

### A.   Defendants' Motion is Untimely

Defendants filed their Motion more than three weeks after the deadline set by the Federal Rules. The Court should deny their Motion for this reason alone, because the time to file a Rule 50(b) Motion is not extendable under the Federal Rules. Fed. R. Civ. P. 6(b)(2). Rule 50(b) is not ambiguous—it requires that "No later than 28 days after the entry of judgment—or if the motion addresses a jury issue ***not decided by a verdict***, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law . . . ." Fed. R. Civ. P. 50(b) (emphasis added). The jury was discharged in this matter on June 22, 2021. *See, generally,* 6/22/21 Trial Tr. at 1453:15-1456:8 (after the jury delivered its verdict, the Court thanked and excused them from service). There is no dispute that the jury did not render a

verdict on Defendants' patent eligibility defense because they were discharged without answering the pertinent question on the verdict form once Defendants declined the Court's invitation to require the jury to return to address it.  Dkt. No. 253 (Verdict) at 5; 6/22/21 Trial Tr. at 1452:1-21, 1452:25-1453:12.  Further, because the Court's entry of judgment does not address the patent eligibility defense (Dkt. No. 268 at 1), Defendants were required to submit any motion on a "jury issue not decided by a verdict" by no later than July 20, 2021.  They did not do so and instead filed this Motion on August 11, 2021, apparently trying to position their Motion as being due according to the inapplicable entry of judgment deadline, despite the fact that the subject of their Motion was ***not*** part of the entry of judgment.  *See, generally,* Motion.

Defendants' untimeliness cannot be excused as a matter of law.  The Federal Rules require that "[a] court must not extend the time to act under Rule[] 50(b) . . . ."  Fed. R. Civ. P. 6(b)(2).  Any late Rule 50(b) motion must be denied based on Rule 6(b)(2)'s express requirement, even if only ***a single day*** late.  *See, e.g.*, *Baylis v. Wal-Mart Stores, Inc.*, No. 1:10-cv-00069-GHD, 2012 WL 5354540, at *1-2 (N.D. Miss. Oct. 29, 2012) (absent a verdict, Rule 50(b) motion was due 28 days after jury's discharge; motion made only four days late must be stricken by operation of Rules 50(b) and 6(b)(2)); *see also Randle v. Tregre*, No. 15-395, 2016 WL 760770, at *2 (E.D. La. Feb. 26, 2016) ("The Court concludes that because defendants are correct that Randle's motion was untimely [by one day], the motion must be denied on that basis alone.").  Here, Defendants were ***weeks*** late.

Notably, while Defendants mention Rule 50(b) in both the title and first sentence of their Motion, they make no effort to identify what portion of the rule they contend supports their filing.  *See* Motion at 1.  There is no defensible provision or excuse that they can point to, and their failure to comply with the Federal Rules' fundamental requirements is fatal to their Motion.

**B.**     **Defendants' Waived Their Section 101 Defense**

Defendants waived their alleged section 101 defense because they knowingly rejected the Court's invitation to have the jury answer the special verdict question regarding Step 2 of patent eligibility, thus permitting the verdict to be entered without resolution by the jury on the issue. *See* 6/22/21 Trial Tr. at 1452:1-21, 1452:25-1453:12.  The question of Step 2 of patent eligibility was submitted to the jury here and Defendants cannot reasonably contend otherwise.  The Court denied Defendants' pre-verdict Motion for Judgment as a Matter of Law, including their patent eligibility allegations (6/21/21 Trial Tr. at 1328:17-21; Dkt. No. 240 at 12-14), which means "the court is considered to have submitted the action to the jury."  Fed. R. Civ. P. 50(b).  Indeed, Defendants fought to ensure that the special verdict form had the patent eligibility question on it as an issue the jury must decide.  *See* Dkt. No. 219-9 (Defendants' Proposed Verdict Form attached as Ex. F-2 to Final JPTO) at 5 (requesting unconditional question to jury regarding patent eligibility).  Ultimately, the Court accepted Defendants' special verdict form question on Step 2 and placed it at question three, where a response was required.  Dkt. No. 253 (Verdict) at 5.  Thus, unlike other questions on the special verdict form where responses were conditioned upon a specific response to an earlier special verdict question, the jury was to respond to the third question of the special verdict form independent of their earlier responses.  *Id*. at 6 ("If you have reached this point in the verdict form, you should have answered Questions 1 through 3. If you have not . . . please go back and answer them before proceeding."); *compare id.* ("You should only proceed to answer Questions 4 and 5 [on damages and willfulness] if you (1) answered "YES" for any claims in Question 1, and (2) you answered "NO" for those same claims in Question 2.").

