# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| FRESHUB, INC. and FRESHUB, LTD.,<br><br>             Plaintiffs,<br><br>    v.<br><br>AMAZON.COM, INC., a Delaware Corporation, AMAZON.COM SERVICES LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation,<br><br>             Defendants. | Case No. 6:21-CV-00511-ADA |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(B) AND MOTION FOR NEW TRIAL ON INFRINGEMENT AND DAMAGES PURSUANT TO FED. R. CIV. P. 59(A)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    FRESHUB IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW
AS TO INFRINGEMENT. ......................................................................................2

    A.    Freshub waived its infringement arguments by failing to raise all
infringement grounds in its pre-verdict Rule 50(a) motion. .................................2

    B.    Notwithstanding Freshub's waiver, the trial record supports a jury
finding of non-infringement on multiple grounds. ................................................3

        1.    Substantial evidence showed that the accused devices do not
contain the accused "non-transitory memory" ('153 cl. 1 and
6; '810 cl. 1; '408 cl. 30) or practice any server-side steps
('408 cl. 20)..............................................................................................4

        2.    Substantial evidence showed that the accused devices do not
meet the "digitized order" limitation ('153 cl. 1, 6; '810 cl. 1;
'408 cl. 20). ..............................................................................................5

        3.    Substantial evidence showed that the accused devices do not
"identify an item corresponding to the text" ('153 cl. 1, 6)
when a user creates a shopping list via Alexa...............................................7

        4.    Substantial evidence showed that the accused devices neither
"match[] . . . text . . . to a text description" ('408 cl. 20, 30)
nor "use the text . . . to identify an item corresponding to the
text description" ('810 cl. 1) when a user adds products to the
shopping cart with Alexa. ..........................................................................9

        5.    Substantial evidence showed that the accused devices do not
infringe under the doctrine of equivalents. ................................................11

III.    FRESHUB IS NOT ENTITLED TO NEW TRIAL. .......................................................13

    A.    Freshub waived its arguments for a new trial by failing to object at
trial. ....................................................................................................................13

    B.    The Court did not condone anti-Semitism or xenophobia or any other
argument or evidence prejudicial to Freshub at trial. ..........................................14

        1.    Defendants' isolated references to Israel were relevant and
comparable to those made by Freshub's own counsel..............................15

        2.    Defendants' references to the Constitutional purpose of the
patent system were relevant to explain its written description
defense. ..................................................................................................16

**TABLE OF CONTENTS**
**(CONTINUED)**

**Page**

IV.    CONCLUSION..................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*800 Adept, Inc. v. Murex Sec., Ltd.*,
539 F.3d 1354 (Fed. Cir. 2008)................................................................7

*Aetna Ins. Co. v. Paddock*,
301 F.2d 807 (5th Cir. 1962) .............................................................19

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
811 F.3d 1334 (Fed. Cir. 2016)...........................................................11

*Alaniz v. Zamora-Quezada*,
591 F.3d 761 (5th Cir 2009) ...............................................................15

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313 (Fed. Cir. 2003)...........................................................17

*Asetek Danmark A/S v. CMI USA Inc.*,
852 F.3d 1352 (Fed. Cir. 2017)...........................................................19

*Baisden v. I'm Ready Prods., Inc.*,
693 F.3d 491 (5th Cir. 2012) ...............................................................13

*Bryant v. Compass Grp. USA Inc.*,
413 F.3d 471 (5th Cir. 2005) .................................................................2

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
631 F.3d 1279 (Fed. Cir. 2011)..............................................................3

*Com. Credit Equip. Corp. v. L&A Contracting Co.*,
549 F.2d 979 (5th Cir. 1977) ...............................................................19

*Commil USA, LLC v. Cisco Sys. Inc.*,
720 F.3d 1361 (Fed Cir. 2013)...........................................1, 16, 19, 20

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006).............................................................6

*Curtis Publ'g Co. v. Butts*,
351 F.2d 702 (5th Cir. 1965) ...............................................................14

*Dixon v. Int'l Harvester Co.*,
754 F.2d 573 (5th Cir. 1985) ...............................................................13

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*DP Sols., Inc. v. Rollins, Inc.*,
   353 F.3d 421 (5th Cir. 2003) .................................................................................20

*Duro-Last v. Custom Seal, Inc.*,
   321 F.3d 1098 ...........................................................................................................3

*Edwards v. Sears, Roebuck & Co.*,
   512 F.2d 276 (5th Cir. 1975) .................................................................................13

*EEOC v. Boh Bros. Constr. Co.*,
   731 F.3d 444 (5th Cir. 2013) ...................................................................................2

*EEOC v. EmCare, Inc.*,
   857 F.3d 678 (5th Cir. 2017) ...................................................................................2

*Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*,
   2:15-CV-1202-WCB, 2017 WL 959592 (E.D. Tex. Mar. 13, 2017)......................18

*Finjan Inc. v. Juniper Networks, Inc.*,
   No. C 17-05659 WHA, Dkt. 669 (N.D. Cal. July 26, 2021) ...................................2

*Foradori v. Harris*,
   523 F.3d 477 (5th Cir. 2008) .................................................................................13

*Gemalto S.A. v. HTC Corp.*,
   754 F.3d 1364 (Fed. Cir. 2014).............................................................................11

*Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*,
   93 F.3d 766 (Fed. Cir. 1996)...................................................................................3

*Gentry Gallery, Inc. v. Berkline Corp.*,
   134 F.3d 1473 (Fed.Cir.1998)...............................................................................18

*Geoffrion v. Nationstar Mortg. LLC*,
   182 F. Supp. 3d 648 (E.D. Tex. 2016)...................................................................13

*Greer v. Miller*,
   483 U.S. 756 (1987).................................................................................................14

*Haberman v. Gerber Prods. Co.*,
   236 F. App'x 592 (Fed. Cir. 2007) ...............................................................6, 9, 10

*Hall v. Freese*,
   735 F.2d 956 (5th Cir. 1984) .................................................................................16

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Hitachi Consumer Elecs. Co. v. Top Victory Elecs. (Taiwan) Co.*,
   No. 2:10-CV-260-JRG, 2013 WL 5273326 (E.D. Tex. Sept. 18, 2013), *aff'd*,
   577 F. App'x 998 (Fed. Cir. 2014) ........................................................................6

*HRC Guam Co. v. Bayview II L.L.C.*,
   2017 Guam 25 (Dec. 29, 2017) ...........................................................................16

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010) ......................................................................4, 5, 6

*In re Isbell Records, Inc.*,
   774 F.3d 859 (5th Cir. 2014) ..............................................................................15

*Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*,
   554 F.3d 1010 (Fed. Cir. 2009) ..........................................................................11

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
   863 F.2d 867 (Fed. Cir. 1988) ............................................................................18

*Mettler-Toledo, Inc. v. B-Tek Scales*,
   LLC, 671 F.3d 1291 (Fed. Cir. 2012) ...................................................................6

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
   806 F.2d 1565 (Fed. Cir. 1986) ............................................................................3