When the jury did not respond to the third question relating to Step 2 of patent eligibility, Defendants made a deliberate and measured decision that the jury did not need to answer it.

Specifically, when the jury returned its unanimous verdict, Defendants asked the Court to confirm that the third question was unanswered.  *See* 6/22/21 Trial Tr. at 1452:1-21, 1452:25-1453:12.  The Court confirmed and asked Defendants if they would like the jury to return to the jury room to complete the special verdict form.  *Id.*  Defendants requested time to confer, and after conferring, confirmed "We don't need anything further," thereby waiving a jury decision on the third question of the verdict form.  *Id.* at 1453:11-12.  Defendants did not object to the verdict, move for mistrial, or indicate that they intended to seek resolution of this question by the Court later, after fighting to have the jury address the issue as an unconditional question.  *See, generally,* 6/22/21 Trial Tr.; Dkt. No. 219-9 (Defendants' Proposed Verdict Form attached as Ex. F-2 to Final JPTO) at 5 (requesting unconditional question to jury regarding patent eligibility).

Defendants cannot walk away from their affirmative waiver.  The Federal Circuit has found that "failure to seek resubmission to the jury of the special interrogatories on which the jury returned no answers precludes entry of findings of fact by the court on those issues."  *Slade Gorton & Co. v. Millis*, 794 F. Supp. 175, 177 (E.D.N.C. 1992), *aff'd*, 62 F.3d 1433 (Fed. Cir. 1995) (jurors answered sufficient special interrogatories to form a verdict dispositive of patent case; parties not entitled to have court answer the remaining questions); *see also Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553-55 (Fed. Cir. 1989) (citation omitted) (vacating judgment on post-trial motion purporting to answer unanswered special interrogatories).  Defendants did not only fail to seek resubmission—they ***declined*** the Court's offer of resubmission.

Similarly, the Fifth Circuit has found that "a trial judge can decide any issue of fact omitted from the written questions [of a special verdict form] but the judge cannot resolve those issues of fact that were submitted."  *Guidry v. Kem Mfg. Co.*, 604 F.2d 320, 321 (5th Cir. 1979)

6

(fact issue submitted to jury could not be resolved by trial judge and overarching legal issue of contribution could not be decided without indispensable finding of fact). Defendants argue that the Court found that the jury was required to "decide fact questions at *Alice* step 2." Motion at 2. Defendants' argument that the Court needed the jury for fact-finding reinforces the *Guidry* analysis because it would be procedurally improper to enter judgment on the ultimate legal issue of patent eligibility after making factual findings that should have been addressed by the jury. 604 F.2d at 321.

Defendants' Motion is wholly inappropriate in light of this case law and the purpose of a Rule 50(b) Motion. They are not entitled to a second bite at the apple—after hearing that the jury was not persuaded by any of their other validity arguments, they elected not to have the jury reconvene to decide their section 101 defense. Defendants cannot use a Rule 50(b) Motion to hedge its bets after taking a defense out of the hands of the jury only to thereafter seek resolution from the Court – that is contrary to the Federal Rules.

There is no provision in the Federal Rules of Civil Procedure for a renewed JMOL on an issue that Defendants chose not to have decided. Defendants offer no authority authorizing their Motion, much less any authority for their claim that refusing to resubmit the third question to the jury is somehow "irrelevant" to the Court's analysis. Motion at 5. Thus, Defendants waived their patent eligibility defense, warranting denial of their Motion.