*Packet Intel. LLC v. NetScout Sys., Inc.*,
   965 F.3d 1299 (Fed. Cir. 2020) ............................................................................6

*Packet Intelligence LLC v. Sandvine Corp.*,
   No. 2:16-cv-00147-JRG, 2018 WL 9869748 (E.D. Tex. Sept. 7, 2018) ...............2

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...........................................................6

*Pregeant v. Pan Am. World Airways, Inc.*,
   762 F.2d 1245 (5th Cir. 1985) ............................................................................19

*Rambus, Inc. v. Infineon Techs. AG*,
   330 F. Supp. 2d 679 (E.D. Va. 2004) ................................................................18

*Reese v. Mercury Marine Div. of Brunswick Corp.*,
   793 F.2d 1416 (5th Cir. 1986) ............................................................................14

*Rohm & Haas Co. v. Brotech Corp.*,
   127 F.3d 1089 (Fed. Cir. 1997) ............................................................................3

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Roman v. W. Mfg., Inc.*,
   691 F.3d 686 (5th Cir. 2012) ..................................................................3

*Sibley v. Lemaire*,
   184 F.3d 481 (5th Cir. 1999) ................................................................13

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001)............................................................11

*UCB, Inc. v. Watson Labs. Inc.*,
   927 F.3d 1272 (Fed. Cir. 2019)............................................................11

*Vas–Cath Inc. v. Mahurkar*,
   935 F.2d 1555 (Fed. Cir. 1991)............................................................17

*Versata Software, Inc. v. SAP Am., Inc.*,
   717 F.3d 1255 (Fed. Cir. 2013)............................................................11

*Wallner v. Ziegler*,
   470 F. App'x 230 (5th Cir. 2012) .........................................................15

*Wavetronix LLC v. EIS Elec. Integrated Sys.*,
   573 F.3d 1343 (Fed. Cir. 2009)......................................................11, 12

*Wis. Alumni Rsch. Found. v. Apple Inc.*,
   905 F.3d 1341 (Fed. Cir. 2018)..............................................................6

## STATUTES AND RULES

35 U.S.C. § 112....................................................................................17, 18

35 U.S.C. § 271(a) ......................................................................................3

Fed. R. Civ. P. 50(a) .............................................................................2, 3, 4

Fed. R. Civ. P. 50(b) ...................................................................................2

Fed. R. Civ. P. 61.....................................................................................13

## OTHER AUTHORITIES

2 Ann. Patent Digest (Matthews) § 11:4 (Aug. 2021) ...................................3

9B Charles Alan Wright & Arthur K. Miller, *Federal Practice and Procedure* §
   2537 (3d ed. April 2021)........................................................................2

U.S. Const. art. I, § 8, cl. 8.......................................................................17

## I.      INTRODUCTION

In just two paragraphs, Freshub explains as well as anyone why the Court would commit reversible error if it entered judgment as a matter of law on infringement.  Freshub argues that the testimony of its expert, Dr. Medvidovic, was "overwhelming," while the testimony of Defendants' expert, Dr. Johnson, was "incredulous."  (Dkt. 277 at 1.)  In other words, Freshub concedes that its arguments are not about the sufficiency of the evidence, but about asking the Court to substitute its own credibility determinations for the jury's, or in some instances to apply new claim constructions that Freshub never previously proposed.

Perhaps aware that these arguments cannot succeed, Freshub also asks for a new trial based on Defendants' alleged use of Jewish stereotypes and xenophobic bias against Israel—what Freshub euphemistically calls "instill[ing] an 'us versus Them' mentality." (*Id.*)  These claims fall apart upon the most cursory review of the trial record.  For example, Freshub claims that by discussing its lack of profitability in Israeli shekels, Defendants attempted to "perpetuate the stereotype of Jewish people as greedy opportunists."  (*Id.* at 14 (quoting *Commil USA*, *LLC v. Cisco Sys. Inc.*, 720 F.3d 1361, 1369 (Fed Cir. 2013)).)  In support, Freshub cites a passage in which Defendants' counsel—a Jewish woman who emigrated from the former Soviet Union to escape religious persecution—questioned a witness about a Freshub financial report that was *stated in shekels*.  (*Id.* (citing Jury Trial Transcript ("Tx.") at 429:19–431:25); *see also* DTX174 (Freshub financial report)).)  In essence Freshub claims that, to *this* jury, the mere mention of the national currency of Israel is an anti-Semitic "dog whistle." (Dkt. 277 at 14.)  This and Freshub's other claims are insulting—and made even more so considering that Freshub *did not even object* to the cited testimony or arguments during the trial.  What has happened here is clear.  Dissatisfied with the trial's outcome, Freshub knows that its only recourse is to get the Court to state that it mistakenly allowed a proceeding so unfair that it excuses Freshub's waiver and requires a complete redo.  And so Freshub is prepared to invoke the grossest stereotypes based on the thinnest bases to

try to get that result.  Arguments like Freshub's are not worthy of the bar of this Court or any other.[1]  The Court should deny the motion.

## II.    FRESHUB IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO INFRINGEMENT.

Judgment as a matter of law is appropriate only if the Court finds no "legally sufficient evidentiary basis" to support the jury's verdict.  *See EEOC v. EmCare, Inc.*, 857 F.3d 678, 682 (5th Cir. 2017) (quoting Fed. R. Civ. P. 50(a)(1)).  If "reasonable persons could differ in their interpretations of the evidence, then the motion should be denied." *Id.* (quoting *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005)).  Courts must be "'especially deferential' to jury verdicts … unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'"  *Id.* at 683 (quoting *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 451 (5th Cir. 2013)).  Moreover, the Court must draw all reasonable inferences in the light most favorable to the verdict.  *Packet Intelligence LLC v. Sandvine Corp.*, No. 2:16-cv-00147-JRG, 2018 WL 9869748, at *1 (E.D. Tex. Sept. 7, 2018).

### A.    Freshub waived its infringement arguments by failing to raise all infringement grounds in its pre-verdict Rule 50(a) motion.

Freshub cannot "renew" infringement grounds under Rule 50(b) that it failed to raise in its Rule 50(a) motion.  A party may only renew its motion on issues raised before the case is submitted to the jury.  9B Charles Alan Wright & Arthur K. Miller, *Federal Practice and Procedure* § 2537 (3d ed. April 2021) ("[T]he district court only can grant the Rule 50(b) motion on the grounds advanced in the preverdict motion ….").  Moreover, to properly preserve an argument, the Rule 50(a) motion "must specify the judgment sought and the law *and facts that entitle the movant to the judgment*." Fed. R. Civ. P. 50(a)(2) (emphasis added).  "Rules 50(a) and 50(b) mandate specificity."

---

[1] *See Finjan Inc. v. Juniper Networks, Inc.*, No. C 17-05659 WHA, Dkt. 669 at *7–8 (N.D. Cal. July 26, 2021) (declining to impose sanctions on Freshub's trial counsel for, *inter alia*, misrepresenting facts and case law to the district court, but stating "[i]n no way does this order vindicate attorneys James R. Hannah, Lisa Kobialka, and Paul J. Andre.  Their conduct was improper and frustrated the fairness of the proceedings.  Judges in the future should take this into account when dealing with them in future cases.")