## C.   The Asserted Claims are Patentable Under 35 U.S.C. § 101

Defendants failed to carry their burden of proving their alleged patent eligibility defense by clear and convincing evidence. *See Berkheimer v. HP Inc.,* 881 F.3d 1360, 1368 (Fed. Cir. 2018); Dkt. No. 247 at 30 (Instruction No. 2.20 on Patent Eligibility requiring "clear and convincing" evidence); Dkt. No. 253 at 5 (Question No. 3 of verdict form requiring same). Patent eligibility under 35 U.S.C. § 101 is a question of law that may involve underlying

questions of fact.  *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018). Eligibility determinations involve a two-step analysis, and the party challenging eligibility "must show that the challenged claims first fail the 'ineligible concept' step and then also fail the 'inventive concept' step of the *Alice* test."  *SimpleAir, Inc. v. Google Inc*., 136 F. Supp. 3d 745, 750 (E.D. Tex. 2015).  At each step the claims are considered as a whole.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).  At Step 1, the Court did not make any findings or decision as to whether Defendants demonstrated by clear and convincing evidence that the Asserted Claims are directed to an abstract idea.  At Step 2, as discussed above, the Court already determined that there were underlying questions of fact to be resolved, and submitted those questions of fact to the jury.  *See supra*, Section II.B.  Defendants' Renewed JMOL, however, asks the Court to ignore its previous conclusion and the evidence submitted to the jury and now find that there are no material factual issues present, such that the Court can enter judgment.  *See* Motion at 5-6.  Defendants have no justification for their request.  Defendants did not establish by clear and convincing evidence at trial that the Asserted Claims, at the time of their invention, were only well-understood, routine, and conventional when viewed as an ordered combination.  Thus, Defendants' Motion fails procedurally and substantively and it should be denied.

### 1.    Step 1: The Asserted Patents are not directed to an abstract idea.

The Asserted Claims are directed toward novel distributed system architectures designed to provide specific improvements to voice processing and as such are patent-eligible.  *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018) (finding claims directed to an improved user interface for computing devices not abstract); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (finding a self-referential table designed to improve the way a computer stores and retrieves data in memory not abstract); *Thales Visionix*

*Inc. v. United States*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017) (finding claims reciting an improved system using conventional sensors and a mathematical equation in a particular configuration patent eligible).  At Step 1 of *Alice*, the Court determines whether the claims as a whole are directed to a patent-ineligible concept such as an abstract idea.  *Alice*, 573 U.S. at 217-18.

Defendants' Motion glosses over Step 1, suggesting only in a heading that the Court has already made a determination that the Asserted Claim are directed to an abstract idea.  *See* Motion at 2 (heading stating "The Court's step one ruling is correct.").  However, Defendants do not cite to the Court's "step one ruling" anywhere in their Motion because no such ruling exists. The Court denied Defendants' summary judgment motion on the issue of patent eligibility as well as its Motion to Dismiss based on patent eligibility.  Defendants have been afforded multiple opportunities to address Step 1, all of which have been unsuccessful.  *See* Dkt. No. 210, 5/21/21 Pretrial Hrg. Tr. at 51:14-16; *see also* Dkt. No. 28.  Eliminating any ambiguity about what patent eligibility issues were being presented to the jury, the Court confirmed upon Defendants' inquiry that the parties would be trying Step 2 to the jury.  6/14/21 Trial Tr. at 30:7-16.  Defendants have not established Step 1 at any time with clear and convincing evidence and the Court has never made an explicit finding under Step 1 that the Asserted Claims were directed to an abstract idea, much less, what the purported abstract idea the Asserted Claims were allegedly directed to.

Despite there being no ruling on Step 1, even after Defendants' multiple unsuccessful motions related to patent eligibility, Defendants made no attempt in their Motion here to establish by clear and convincing evidence that the Asserted Claims are directed to an abstract idea.  Indeed, Defendants' single paragraph addressing Step 1 does not even set forth the alleged

abstract idea to which the Asserted Claims are directed.  Instead, Defendants fall back on the

assertion that the Asserted Claims recite functional steps and cite a few cases without analysis.

Thus, Defendants do not even attempt to meet their burden of proof necessary to make a claim

for patent ineligibility.

The cases that Defendants rely upon do not support their suggestion that the Asserted

Claims do not constitute a specific solution.  Motion at 2.  The claims at issue in *Two-Way Media*

were found to recite no architecture that tied together specific components in a unique way.