*See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986) (holding that pre-verdict motion for directed verdict on infringement did not encompass willful infringement); *Duro-Last v. Custom Seal, Inc.*, 321 F.3d 1098, 1107 (holding that pre-verdict JMOL on anticipation does not preserve post-verdict JMOL on obviousness though both relate to invalidity); *accord Roman v. W. Mfg., Inc.*, 691 F.3d 686, 699 (5th Cir. 2012) ("The pre-verdict motion must also concern the same points of error as the renewed motion ...").

On the issue of infringement, Freshub bore the burden "to prove that the accused product or process meets every element or limitation of a claim." *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997). In its Rule 50(a) motion, however, Freshub sought judgment as a matter of law on just a subset of issues related to its infringement claims, namely whether the accused devices meet the "order," "identify an item," and "match" limitations (including the proper constructions of these terms and, for the "identify" limitation  in the '153 patent, whether the accused devices infringe under the doctrine of equivalents ("DOE")).  (Dkt. 238 at 13–15.) Freshub failed to preserve and has thus waived its other arguments, as it only raised for the first time in its 50(b) motion the facts and evidence that it contends entitle it to judgment as a matter of law with respect to the other limitations of the asserted claims. (Dkt. 277 at 2–9.)  Freshub's "renewed" motion must be denied on this basis.  *See Orthokinetics*, 806 F.2d at 1579.

**B.     Notwithstanding Freshub's waiver, the trial record supports a jury finding of non-infringement on multiple grounds.**

It was Freshub's burden at trial to show that the accused devices practice every element of the asserted claims.  35 U.S.C. § 271(a); *see also Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).  The absence of even a single limitation defeats a charge of infringement.  *See* 2 Ann. Patent Digest (Matthews) § 11:4 (Aug. 2021) (citing *Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 771 (Fed. Cir. 1996)).  Freshub argues throughout its brief that it presented "substantial evidence" in support of its own positions.  (Dkt. 277 at 2, 7, 9.)  But the correct standard is whether substantial evidence supports *Defendants'* non-

infringement arguments as to at least one element of each asserted claim, in which case the Court must deny the motion. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010). Here, substantial evidence shows the accused devices do not meet the "non-transitory memory" limitations of the asserted claims, an issue that Freshub failed to raise in its Rule 50(a) motion and has thus waived. Because a reasonable jury could have found non-infringement of all asserted claims on this basis, this issue fully disposes of Freshub's motion for judgment as a matter of law. Moreover, substantial evidence also supported a jury finding of non-infringement on each of the "order," "identify an item," and "match" limitations of the asserted claims.[2]

> **1.     Substantial evidence showed that the accused devices do not contain the accused "non-transitory memory" ('153 cl. 1 and 6; '810 cl. 1; '408 cl. 30) or practice any server-side steps ('408 cl. 20).**

The jury had substantial evidence from which it could find that the accused products—Amazon's Echo, Fire TV, and Fire Tablet devices—do not include the claims' "non-transitory memory" running Alexa. Dr. Medvidovic agreed that the claimed "non-transitory memory" is a physical structure like a hard drive. (Tx. 362:1–19.) He admitted that "a very large number of very powerful servers" power Alexa functionality. (*Id.* at 260:11–18.) The server-side "non-transitory memory," under his theory, is in those remote cloud servers and *not* in the devices accused of infringement. (*Id.* at 364:3–15; 367:3–8.) As Defendants' expert Dr. Johnson explained, the accused devices "do not include any parts of the server" that Dr. Medvidovic testified were required by the claims, and for at least that reason do not infringe. (*Id.* at 869:5-23.)

In response Freshub argues that the accused devices "include" the cloud servers running Alexa. (Dkt. 277 at 2.) But the jury heard evidence to the contrary, that Alexa runs on cloud

---

[2] Freshub also failed entirely to present any evidence of infringement by Whole Foods and is thus not entitled to judgment against that Defendant; no expert witness mapped any elements of any asserted claim to any technology provided by Whole Foods; and Mr. Reading (Freshub's damages expert) did not opine that Freshub is entitled to damages from Whole Foods. The only testimony Freshub offered was its expert's bare statement that the Whole Foods application "absolutely" "uses Alexa." (Tx. at 350:22–351:5.) But the Whole Foods application undisputedly has no voice shopping capability. (Tx. at 757:2–22.)

servers, not the accused devices.  Thus, even if Freshub had not waived this issue, the jury had

evidence from which to find the accused devices cannot infringe these limitations.[3]

### 2. Substantial evidence showed that the accused devices do not meet the "digitized order" limitation ('153 cl. 1, 6; '810 cl. 1; '408 cl. 20).

These claims each recite a "digitized order" received and converted to text for use in

identifying an item.  Substantial evidence supports a jury verdict of non-infringement of this

limitation.  Both sides' experts agreed that the information sent from the accused devices to the

Alexa cloud represents whatever free-form utterance  a user speaks into the device (*e.g.*, tell a joke,

time, the weather, etc.), which has no necessary relation to any digitized shopping order required

by the claims.  (Tx. 97:5–10 (Dr. Striegel); 347:24–348:6 (Dr. Medvidovic); 872:9–873:20

(Dr. Johnson).)  Because Alexa does not limit what users can say, the digitized recording it receives

is not an "order"; instead, Alexa determines the user's *intent*—regardless of whether that intent

has anything to do with voice shopping—by analyzing the likely meaning of the words in the

utterance.  (*See id.* at 874:3–875:9; *see also id.* at 682:23–683:17 (Amazon Scientist Dr. Strom

describing the technical challenge of determining a user's intent); 293:22–294:1 (Dr. Medvidovic

acknowledging that Alexa generates an intent).)  Even Dr. Medvidovic admitted that the utterances

received by Alexa include "useless" or "superfluous" words.  (*Id.* at 268:9–12.)  But those words

are not useless to the operation of *Alexa*; they are an integral part of what it receives and uses

(*instead* of a "digitized order") to determine the user's intent and how to respond.  Dr. Johnson

explained that for this reason Alexa does not receive the "digitized order" required by the claims.

---

[3] Moreover, the '153 patent claims require two sets of "non-transitory memor[ies]" with one on a server; the other is on a client.  To make or use *every* limitation of these claims thus requires connecting the accused devices, *i.e.*, the client under Freshub's theory, to the servers.  The evidence showed that users—not Defendants—make that connection.  (Tx. 363:8–364:2 (Dr. Medvidovic admitted Echo is "nothing more than a paper weight" until the user connects to Alexa servers).)  The evidence also showed that, under Freshub's theory, using the claimed system requires the user to initiate by providing an utterance.  (*Id.* at 264:12–18; 349:9–13; Sealed Tx. No. 2 at 29:25–30:2.)  A reasonable jury could have determined that Defendants neither make nor use the complete system of the asserted '153 patent claims on this basis as well.