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329, 1338 (Fed. Cir. 2017)

(the claims failed to indicate a network architecture that ties components together, leading to an

improvement in the function system).  In contrast, the Asserted Claims describe an "integrated

distributed" voice processing system architecture that tie together specific components, such as

the front end system and the computation system, allowing for improved function and

processing.  *See*, *e.g.*, 6/21/21 Trial Tr. at 1305:10-1306:12.  Thus, unlike in *Two-Way Media,*

here the Asserted Claims are "directed to a [distributed voice processing system] architecture

that itself leads to an improvement in the functioning of the system," which are patent eligible.

874 F.3d at 1338.

*Apple, Inc. v. Ameranth, Inc.,* 842 F.3d 1229 (Fed. Cir. 2016) and *VOIT Techs., LLC v.*

*Del-Ton, Inc.*, No. 5:17-cv-259-BO, 2018 WL 385188 (E.D.N.C. Jan. 11, 2018), *aff'd,* 757 F.

App'x 1000 (Fed. Cir. 2019) are also distinguishable.  In *Ameranth,* the Court reviewed a Patent

Trial and Appeal Board ("PTAB") decision addressing covered business methods for generating

a menu from preset menu options that was found to simply replace what was normally done by a

waiter.  *Id.* at 1241-42.  These claims provided no architecture for the system and were found not

to be a specific improvement to the way computers operate.  *Id.*  In *VOIT Techs.,* the patents

10

were directed to image compression technology in a general sense.  2018 WL 385188, at *3.

Contrary to the claims in *Ameranth* and *VOIT Techs.,* the Asserted Claims contain specific

components of a distributed architecture with particular functionality that leverage the cloud in

order to efficiently process a digitized version of a verbal order, generate and display list, search

in a database of text descriptions and identify the relevant products based on a textual

representation of the user's voice, use the past purchase history of a user to identify the correct

products, among other functionalities.  *See*, *e.g.*, 6/21/21 Trial Tr. at 1305:10-1306:12.

Given Defendants' failure to address Step 1, Defendants' Motion should be denied.

2. **Step 2: Freshub presented substantial evidence that the Asserted Claims do not involve only "well-understood, routine, and conventional" technology under Step 2.**

Freshub presented substantial evidence to the jury establishing that the Asserted Claims

are not "technology which a person of ordinary skill in the art would have considered to be well-

understood, routine, and conventional" in 2005.  Freshub's expert, Dr. Aaron Striegel, testified in

rebuttal as to Step 2 and whether the Asserted Claim contain an inventive concept.  Dr. Striegel

explained that inventive concept refers to "whether or not what is claimed in the patents is

routine, conventional, and well-known prior to the patents."  *Id.* at 1297:24-1298:6.

Dr. Striegel described the multiple reasons supporting his opinion that the Asserted

Claims were not routine, conventional, and well-known at the time of the invention.  He first

pointed to the aspects of the Asserted Claims that put the two primary pieces of the "integrated

distributed system" – the "front end device" and the computation aspect – at the right locations.

*Id.* at 1305:14-24.  He also testified that the Asserted Claims explain how to improve the capture

and processing for adding and displaying an item to a list, and they allow the system provider to

leverage that captured data to improve the accuracy of the system's processing in order to

display items to the user on various devices.  *Id*. at 1305:25-1306:8.  And finally, with respect to

the Asserted Claims of the '810 Patent, he explained that the Asserted Claims improve how to identify items, transmit them to the item provider, and get the item shipped to the user, all by using the user voice to place an order.  *Id*. at 1306:9-12.  Thus, he described in detail the specific improvements that the Asserted Claims enable.

In addition to the Asserted Claims themselves, Dr. Striegel also considered the prosecution history of the Asserted Claims and praise from the New York Times regarding the Ikan product that practiced at least one of the claims.  Dr. Striegel explained how the patent examiner's conclusion during prosecution that the Asserted Claims "contain[] an inventive concept which is directed to an application, a particular application, or a special application" when "considered individually and as an ordered combination" was a factor demonstrating that the Asserted Claims "did constitute an inventive concept."  *See id*. at 1302:14-1303:14; 1304:16-1305:9.  He also pointed out how the New York Times' technology writer's comparison of the Ikan patent-practicing product to the Jetsons demonstrates that the invention "certainly wasn't routine or well-known at that time."  *Id*. at 1303:15-1304:15.  Finally, Dr. Striegel summarized that "[i]t was very clear to [him] that these -- these patents and the inventive concepts were certainly unconventional. They weren't well-known, and they were certainly not routine."  *Id*. at 1306:13-21.