(*Id.* at 871:6–872:18.)  The jury could thus find that the accused devices do not infringe.

In response, Freshub argues that the Court must disregard Dr. Johnson's testimony because he applied a specialized meaning for the claim term "order" that conflicts with the Court's construction.  (Dkt. 277 at 10.)  This argument fails for at least two reasons.  First, Freshub did not object to this testimony at trial (*see* Tx. 870:8–876:13; 883:14–884:12; 891:7–893:8), and thus waived any argument that the jury could not consider it because it pertains to an impermissible claim construction.  *See Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1311–12 (Fed. Cir. 2020) (parties must object at trial to preserve their JMOL arguments based on claim construction; "failure to object amounts to waiver of these issues"); *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[L]itigants waive their right to present new claim construction disputes if they are raised for the first time after trial.").

Second, the Court did not construe the term "digitized order" or even "order."  (Dkt. 63.)  Dr. Johnson therefore applied the plain and ordinary meaning of "order" in the view of a skilled artisan who had reviewed the patents.  (Tx. at 1049:2–1050:7; 1053:24–1054:3; 1055:13–17.)  That is what the law requires.  *See Wis. Alumni Rsch. Found. v. Apple Inc.*, 905 F.3d 1341, 1348 (Fed. Cir. 2018) ("ordinary meaning" is "meaning to the ordinary artisan after reading the entire patent.") (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc)); *see also Mettler-Toledo, Inc. v. B-Tek Scales*, LLC, 671 F.3d 1291, 1294 (Fed. Cir. 2012).  Given that the Court instructed the jury to "use the plain and ordinary meanings and apply them" (Dkt. 241 at 13), the jury was free to accept the position that matched its understanding of the evidence.  *Haberman v. Gerber Prods. Co.*, 236 F. App'x 592, 600 (Fed. Cir. 2007) (based on court's instruction to give terms their "ordinary meaning," jury was free to apply an expert's description of a claim term if "consistent with the jury's understanding"); *Hitachi Consumer Elecs. Co. v. Top Victory Elecs. (Taiwan) Co.*, No. 2:10-CV-260-JRG, 2013 WL 5273326, at *4 (E.D. Tex. Sept. 18, 2013) (denying JMOL of infringement where "jury heard both sides' interpretation of the claim language, considered the experts' competing testimony, and rendered a verdict of no

6

infringement"), *aff'd*, 577 F. App'x 998 (Fed. Cir. 2014).[4]  The jury heard ample testimony from which it could conclude the accused devices do not meet the "digitized order" limitations.[5]

### 3.    Substantial evidence showed that the accused devices do not "identify an item corresponding to the text" ('153 cl. 1, 6) when a user creates a shopping list via Alexa.

Claims 1 and 6 of the '153 patent require computer instructions to "identify an *item corresponding to the text*" translated from the "digitized order" and adding the item to a list. Freshub argued that using Alexa to add entries on an electronic shopping list meets these limitations.  However, substantial evidence showed that this feature does not infringe because users can only add *words* to their Alexa shopping list, not "item[s] corresponding to" those words.  There is no identification of an item; merely the recording of whatever words are spoken.  (Tx. 876:22–878:7.)  For example, Dr. Medvidovic testified that "if a user says: Alexa, add 'sad' to my shopping list, the word 'sad' will appear on the list."  (*Id.* at 369:5–7.)  John Love, Director of Alexa Shopping, testified that his six-year-old added the word "poopy poop" to their Alexa shopping list. (*Id.* at 705:12–21).[6]

The words "sad" and "poopy poop" are not an "item corresponding to the text" as the claims require.  Even if Alexa adds *words* to a shopping list, that does not turn them into an "item corresponding to the text."  That is because, as Dr. Johnson explained, the claims require the

---

[4] Freshub's cited authority (Dkt. 277 at 10) does not hold otherwise.  In *800 Adept, Inc. v. Murex Sec., Ltd.*, the trial court modified a prior claim construction *during trial* in response to counsel's argument that modification was necessary.  539 F.3d 1354, 1361 (Fed. Cir. 2008).  The Federal Circuit held that the modification was incorrect and had resulted in an infringement verdict.  *Id.* at 1366–67.  No such facts occurred here; Freshub never asked the Court to construe the term "order" or "digitized order" until it lost at trial.

[5] The testimony of John Love that Freshub cites does not confirm that Alexa receives the digitized order of the patents, nor does it negate any of Dr. Johnson's testimony.  (Dkt. 277 at 6, 11.)  Mr. Love merely described how the Alexa system responds when a user says "Alexa, order dog food."  (Tx. 721:10–21, 724:15–16.)

[6] Freshub cited the video testimony of Amazon engineers Mr. Halim and Mr. Portman in relation to portions of claim 1.  (Dkt. 277 at 5.)  Neither contradicted the fact that Alexa adds words to a shopping list.  Additionally, Mr. Portman's testimony was about shopping *carts* and is irrelevant here.  (Tx. 248:17–249:11.)

translated "text" and the "item corresponding to the text" to be separate.  (*Id.* at 878:13–879:3.)  Even one of Freshub's technical experts, Dr. Polish, described claim 1 of the '153 patent as "operating on the text and *picking out a product* from it," *i.e.*, a separate corresponding item.  (*See Id.* at 1254:15–17 (emphasis added).)

Moreover, even Dr. Medvidovic admitted that the Alexa shopping list feature does not identify items.  While he told the jury that Alexa uses an Intelligence Choice Engine ("ICE") module to search for products to add to the *shopping cart* (*id.* at 328:12–329:4),  he admitted that Alexa does not use ICE to identify what to add to the *shopping list*, (*id.* at 368:4–9).  This admission is consistent with how Mr. Love described the shopping list feature:  "[t]hat goes off and just stores a word.  It doesn't process the word.  It doesn't do any search at all."  (*Id.* at 734:10–15.)  In sum, the jury received substantial evidence from which it could find that the shopping list feature does not "identify an item corresponding to the text" as the claims require.

Freshub repeats the argument that Dr. Johnson's testimony somehow does not count because he applied an incorrect construction of the word "item."  (Dkt. 277 at 10.)  Freshub is wrong for the same reasons discussed above:  Freshub waived any such argument by not objecting to the testimony at trial, and the Court did not provide any construction for the term "item" that Dr. Johnson then ignored or modified.  (*See* Tx. 870:14–17; 876:22–883:24 (no claim construction objections to Dr. Johnson's "item" testimony).)  Again, Dr. Johnson applied the ordinary meaning of "item" based on its use in the patent just as the Court instructed.  (*Id.* at 1049:2–1050:7.)  Freshub argues that "item" ought to have a more generic meaning, pointing in support to an instance where Amazon's witness Dr. Strom referred to the word "milk" on a shopping list as an "item."  (*See* Dkt. 277 at 11; Tx. 696:6–10.)  But Dr. Strom was speaking colloquially as someone who neither works on Alexa Shopping nor the accused shopping list feature.  Indeed, Dr. Johnson explained the difference: while it may be normal to say, "milk is an item on my shopping list," the patents use the word "item" to refer to what is identified from the translated text.  (Tx. 1047:6– 1049:1; *see also id.* at 876:22–881:5.)  At *most*, Freshub has pointed to *competing* testimony in the

record that supports its waived claim construction argument.  But the jury was free to judge the credibility of each witness.  *See Haberman*, 236 F. App'x at 600.