In contrast to the substantial evidence Freshub presented supporting eligibility, Defendants cite two lines of testimony from their expert, Dr. Johnson, allegedly supporting that "nothing about the ordering or combination of these elements is inventive."  Motion at 6 (citing 6/17/21 Trial. Tr. at 933:13-15).  But the testimony they cite has nothing to do with the Asserted Claims as an ordered combination; it merely says that the patents describe conventional memory, which accounts for only some of the individual components of the Asserted Claims and does not

12

address any of the claims as an ordered combination.  Thus, Defendants neither presented at trial nor pointed out in their Motion any evidence establishing that the Asserted Claims, when considered an ordered combination as they must be, were well-understood, routine, and conventional prior to December 2005.

Instead, Defendants focus only on individual claim elements, rather than evaluating how they function as an ordered combination (Motion at 6), which is legally insufficient.  *See Berkheimer*, 881 F.3d at 1367; *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1301-02 (Fed. Cir. 2016) (when considered individually and as ordered combination, claims disclose a patentable distributed architecture tying specific components together in an unconventional manner); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, 2019 WL 10303653, at *5 (W.D. Tex. May 13, 2019) (finding the inventive concept in the claims' non-conventional and non-generic arrangement of known pieces).  Defendants' contention that at trial "experts for both sides agreed that there is nothing in the asserted patents that describes any new microphone, wireless network interface, or digitizer technology" (Motion at 6) misses the point as it fails to consider the Asserted Claims as an ordered combination and suggests that the claims must contain new hardware technology in order to be patent eligible.  This is contrary to the law and cannot support judgment as a matter of law that the claims are ineligible.  *See McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1316 (Fed. Cir. 2016) (reversing summary judgment where claims were not considered in their entirety, and finding claims directed to a patentable, technological improvement over existing processes); *see also BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-50 (Fed. Cir. 2016); *Amdocs*, 841 F.3d at 1300-02.

Defendants' attorney argument fails to overcome Freshub's substantial and undisputed evidence in the trial record.  Even under Defendants' cited authority, the Court cannot now invalidate the Asserted Claims as a matter of law based on "just the intrinsic record" because there are "factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'"  *See* Motion at 3 (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).  Further, Defendants cite no authority for resolving eligibility based on the intrinsic record alone after the question has been tried to the jury, relying instead on cases decided at the motion to dismiss and summary judgment stages.  *Id*. (citing *Aatrix*, 882 F.3d at 1125 (decided on a motion to dismiss)); *see also C.R. Bard, Inc. v. Med. Components, Inc.*, No. 2:12-cv-00032-RJS-DAO, 2021 WL 3109914, at *1, *14, *17-18 (D. Utah July 22, 2021) (decided at summary judgment).  However, at the JMOL stage, the standard is different, where "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:09-cv-176, 2010 WL 11469881, at *1 (E.D. Tex. May 17, 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

In addition to the specification, the intrinsic record also includes the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (the Federal Circuit has designated the prosecution history "part of the 'intrinsic evidence'").  Here, as Dr. Striegel's testimony demonstrated at trial, the Patent Office determined that the inventions in the Asserted Claims were patent eligible, as the Patent Office addressed this question during prosecution.  *See* 6/21/21 Trial Tr. at 1302:14-1303:14; 1304:16-1305:9; *see also* D932 ('153 prosecution history), D933 ('810 prosecution history), and D934 ('408 prosecution history).  Defendants provided no

Case 6:21-cv-00511-ADA   Document 280   Filed 08/25/21   Page 19 of 22

evidence rebutting Dr. Striegel's testimony that the Asserted Claims, when taken as an ordered combination, were not conventional, routine, and well-known.