> ### 4.   Substantial evidence showed that the accused devices neither "match[] . . . text . . . to a text description" ('408 cl. 20, 30) nor "use the text . . . to identify an item corresponding to the text description" ('810 cl. 1) when a user adds products to the shopping cart with Alexa.

These claims require "matching" translated text of an order to an item description or "using" the text to identify an item corresponding to the text description.  (Tx. 375:19–22; 381:21–382:3; 386:6–11.) [7]  Freshub argued that these claims are infringed when users use Alexa to add products to a shopping cart.  Freshub's expert Dr. Medvidovic testified that under his theory, the "text" used in these limitations corresponds to the output from Alexa's ASR component (Tx. 374:8–18) and that Alexa's ICE module performs the claimed matching step.  (*Id.* at 374:19–375:2.)  But he admitted that ICE does *not* receive the text output from ASR, and thus does not and cannot use the text output from ASR to match or identify an item based on a text description as the claims require.  (*Id.* at 375:3–6; 375:19–376:1.)

For his part, Dr. Johnson testified that by the time Alexa uses ICE to search for potentially relevant products, the ASR text output is "long gone."  (*Id.* at 886:25–887:3.)  Instead, ICE uses *intents* created by NLU—not text from ASR—to search for an item.  (*Id.* at 269:5–14; 375:3–6.)  Dr. Johnson also explained that Alexa works in a fundamentally different way than described by the claims because it does not perform any text matching.  In the system claimed by the patents, a person asks for an item and the system uses what the person said to find a matching text description.  (*Id.* at 884:13–885:10.)  When a user orders "grapes," the system would try to match the translated text of the order against a catalog of items with corresponding text descriptions.  (*Id.* at 885:11–20.)  If a match to "grapes" exists, the system identifies the product using a unique product identifier corresponding to the matching description.  (*Id.*)  Dr. Johnson then explained

---

[7] Claim 1 of the '810 patent does not explicitly include the word "match," but Freshub acknowledged it has the same requirement to match a text description as the '408 patent claims do.  (*See* Dkt. 277 at 9–10.)

that *if* Alexa were to work in the same way as the claims, it would use the words in an utterance like "Alexa, I want to buy a PS4 game," to find a matching text description. (*Id.* at 885:25–886:15.) But Alexa does not work that way. Instead, Alexa determines the meaning of the request, *e.g.*, that the user wants a video game and that a PS4 is a type of game system. (*Id.* at 887:4–888:21.) Alexa then uses additional contextual information like popularity, purchase history, and delivery preferences to recommend a game. (*Id.*) The recommendation may or may not include one or more words spoken by the user, but "in many cases, it wouldn't have anything related." (*Id.*)

As Mr. Love, Director of Alexa Shopping, testified, "what you'll often find is the No. 1 ranked product has *no relationship textually to the request*." (*Id.* at 719:7–9.) For example, a request for "best book" will result in a specific title—around the time of trial, that title was "Where Do the Crawdads Sing paperback," a "zero percent match" to the text. (*Id.* at 719:11–16.) "Kid's aspirin" may result in "Motrin with acetaminophen" or "Tylenol," neither of which match the text. (*Id.* at 719:17–22.) Mr. Love further explained why matching text *would not work* for Alexa; it would result in an unmanageable list of far too many products based on the large number of items in Amazon's catalog, and it would also return less relevant products, such as a book literally called "best book" instead of a book awarded best book of the year. (*Id.* at 720:4–17.) The jury thus heard substantial evidence showing that Alexa's add to shopping cart feature does not use a "text description" to match or identify items as the claims require.

Freshub relies on video testimony from Amazon engineer Leon Portman to argue that Alexa identifies items using text descriptions based on a "matched list." (Dkt. 277 at 8–9, 11.) But, as Dr. Johnson explained, Mr. Portman was talking about the list of candidate products generated by the data sources, which the ICE module then searches for potentially relevant products. (Tx. 1046:3–1047:3.) Mr. Portman did not say anything about matching the text of an utterance against a list of items or using a text description to identify the items. (*Id.*; *see also id.* at 1055:18–1056:1.) Thus, contrary to Freshub's assertion, there was no inconsistency among the defense witnesses, and regardless, the jury was free to credit Dr. Johnson's straightforward

explanation over that of Dr. Medvidovic's.  *See Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013) (affirming jury verdict as supported by substantial evidence despite competing testimony); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1024 (Fed. Cir. 2009) ("the Fifth Circuit has made clear that the jury is entitled to disbelieve a party's expert if it chooses").[8]

### 5.    Substantial evidence showed that the accused devices do not infringe under the doctrine of equivalents.

To assert DOE infringement, a plaintiff must prove either that the differences between the accused devices and claims are "insubstantial" or address "*on a limitation-by-limitation basis*" the function/way/result test for "*each claim limitation*."  *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1360 (Fed. Cir. 2009) (emphases added); *UCB, Inc. v. Watson Labs. Inc.*, 927 F.3d 1272, 1284 (Fed. Cir. 2019); *Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1374 (Fed. Cir. 2014).  Both approaches require "particularized testimony and linking argument."  *Gemalto*, 754 F.3d at 1374.  "Broad conclusory statements offered by [an] expert are not evidence" that satisfies this standard.  *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016) (quoting *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001)).

Here, Freshub failed to meet its burden to create a jury issue on DOE infringement.  Its

---

[8] Claim 30 of the '408 patent also requires computer instructions for matching text "to a text description" in a "data store."  The jury heard testimony sufficient to find that Alexa and the accused devices did not meet this limitation, primarily testimony explaining why Freshub had failed to meet its burden to prove infringement.  Dr. Medvidovic provided an example of adding apples to a shopping cart, which he told the jury required searching the A9 index.  (Tx. 327:5–14; 376:24–377:4; 377:7–378:2.)  However, he did not show the jury any "computer instructions" illustrating whether the A9 index searches for products by matching text descriptions.  Instead, he pointed to source code for an unrelated component of the system, DynamoDB, which he did not connect to his apples example in any way.  (*Id.* at 378:11–15.)  This disconnected analysis would not have persuaded the jury to disregard the substantial evidence that Amazon does not match text descriptions to find products.  Indeed, Dr. Medvidovic generally failed to connect the source code to any of his infringement theories.  (*Id.* at 895:16–896:24.)  As Dr. Johnson explained, the code files did not match text descriptions or identify products at all.  (Sealed Tx. No. 5 at 5:4–9:24.)  The jury was entitled to "believe the witness it considers more trustworthy."  *Kinetic Concepts*, 554 F.3d at 1020.

expert, Dr. Medvidovic testified only to the bare conclusion that the accused products met the "function/way/result" test for a single limitation ("identify") in claims 1 and 6, without any documentary evidence in support, particularized testimony analyzing the actual operation of the system, or explanation of the differences and why they are insubstantial.  (Tx. 308:20–309:17.)  Under Federal Circuit law, this is insufficient.