Additionally, Defendants' argument that the Asserted Claims are "unduly preemptive and [thus] invalid under § 101" (Motion at 5) is simply not credible in light of their representations to the jury at trial. In their Motion, Defendants claim, based on attorney argument only, that the Asserted Claims are "unduly preemptive," because they "attempt to patent nearly limitless embodiments of the abstract idea." *Id*. But at trial, Defendants argued the opposite when they told the jury that Defendants do not infringe because their way of doing voice shopping does not fall within the scope of the Asserted Claims. *See*, *e.g.*, 6/21/21 Trial Tr. at 1419:14-1421:15 ("But they missed. They got this part wrong," arguing that Alexa does not work the ways the claims are written.) Defendants cannot argue out of both sides of their mouth, particularly where Defendants argued at trial that the Asserted Claims are not unduly preemptive.

Finally, the jury confirmed with their answer to the second question on the special verdict form that each of the Asserted Claims is valid. Defendants presented multiple alleged prior art references and combinations at trial, pointing out where each element of the Asserted Claims allegedly existed prior to the invention of the Asserted Claims. Dr. Johnson discussed the Nuance OMS and HeyAnita systems and the Partovi and Kuhn patents. *See* Dkt. No. 247 at 26-28 (Instruction No. 2.18 on Invalidity-Obviousness listing combinations presented). Defendants even brought Mr. Desai, the inventor and founder of HeyAnita, to trial at testify. 6/17/21 Trial Tr. at 835:3-850:20, 859:24-861:25. Despite the multiple references and witnesses presented to the jury on validity, the jury still found that the Asserted Claims were valid over the prior art. *See* Dkt. No. 253 (Verdict) at 4. Arguably, patent eligibility is a more difficult standard than validity, because "[w]hether a particular technology was well-understood, routine, and

15

conventional goes beyond what was known in the prior art."  Dkt. No. 247 at 30 (Instruction No. 2.20 on Patent Eligibility).  Thus, the jury's validity verdict (on which Defendants did not seek renewed JMOL) rejecting Defendants' argument that the Asserted Claims were found in the prior art only demonstrates that the Asserted Claims are patent eligible—*i.e.*, they are not well-understood, routine, and conventional.

Defendants simply ignore – and ask the Court to ignore – Freshub's factual allegations and evidence presented to the jury, the prosecution history which explicitly found that the Asserted Claims are patent eligible, their own arguments to the jury at trial, and the jury's verdict on invalidity.  For these reasons, Defendants' Motion based on a fictional record should be denied.

## IV.  CONCLUSION

For these reasons, Freshub respectfully requests the Court deny Defendants' Motion because it is untimely, it addresses a defense that Defendants waived, and it is also substantively deficient.

16

Respectfully submitted,

Dated: August 25, 2021                    By: */s/ Lisa Kobialka*
                                              Paul J. Andre (*Pro Hac Vice*)
                                              Lisa Kobialka (*Pro Hac Vice*)
                                              James Hannah (*Pro Hac Vice*)
                                              KRAMER LEVIN NAFTALIS
                                                & FRANKEL LLP
                                              990 Marsh Road
                                              Menlo Park, CA 94025
                                              Telephone: (650) 752-1700
                                              Facsimile:  (650) 752-1800
                                              pandre@kramerlevin.com
                                              lkobialka@kramerlevin.com
                                              jhannah@kramerlevin.com

                                              John Palmer
                                              Texas Bar No. 15430600
                                              NAMAN HOWELL SMITH & LEE PLLC
                                              400 Austin Ave., Suite 800, P.O. Box 1470
                                              Waco, TX 76703
                                              Telephone: (254) 755-4100
                                              Facsimile: (254) 754-6331
                                              palmer@namanhowell.com

                                              *Attorneys for Plaintiffs,*
                                              FRESHUB, INC. and FRESHUB, LTD.

17

## CERTIFICATE OF SERVICE

The foregoing document was filed electronically on August 25, 2021, with the Clerk of

Court using the Court's CM/ECF system, which will send a Notice of Electronic Filing on

counsel of record for all other parties who have appeared in this action on the date of such

service.

_/s/ Lisa Kobialka_
Lisa Kobialka