Moreover, contrary to Freshub's assertion, Defendants presented substantial evidence that the accused devices do not meet these claims under the DOE, as they do not "perform[] substantially the same function in substantially same way with substantially the same result." *Wavetronix*, 573 F.3d at 1360.  For example:  Dr. Johnson explained the difference between the claimed order-based system and Alexa, which can "receive any text or any spoken utterance"  (Tx. 1051:14–1052:4)—this is not the same as the claimed "identify" step since Alexa can find things that do not correspond to the actual text of the user's utterance.  Dr. Johnson also testified that how Alexa discerns a user's intent solves a "massively different" problem of processing utterances without knowing "what comes next," (*id*.), *i.e.*, Alexa does not merely ask the user to state what they want to buy and expect to receive an item name to identify from text.  Dr. Strom also discussed Alexa's use of far-field speech recognition and neural networks to understand user utterances—problems essential for Alexa to determine a user's intent but which are not solved by the asserted claims or part of their process of identifying an item from text.  (*Id*. at 668:17–686:1.)  And Mr. Love explained that the purpose of the Alexa shopping list—the sole accused feature for the '153 patent—is to "capture needs" at "different levels" depending on user preferences, not to find a product.  (*Id*. at 704:17–705:11 (providing example of "snacks" as a higher-level need referring to multiple potential products).)  Simply listing the words a user speaks without finding a corresponding product is not equivalent to identifying an "item corresponding to the text" as the claim requires.  This substantial evidence supported the jury's conclusion that the accused devices and Alexa features did not infringe under the DOE.

### III.    FRESHUB IS NOT ENTITLED TO NEW TRIAL.

"A new trial will not be granted based on trial error unless, after considering the record as a whole, the court concludes that manifest injustice will result from letting the verdict stand." *Foradori v. Harris*, 523 F.3d 477, 506 (5th Cir. 2008).  "To justify a reversal based on improper comments of counsel, the conduct must be such as to gravely impair the calm and dispassionate consideration of the case by the jury." *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585 (5th Cir. 1985).  The moving party must timely object and show that the conduct went "far beyond the bounds of accepted advocacy before [the] court must grant a new trial." *Geoffrion v. Nationstar Mortg. LLC*, 182 F. Supp. 3d 648, 673 (E.D. Tex. 2016) (citing *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 284 (5th Cir. 1975)); *see also Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012).  The burden is on the moving party to show a new trial is warranted.  *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999).

### A.    Freshub waived its arguments for a new trial by failing to object at trial.

Freshub accuses Amazon of securing a verdict of noninfringement by invoking anti-Semitic stereotypes and xenophobic calls to guard the U.S. patent system against a foreign company.  (Dkt. 277 at 12.)  Yet Freshub did not make any such objections at trial or seek any other recourse from the Court until after it lost.  (*See* Tx. 62:17–22, 63:18–20, 65:15–19; 66:5; 67:11–17; 68:3–70:5; 70:11–71:3; 74:9–21; 114:2–115:10; 116:8–118:8; 184:5–18; 185:7–10; 355:11–360:22; 429:19–431:25; 592:7–16; 594:22–595:10; 595:14–596:5; 596:6–9; 597:7–17; 598:9–12; 599:19–23; 898:23–899:8; 901:10–13; 1320:10–17; 1404:15–1406:5; 1411:1–10; 1411:16–19; 1419:5–1421:5; 1432:16–1434:10; 1435:7–1436:25.)[9]  It is an "elementary principle

---

[9] Freshub did object to some of the cited evidence on grounds unrelated to the alleged stereotyping and xenophobia.  First, Freshub objected (hearsay, relevance, prejudice) to deposition testimony stating that Sony Douer evaded service to avoid testifying in the case.  (Dkt. 277 at 19.)  The Court correctly applied the exceptions to the rule against hearsay and allowed the testimony as a statement of a party opponent relevant to Amazon's written description defense.  (Tx. 598:25–599:1; 652:3–5.)  There was no error, but even if there was, that would not be grounds for a new trial since the brief testimony concerning Mr. Douer did not cause prejudice to a substantial interest of a party.  Fed. R. Civ. P. 61; *Baisden*, 693 F.3d at 508–509.

of federal law" that a party cannot raise misconduct objections for the first time on a motion for new trial. *See Curtis Publ'g Co. v. Butts*, 351 F.2d 702, 714 (5th Cir. 1965). Freshub, therefore, waived its objections and cannot get a new trial unless it establishes not just ordinary prejudice, but that this was an "exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Reese v. Mercury Marine Div. of Brunswick Corp.*, 793 F.2d 1416, 1429 (5th Cir. 1986). In other words, Freshub's motion rests on the assertion the Court must grant a new trial to preserve its own integrity and public reputation even though *neither* Freshub (which raised numerous *other* objections throughout trial) nor the Court (which dutifully ruled on each such objection) perceived any such issues during the trial. Freshub's own behavior at trial belies the claim that Defendants won by triggering some latent prejudice the jury had against Jews or Israel. If Freshub had suffered any prejudice, "it is inconceivable ... that [Freshub] would have delayed so long without raising the slightest hint of an objection." *Curtis Publ'g Co.*, 351 F.2d at 714.

### B.   The Court did not condone anti-Semitism or xenophobia or any other argument or evidence prejudicial to Freshub at trial.

The truth, of course, is that this Court was not asleep at the wheel during trial and did not permit any misconduct. Each of Freshub's supposed examples of the deployment of Jewish

---

Second, Freshub objected to evidence about the abandonment of the parent application to the asserted patents, which the Court initially allowed but later excluded as potentially prejudicial. (Dkt. 277 at 19–20 (citing Trial. Tr. 819:1–6).) Those earlier references to abandonment do not justify a new trial because the Court issued a curative instruction. (Tx. 1353:11–16 ("You may have heard that the patent application that lead to the asserted patents was abandoned and then revived. This is not relevant to any issue you have to decide. You should give it no weight. It has nothing to do with the questions you're being asked to answer in your deliberations").) The court will "presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the [moving party]." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (internal citation omitted). Freshub has not made *any* showing of an "overwhelming probability" that the jury was unable to follow the Court's instruction. Nor could it, as during trial the Court itself remarked that this issue neither helped nor hurt either party's case (Tx. 819:1–14.), and the jury *found for Freshub* on written description, the primary issue for which abandonment was relevant.

stereotypes or bias against Israel are pulled from thin air.  Attorney statements, including those in opening and closing, only "implicate the interest of substantial justice when counsel's assertions are 'either false or without basis in the record.'"  *In re Isbell Records, Inc.*, 774 F.3d 859, 872 (5th Cir. 2014) (quoting *Wallner v. Ziegler*, 470 F. App'x 230, 233 (5th Cir. 2012)); *see also Alaniz v. Zamora-Quezada*, 591 F.3d 761, 776 (5th Cir 2009).  Here, any references to Israel (there were no references at all to Jews or Judaism) were incidental and the questions and statements of counsel were all grounded in relevant evidence in the record.

### 1. Defendants' isolated references to Israel were relevant and comparable to those made by Freshub's own counsel.

Freshub alleges that referring to it as an Israeli company was unfairly prejudicial as it provoked anti-Semitic and xenophobic sentiment against "a foreign threat."  (Dkt. 277 at 13.)  But Freshub is, in fact, an Israeli company, and saying so is neither anti-Semitic nor xenophobic, as evidenced by the fact that *Freshub's own counsel* gratuitously referenced Freshub's connections to Israel multiple times throughout the trial.[10]  Moreover, *Defendants* only mentioned Israel when relevant or necessary to rebut Freshub's own statements.  For example, Defendants discussed the fact that Freshub applied for funding from the Israeli government (Tx. 65:5–66:2; 441:25–443:23) because Freshub made statements in its application for funding that heaped praise on Amazon for its Alexa technology (and thus tended to undermine Freshub's claims that it was the true inventor of Alexa's voice-shopping capability).  (*Id.* at 38:5–40:10; 65:2–66:2; 441:25–442:2; DTX721.)  Defendants introduced Freshub emails that discussed its meeting with an "Israeli rep of a Chinese company" not because they indicated Freshub was Israeli, but because they showed Freshub looking desperately for a way to create knockoff versions of Amazon's Echo devices.  (*Id.* at 61:25–62:10; 779:4–780:7; DTX403.)  And Defendants cross-examined Dr. Striegel concerning

---

[10] (Tx. 196:17–22 (noting that a co-founder worked on Iron Dome defense system successfully used in Israeli conflict); 420:22–25 (introducing Freshub witness Ms. Keren as a person from Israel); 427:9–20 (Ms. Keren describing Freshub's work with a leading supermarket in Israel); 1311:11–12 (Freshub's lead counsel Mr. Andre asking questions about a meeting in Israel).)

meetings between Amazon and Freshub that took place in Israel only because Freshub asked about these *same* meetings on direct examination.  (Tx. 1320:18–1322:4.)  Defendants had in fact moved to exclude reference to these Israel meetings from the trial (*Id.* at 1156:4–1162:2, 1310:16–1313:9); Freshub can hardly complain about testimony that it forced into the trial over those objections.  Finally, as discussed above, Defendants asked a Freshub witness about company financial records reflecting significant losses which the company had reported in Israeli shekels (and later in cross-examining Freshub's damages expert about this information in relation to the supposed value of Freshub's patents).  (*Id.* at 431:11–25; 592:7–17; DTX174.)  The accusation that this testimony relevant to damages was instead meant to elicit bias against Jews or Israel is particularly offensive because Defendants' examining counsel is herself a Jewish woman who emigrated from the former Soviet Union due to religious persecution and who has family in Israel.  (Declaration of Saina Shamilov, ¶¶ 2–5.)  More generally, and in contrast to the cases Freshub cites in its brief,[11] its arguments here assume that even a passing reference to Israel will poison a Waco jury.  The Court should not endorse that prejudiced view.

> ### 2. Defendants' references to the Constitutional purpose of the patent system were relevant to explain its written description defense.

Freshub also takes issue with Defendants' explanation of the Constitutional purpose of the patent system and their allegations that Freshub had abused that system in this case.  (Dkt. 277 at 15–17.)  But here, Defendants' argument was entirely consistent with the law and the facts of the

---

[11] The cases Freshub cites involve extreme examples of attorney misconduct that bear no resemblance to this case.  *See, e.g.*, *HRC Guam Co. v. Bayview II L.L.C.*, 2017 Guam 25, at \*23 (Dec. 29, 2017) (counsel appealed to xenophobic prejudices, stating that "doing business in Guam is a privilege.  If you come here from half way around the world from Bermuda and you start a business like this ... why don't you go start this business back in Bermuda because we don't need this kind of thing here"); *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1369 (Fed. Cir. 2013) (counsel played to Christian-versus-Jewish biases, including quips about not eating pork, references to "bottom-feeder[s]," and closing arguments referring "to the trial of Jesus Christ" which "we all read about as kids, in the Bible"); *Hall v. Freese*, 735 F.2d 956, 960 (5th Cir. 1984) (counsel made unsubstantiated statements about heavy drug use, extramarital affairs, and the plaintiff flying from New Orleans "to characterize Hall as a woman … who was trying to take advantage of the good people of rural northern Mississippi").

case.  The Constitutional purpose of the patent system is to promote innovation—an inventor receives the limited monopoly of a patent only in exchange for his or her contribution to public knowledge.  U.S. Const. art. I, § 8, cl. 8.  That purpose is not served when the applicant does not possess the invention for which he or she receives a patent, and that is the cornerstone of the Patent Act's written description requirement: "to prevent an applicant from later asserting that he invented that which he did not" by requiring an applicant to "recount his invention in such detail that his future claims can be determined to be encompassed within his original creation."  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) (citing *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991)).

The evidence and argument about which Freshub complains relates to Defendants' presentation of their §112 written description and enablement defenses.  The asserted patents were filed years after the accused Echo and Alexa were already on the market.  To bring its claims in this case, Freshub claimed priority to a 2005 application, which Defendants argued neither discloses the voice-shopping inventions the patentee eventually claimed, nor contains information from which someone could make such an invention work.  Corroborating that argument is the fact that Freshub brought no witnesses to trial who were willing to testify that they had invented voice-shopping technologies like Alexa back in 2005.  (Tx. 1434:7–1436:11.)  These facts were not used to "mislead the jury into thinking there can be no infringement" (Dkt. 277 at 17) as Freshub claims; to the contrary, Defendants expressly argued that they were relevant to the §112 defenses:

> You may be wondering to yourself, wow, that seems very unfair that someone can file for patents three, four, five years after the product is already on the marketplace and get a patent on it.  And if you're thinking that, you're exactly right.  And fortunately—fortunately, the law has terms to prevent that. You may remember that the terms are "written description" and "enablement."

(Tx. 70:22–71:22; *see also id*. at 176:16–181:2, 899:9–16, 901:14–902:11, 116:17–22; 117:25–118:8; 119:3–121:20; 594:22–595:10; 1404:8–14; 1408:4–1409:23; 1410:10–1411:20; 1412:3–17; 1415:2–12 ("Written description prevents you from claiming your patent [covers what] somebody else invents in the future, and that's what Freshub is doing in this case.").)  The Federal

Circuit itself held that this evidence about the timing and circumstances of the filing of applications relative to the accused products is probative to the 35 U.S.C. § 112 inquiry. *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed.Cir.1998) (considering evidence as part of written description analysis that inventor was not in possession of the disputed invention until he reviewed competitors' products); *see also, e.g., Rambus, Inc. v. Infineon Techs. AG*, 330 F. Supp. 2d 679, 694 (E.D. Va. 2004); *Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*, 2:15-CV-1202-WCB, 2017 WL 959592, at *3 (E.D. Tex. Mar. 13, 2017).[12]

Throughout the trial, Freshub also repeatedly emphasized that the accused devices infringed based on their basic prior art components like a microphone and wireless network interface.[13]  Defendants' closing noted that the claims were drafted several years after the Echo was launched, to illustrate that these aspects are entirely conventional, whereas the actual technology to parse a user's request was not, and was not disclosed in the 2005 application or even known to Freshub's predecessor when drafting the asserted claims.  (Tx. 1419:5–13.)  Defendants suggested that while a patent attorney hypothetically "*could* set [the Echo] down on the desk in front of them and just describe it" to claim the basic elements (*id.* at 1419:14–18 (emphasis added); *see also id.* at 1419:19–1420:12), the step between "receiving the words that the user says and identifying an item" "wasn't obvious from just using Alexa and the Echo." (*Id.*  at 1420:13–16.)

---

[12] The case Freshub cites, by contrast, is irrelevant—it holds that amendments drafted to cover a competitor's product are "simply irrelevant" to an *inequitable conduct* claim and "cannot itself evidence deceitful intent." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988).

[13] (Tx. at 37:7–13; 42:9–17; 44:4–8 (opening argument noting "microphone," "wireless network interface," and "digitizer" in the patent); 45:17–24 (opening argument noting accused products all have "the microphone, the digitizer, and everything else"); 86:1–8; 132:7–10; 134:25–135:6 (Dr. Striegel discussing Ikan unit with microphone); 88:11–23; 90:20–91:7 (Dr. Striegel discussing microphone limitation of patents); 154:12–155:23 (Dr. Adam noting microphone and digitizer in Ikan unit); 265:2–12; 270:22–272:10; 274:18–20; 278:19–281:21; 282:7–283:9; 313:13–315:5; 344:10–345:1; 409:15–410:1 Sealed Tx. No. 1 at 5:19–6:7 (Dr. Medvidovic noting microphone, digitizer, wireless network interface in Alexa devices); 316:2–23 (Dr. Medvidovic noting claims require microphone, digitizer, wireless network interface); 474:12–18; 475:3–476:6; 477:4–9; 479:6–480:8 (Dr. Cole's practicing product analysis regarding microphone, digitizer, and wireless network interface).)

The claims recited "a standard way as it was done in the past," but the accused Amazon products employ a more sophisticated artificial intelligence not claimed by the patent.  (*Id.* at 1420:13–1424:23.)  None of this suggested that the evidence at trial proved that the patent attorney drafted claims with an Echo speaker in the room.  (*See* Dkt. 277 at 17 (citing Tx. at 1419:4–1421:5).)  Moreover, "[i]mproper closing argument may be the basis for reversal only when it introduces extraneous matter which has a reasonable probability of influencing the jury."  *Pregeant v. Pan Am. World Airways, Inc.*, 762 F.2d 1245, 1249 n.4 (5th Cir. 1985).  But evidence before the jury, here, that the asserted patents were filed years after many voice shopping technologies were in widespread use, is not extraneous matter.  *Id.*; *see also Com. Credit Equip. Corp. v. L&A Contracting Co.*, 549 F.2d 979, 981 (5th Cir. 1977).

Finally, given that Freshub (and its predecessor) never had working voice-shopping technology yet still claimed to have invented Alexa, Defendants were also within their rights to allege that Freshub's conduct was an abuse of the U.S. patent system.  Freshub's own documents and testimony at trial confirmed that it was previously unsuccessful: it had "very little revenue" in 2015, "no revenue" in 2016, and lost over four million shekels over those two years.  (Tx. 431:11–25; DTX174.)  Freshub's internal communications showed it was interested in the "big money" it could get by suing "Amazon," which its CEO Iri Zohar expected would be "very quick [with a] relatively high chance of success" and not like "normal companies."  (*See* Tx. 445:3–446:24; DTX183 at 5.)  According to Mr. Zohar himself, after it sued Amazon, Freshub intended to sue Google, Apple, and others.  (Tx. at 787:24–788:17; DX183 at 5.)  These were all undisputed facts in the record, which were highly relevant to the credibility of Freshub's witnesses and the alleged value of the asserted patents.  *See Aetna Ins. Co. v. Paddock*, 301 F.2d 807, 812 (5th Cir. 1962); *Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1362 (Fed. Cir. 2017).

## IV.   CONCLUSION

A district court's assessment of the conduct of the trial carries substantial weight, particularly when the party requesting a new trial failed to object.  *See Commil USA*, 720 F.3d at

1371. Here, the Court assessed the trial as follows:

> You could not have seen better lawyers than the lawyers that you saw in this case
> on either side.  I had a lot of people ask me, who do you think is going to win?  And
> I said, I have absolutely no idea, because I thought the lawyers did a phenomenal
> job.  It's the greatest pleasure you can imagine as a judge to really just sit up here
> on autopilot because the lawyers are so professional and so skilled that they ... can
> run the trial the way they did and try their case ... I think you'd be disappointed in
> anyone you saw going forward, because I'm not sure they could match the quality
> that you saw.

(Tx. at 1454:22–1455:15; *see also id.* at 1456:18–22 ("I couldn't have hoped for a more

professional trial with better lawyers ...."); *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 432 (5th

Cir. 2003) (affirming denial of motion for new trial where the district judge specifically praised

the performance of counsel).)  The Court should deny the motion.

September 8, 2021

*Of Counsel:*

Barry K. Shelton (TX Bar #24055029)
bshelton@sheltoncoburn.com
Bradley Dalton Coburn
coburn@sheltoncoburn.com
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Tel: (512) 263-2165
Fax: (512) 263-2166

Deron R. Dacus (TX Bar #00790553)
ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705-1117
Fax: (903) 581-2543

Respectfully submitted,

*/s/ J. David Hadden*
J. David Hadden, (CSB No. 176148)
Email: dhadden@fenwick.com
Saina S. Shamilov, (CSB No. 215636)
Email: sshamilov@fenwick.com
Todd R. Gregorian (CSB No. 236096)
Email: tgregorian@fenwick.com
Ravi R. Ranganath (CSB No. 272981)
Email: rranganath@fenwick.com
Allen Wang (CSB No. 278953)
Email: allen.wang@fenwick.com
Eric B. Young (CSB No. 318754)
Email: eyoung@fenwick.com
**FENWICK & WEST LLP**
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.5200

*Counsel for Defendants*
*AMAZON.COM, INC., AMAZON.COM*
*SERVICES LLC, PRIME NOW, LLC, and*
*WHOLE FOODS MARKET SERVICES, INC.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 8th day of September 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).

*/s/ J. David Hadden*
J. David Hadden
