# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| FRESHUB, INC., a Delaware Corporation, and FRESHUB, LTD., an Israeli Limited Liability Company,<br><br>        Plaintiffs,<br><br>vs.<br><br>AMAZON.COM INC., a Delaware Corporation, AMAZON.COM SERVICES, LLC, a Delaware Limited Liability Company, PRIME NOW, LLC, a Delaware Limited Liability Company, and WHOLE FOODS MARKET SERVICES, INC., a Texas Corporation,<br><br>        Defendants. | Case No.: 6:21-CV-00511-ADA |

**PLAINTIFFS FRESHUB, INC.'S AND FRESHUB, LTD.'S REPLY
IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW
PURSUANT TO FED. R. CIV. P. 50(B) AND MOTION FOR NEW TRIAL
<u>ON INFRINGEMENT AND DAMAGES PURSUANT TO FED. R. CIV. P. 59(A)</u>**

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

John Palmer
Texas Bar No. 15430600
NAMAN HOWELL SMITH & LEE PLLC
400 Austin Ave., Suite 800, P.O. Box 1470
Waco, TX 76703
Telephone: (254) 755-4100
Facsimile: (254) 754-6331
palmer@namanhowell.com

*Attorneys for Plaintiffs,*
FRESHUB, INC. and FRESHUB, LTD.

Dated: September 29, 2021

## I. FRESHUB IS ENTITLED TO JMOL OF INFRINGEMENT

### A. Defendants Did Not Refute Their Witnesses' Admissions of Infringement

Amazon does not address the table on pages 5-6 in Freshub's Motion, identifying Dr. Strom's clean, unambiguous admissions of infringement on an element-by-element basis. Dkt. No. 277 ("Mot.") at 5-6. Amazon *completely ignores* this table and the evidence cited therein. This speaks volumes, as this testimony is irrefutable evidence that no reasonable jury could have found non-infringement of the '153 Patent. Amazon's failure to even address this party admission is basis enough to grant Freshub's JMOL.

Specifically, Dr. Strom, who was Defendants' first witness at trial and a member of the group that built Amazon Echo and Alexa (*see* Trial Tr. at 659:1-5), testified how the accused Alexa Products *with* the Alexa System ("Alexa") satisfy each element of Claim 1 of the '153 Patent. Mot. at 5-6. Rather than address the substance of Dr. Strom's testimony, Defendants attempt to dismiss him as someone who was "speaking colloquially … who neither works on Alexa Shopping nor the accused shopping list feature." Dkt. No. 284 ("Opp.") at 8. Such claims, however, strain credibility as it makes no sense that Amazon would bring a witness to trial who was not knowledgeable about how the accused Alexa technology works. Trial Tr. at 54:1-6.

To counter the party admissions of Dr. Strom, Amazon's Vice President and Distinguished Scientist of Alexa Artificial Intelligence Organization (*id.* at 658:21), and Mr. Portman, a principal engineer for Alexa Shopping responsible for the architecture related to voice search and search results, Defendants point to Mr. Love, who admitted his lack of familiarity with the technical implementations of the back end Alexa technology (*id.* at 724:22-725:22; 726:4-20), and their paid expert, Dr. Johnson. Defendants' attempts to dismiss their party admissions and their failures to address them is a concession of infringement.

### B. Freshub Preserved Its JMOL for Infringement.

Contrary to Defendants' Opposition (Opp. at 3), Freshub moved for JMOL of infringement under Rule 50(a), arguing that Freshub proved infringement through the testimony

of at least its experts and more than 40 exhibits, and that such evidence was "not rebutted in any way materially."  Trial Tr. at 1327:22-1328:9.  Thus, Freshub moved for JMOL based on the overwhelming evidence of infringement.  These very grounds are sufficient to preserve its Rule 50(b) JMOL—*i.e.*, Freshub presented overwhelming evidence of infringement that Defendants failed to rebut.  *See Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1324-25 (Fed. Cir. 1991) (holding that post-trial motion under Rule 50 based on single sentence oral motion for directed verdict "on the grounds that the evidence is insufficient" was sufficient to satisfy the Rule 50 requirements).

Freshub also addressed Defendants' failure to present legally sufficient evidence of non-infringement, showing that their fragile non-infringement defense relating to certain claim elements was legally insufficient to support the jury's verdict.  Mot. at §§ II.A, D.  Thus, Freshub's Rule 50(a) motion addressed Defendants' infringement of the Asserted Claims and their insufficient non-infringement defense.  As a result, Freshub's Rule 50(a) motion sufficiently preserved the issue of infringement for JMOL.  *See Malta*, 952 F.2d at 1324-25.

Defendants' cited cases are inapposite as they pertain to Rule 50(b) motions for claims or defenses requiring proof of additional elements because they are different from the claim or defense raised in the Rule 50(a) motion, such as infringement versus willful infringement, anticipation versus obviousness.  Opp. at 2-3 (*citing Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565 (Fed. Cir. 1986) and *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098 (Fed. Cir. 2003)).  Further, Defendants misstate the law, as the issue before the Court is not "whether substantial evidence supports *Defendants'* non-infringement arguments" (Opp. at 3-4), but rather whether there is legally sufficient evidence to support the jury's verdict.  *Young v. Frankel Fam. Tr.*, No. CIV. 300CV1698-H, 2001 WL 1076130, at *1 (N.D. Tex. Sept. 10, 2001) (judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis for a reasonable jury to have found in favor of the prevailing party).

      **C.**    **Freshub Accused the Alexa Products and System of Infringement at Trial**

Defendants ignore the evidence Freshub identified in its Motion as meeting the "non-

transitory memory" elements of the Asserted Claims (Mot. at 3-4, 5-6) and instead improperly try to limit the scope of Freshub's infringement allegations to the consumer Alexa devices. *See* Opp. at 4. Freshub has always accused the consumer Alexa devices with the backend Alexa system of infringement, which Dr. Medvidovic explained at trial. Trial Tr. at 256:2-4, 256:13-18, 262:15-20 (confirming that "Alexa products" means "the Echo products with the Alexa system, the Tablet products with the Alexa system, and the Fire TV products with the Alexa system"). In fact, Defendants' expert, Dr. Johnson, confirmed that Freshub and Dr. Medvidovic were accusing both the Alexa front-end and back-end of infringement. *Id.* at 1026:20-1027:16. And Defendants do not challenge that the cloud servers that comprise the "backend Alexa system" contain "non-transitory memory." Thus, Dr. Johnson's testimony that the front-end, client-side Alexa Products do not contain server hardware is irrelevant because it does not address Freshub's actual infringement assertions, and thus cannot support the jury's non-infringement verdict.

### D. The Substantial Unrebutted Evidence at Trial Was That Alexa Receives "Verbal" and "Digitized" "Orders"

Defendants' assertion that Alexa does not receive a "digitized order" because Alexa allegedly receives "utterances" holds no water. *See* Opp. at 5. The unrebutted trial evidence was that the Alexa Products receive "verbal orders," in addition to other "utterances," such as "play music." *See e.g.*, Mot. at 3; *see also* Trial Tr. at 89:9-16, 135:7-17, 282:18-21, 407:21-408:10. That Alexa can receive verbal orders is all that matters for infringement; other spoken requests are irrelevant to the infringement inquiry. *See*, *e.g.*, *id.* at 1027:17-1028:8 (Dr. Johnson confirmed that "comprising" "must include at least those things" but could include more and still infringe). While Dr. Johnson admitted using a "special meaning" for the claim term "order," he also admitted that an utterance can "absolutely" be an order (*id.* at 1034:18-19) and that "you can place orders with Alexa" (*id.* at 1035:4-5). Finally, Dr. Johnson's "special meaning" for "order" (and "item") only became apparent during cross-examination, such that Freshub's counsel could not have previously objected to Dr. Johnson's special construction. *Compare* Trial Tr. at 870:8–

3

876:13; 883:14–884:12; 891:7–893:8 *with* Trial Tr. at 1053:4–1054:10.  Ultimately, no reasonable juror could have found non-infringement on the basis of the "digitized order" limitations as both experts agree that Alexa receives "orders."

### E. Substantial Unrebutted Evidence Was that Alexa "identif[ies] an item corresponding to text"

Defendants' opposition ignores that Freshub did not actually rely on ICE functionality to demonstrate infringement of the "identify an item" element of the '153 Patent, and instead pointed to the Alexa shopping list functionality that determines which words in the text translated from the verbal order correspond to an item the user wants to add to their list.[1]  Trial Tr. at 298:8-299:18 (Dr. Medvidovic testifying that "[t]he keywords themselves are added to the Shopping List, and those keywords are the specific things that we care about. So those are the items that we are identifying, like bananas, apples, milk, et cetera."); Mot. at 4 (showing Alexa satisfies the identify element).  As a result, Dr. Medvidovic's "admission" that ICE is not used for the shopping list (Opp. at 8) is irrelevant to Freshub's actual infringement allegations for the '153 Patent.  Thus, there is no legally sufficient evidentiary basis for a reasonable jury to have found noninfringement based on "identify an item" in light of Freshub's overwhelming evidence.

### F. Substantial Unrebutted Evidence Was that Alexa "match[es] the text . . . to a text description associated with a unique product identifier" and "use[s] the text . . . to identify an item corresponding to the text description"

Dr. Medvidovic testified that Alexa's ICE uses the text translated by ASR from the digitized verbal order to "match" or "identify" a text description associated with a unique product identifier.  *See* Mot. at 8-9 (citing technical documents and Medvidovic testimony); *see also* Trial Tr. at 415:17-419:19.  Defendants' conclusory assertion that "ICE uses intents created by NLU – not text from ASR – to search for an item" and therefore does not infringe (Opp. at 9) is a red herring because the steps in-between translating to text and using the text to search do not affect the ultimate infringement analysis.  In fact, Defendants never rebutted that the

---

[1] The '153 Patent does not require "matching" and "identifying" to a unique product identifier in a database, as the claims of the '408 and '810 Patents do, and thus there is no need to point to ICE for infringement.

4

"intents" contain text generated by ASR, as Dr. Medvidovic's explained. Trial Tr. at 375:7-18 (explaining the relationship between the ASR and NLU text outputs). Instead, Defendants rely on the high-level testimony of Mr. Love that does not relate to the matching of a text description associated with a unique product identifier, but rather discusses names of products added to a shopping cart. *See* Opp. at 10. Mr. Love has no technical knowledge and his high-level overviews do not touch on this issue. Trial Tr. at 724:22-725:22; 726:12-20. Thus, Dr. Johnson's and Mr. Love's conclusory testimony demonstrates why there is no legally sufficient support for the jury's verdict.

G. **Substantial Evidence Does Not Support Non-Infringement Under DOE**

As an alternative to literal infringement for a single element, Dr. Medvidovic asserted that Alexa satisfied the "identify an item" element of Claims 1 and 6 of the '153 Patent under the DOE. *Id.* at 308:2–309:17 (explaining how evidence cited for literal infringement supports DOE). This is exactly what is required. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1304-05 (Fed. Cir. 2007) (affirming jury's DOE infringement finding, holding that the "'particularized testimony' standard does not require [the expert] to re-start his testimony at square one when transitioning to a [DOE] analysis" from literal infringement). As explained in Freshub's Motion, Dr. Medvidovic provided particularized testimony for the "identify an item" element after explaining that the other elements were literally met. Mot. at 7-8.

Defendants entirely failed to rebut Freshub's DOE assertion. Indeed, Dr. Johnson never uttered the words "Doctrine of Equivalents." *See* Trial Tr. at 863:1–1056:8. Thus, Defendants' attempt to manufacture a DOE argument that they did not present at trial should be disregarded. Further, the cited testimony of Dr. Johnson, Dr. Strom and Mr. Love has nothing to do with the "identify an item" element on which Freshub's DOE theory is based. *See* Opp. at 11-12. Further, Defendants' reliance on Dr. Johnson's testimony that Alexa does *more* than the Asserted Claims require (*see id.*) is not legally sufficient evidence that Alexa does not *also* "identify an item" and therefore infringe. Thus, there was no legally sufficient evidence to support the jury's verdict.

## II.    ALTERNATIVELY, THE COURT SHOULD GRANT A NEW TRIAL

Throughout five days of trial, Defendants deployed well-worn tactics appealing to the jury's emotions and conscious or unconscious prejudices, and a new trial is required to prevent manifest injustice. Rather than substantively addressing or rebutting their improper and severely prejudicial misconduct, Defendants present excuses and mischaracterizations of Freshub's arguments. Contrary to Defendants' Motion, Freshub appropriately objected throughout the litigation. Further, Defendants mischaracterize Freshub's arguments as inflammatory accusations of anti-Semitism, rather than the perpetuation of cultural and nationalistic stereotypes, and attempt to reframe their painting of Freshub as a foreigner as tied to their unrelated written description defense.

### A.    Freshub Repeatedly and Consistently Objected to Defendants' Conduct

Defendants biased the jury by introducing irrelevant and highly prejudicial issues playing on Jewish stereotypes to argue that Freshub's founder and CEO "*cooked up*" a plan "*to come to the courthouse and try to get rich*" against "[e]very U.S. technology company *they* can find." Trial Tr. at 1436:3-25 (emphasis added). These prejudicial remarks came in the form of hearsay and other irrelevant, leading, and prejudicial questions, which Freshub's counsel objected to throughout trial, as described below. Thus, Defendants' assertion that Freshub objected "on grounds unrelated to the alleged stereotyping and xenophobia" waiving its arguments, misrepresents the law and facts. *See* Opp. at 13 n.9.

For example, Freshub's counsel repeatedly objected to Defendants' prejudicial and irrelevant questioning during cross-examination that Freshub and Ikan's affiliates would personally receive millions of dollars if the jury awarded damages to Freshub—which played on the stereotype of greedy Jewish executives of an Israeli company allegedly taking advantage of U.S. companies. *See, e.g.*, Trial Tr. at 170:4-17 (Mr. Adam would make $1.25 million; objection overruled); *id*. at 597:7-17 (Mr. Douer would make $123 million and should know if "he had a voice shopping invention in 2005;" objection to relevance sustained); *id*. at 755:13-20 (Mr. Westheimer would make millions; objection to original leading question sustained and question

re-asked). In addition, Freshub's counsel objected to Defendants' introduction of highly prejudicial hearsay deposition testimony from Freshub's Jewish founder and CEO, Mr. Zohar, about named-inventor Sony Douer's alleged attempt to "dodge service," which compounded the prejudicial effect of Defendants' tactics. *Id*. at 598:21-600:1 (objecting as hearsay, irrelevant, and prejudicial; overruled); *see also id*. at 649:6-652:22 (renewing objections); *see also* Dkt. No. 181 (Freshub's MIL No. 2) at 2-3 (motion *in limine* to preclude Zohar hearsay regarding Douer).

Further, Freshub's counsel continually objected to Defendants' repeated reference to the abandonment of the parent application to the Asserted Patents and misleading suggestions that it was intentional to further their improper narrative about a foreign company's purported misuse of the U.S. patent system. Dkt. No. 181 (Freshub's MIL 2) at 1-2 (motion *in limine* to preclude inequitable conduct defense before jury); *see also, e.g.,* Trial Tr. at 10:15-18:24 (Freshub's objections to "abandonment" in opening demonstratives; objection to use of repeated "Rejected" symbols sustained but reference to abandonment permitted). Defendants err in asserting that their "references to abandonment do not justify a new trial because the Court issued a curative instruction" (Opp. at 14 n.9) because a curative instruction is not automatically sufficient to avoid prejudice, and the instruction was nullified after the jury heard about abandonment numerous times both before and after the Court's instruction. *Whitehead v. Food Max of Miss., Inc*., 163 F.3d 265, 277-78 (5th Cir. 1998) (additional improper remarks following curative instructions rendered instructions insufficient to address prejudice).

Finally, although Freshub objected throughout litigation, a new trial would still be appropriate even if Freshub had not done so diligently, given the pervasive nature of Defendants' prejudicial misconduct. Indeed, "in cases where the misconduct at issue is substantial or repeated . . . a new trial is warranted even if opposing counsel does not object to every single violation." *Waddington N. Am., Inc. v. Sabert Corp.*, No. 09-4883 (GEB), 2011 U.S. Dist. LEXIS 86632, at *13 (D.N.J. Aug. 5, 2011) (granting new trial, acknowledging that "where misconduct is constant and repeated, counsel cannot object to every transgression . . . ."). Because Freshub promptly objected, no waiver occurred and a new trial is appropriate.

### B. Defendants played on Jewish stereotypes to bias the jury

Contrary to Defendants' assertions, substantial justice implications are not limited to attorney statements that are false or without basis (*see* Opp. at 15); substantial justice is also implicated when, as was done here, a party makes a prejudicial "us-against-them plea . . . by pitting 'the community' against a nonresident corporation." *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1238-39 (5th Cir. 1985) (new trial required to remedy "impassioned and prejudicial pleas intended to evoke a sense of community loyalty, duty and expectation" which risk "substantial injustice when invoked against outsiders"); *see also Hall v. Freese*, 735 F.2d 956, 959-60 (5th Cir. 1984) (new trial required to correct substantial injustice resulting from prejudicial remarks). Importantly, to find that manifest injustice would result from allowing the verdict to stand, the Court should consider the cumulative impact of Defendants' prejudicial comments, as opposed to individual improper statements. *See Whitehead*, 163 F.3d at 278.

Moreover, Defendants mischaracterize the substance of Freshub's Motion, conflating anti-Semitism with the perpetuation of Jewish stereotypes. Freshub only took issue with the introduction of biased and irrelevant prejudicial remarks playing on Israeli stereotypes; Freshub did not accuse Defendants of anti-Semitic behavior. Further, Defendants attempt to narrow their "us versus them" statements to only the Israel theme—and claim any references to Israel were "relevant or necessary"—but this view is inaccurate and overly limiting. *See, e.g.,* Opp. at 15-16. Instead, Defendants' "us versus them" remarks heightened the notion of Freshub as a foreigner as part of the overall theme that this case was the "***tip of the iceberg***" of a foreign company's lawsuits against "***[e]very U.S. technology company they can find***," that "***[o]nly you folks can stop***" (*see* Trial Tr. 1436:3-25 (emphasis added)) and that this case was an attack on the U.S. patent system from outside forces. *See, e.g.,* Trial Tr. at 67:6-17 (urging the jury to make a policy decision by finding in their favor to protect the U.S. patent system itself from Freshub); *id.* at 1436:3-25 (emphasis added) ("***And that's why we're here*** . . . . ***The preservation of this constitutional patent system and the integrity of it is – is at play***."). Defendants' attempt

to limit the scope of Freshub's Motion, ignoring its primary focus and Defendants' most flagrant misconduct, tacitly concedes many of Freshub's arguments.

Defendants attempt to distinguish the case law Freshub cited in its Motion as involving "extreme examples of attorney misconduct that bear no resemblance to this case," but their parentheticals demonstrate that those cases involved the same misconduct committed here.  Opp. at 16 n.11 (*i.e.*, "counsel appealed to xenophobic prejudices" and counsel played to Jewish biases).  Defendants also described *Hall* as a case in which "counsel made unsubstantiated statements . . . 'to characterize Hall as a woman . . . who was trying to take advantage of the good people of rural northern Mississippi.'"  *Id.* (citing *Hall*, 735 F.2d at 960).  This appeal to community conscience resembles the very appeal Defendants made in this case, calling on the jury to "stop" Freshub from "going . . . to the courthouse" to sue "[e]very U.S. technology company *they* can find."  Trial Tr. at 1436:3-25 (emphasis added) ("***And that's why we're here . . . . Only you folks can stop it***.").  Further, Defendants do not cite *any* affirmative case law suggesting Defendants' conduct did not amount to prejudice and/or does not warrant a new trial.

### C. Defendants' References to the Constitutional Purpose of the Patent System Were Not Introduced to Explain, Nor Limited to, Their Written Description Defense

Defendants' prejudicial statements concerning the protection of the constitution went beyond the issues of written description and enablement.  Instead, the jury heard that Freshub allegedly conned and abused the U.S. patent system, and that the jurors were the only people standing between Freshub and similar purported abuse of U.S. technology companies.  Despite Defendants' claim that they presented "all undisputed facts in the record" (Opp. at 19), the Court must consider the ***purpose and impact*** of the statements.  Indeed, even if counsel did not specifically intend to invoke cultural or ethnic prejudices, these comments were made "to prejudice the jurors against [Freshub] and [its] attorneys."  *Hall*, 735 F.2d at 960 (court need not find that prejudice was specifically intended to grant new trial).  Facts (whether disputed or not) cannot be presented for no purpose other than to prejudice the jury, as Defendants did here.

9

For example, Defendants suggested at least 19 times that the filing dates of the Asserted Patents indicate wrongdoing,[2] despite this assertion being contrary to law, solely to (i) mislead the jury into thinking there can be no infringement because Alexa existed before the continuation applications were filed, and (ii) fuel their highly prejudicial and improper suggestion that Freshub misused the U.S. patent system to "take" from Defendants.  Defendants' counsel argued during closing that the timeline of this case was "strange" and "bizarre," a claim that served no legal purpose and is inconsistent with the patent laws.  Trial Tr. at 1404:15-19, 1419:5-13.  Freshub moved *in limine* to prevent Defendants from making these types of prejudicial references to the filing dates.  *See* Dkt. No. 181 (Freshub's MIL 2) at 3-5.

Additionally, Defendants' closing argument prominently featured the Constitutional call to action from their opening.  Defendants insinuated again that Freshub is wrong to enforce its patent rights.  Trial Tr. at 1403:6-14 ("The patent system wasn't created to print patents.  It wasn't created to generate lawsuits.").  Defendants' counsel then fabricated a story to buttress their non-infringement positions about Freshub's patent attorney drafting claims to match the Alexa, which was outside the evidence and had no purpose other than to encourage the jury to decide the case according to their personal moral compasses and suggest that Freshub misused the patent system to "take" from Defendants.  *See* Trial Tr. at 1419:5-1421:5.

In sum, Defendants' accusations were couched in inflammatory language, had no relevant purpose, and fall squarely within the parameters of "us vs. them" prejudices.  Defendants seek to distract from their transparent "us versus them" tactics by pushing the false narrative that Freshub accused Defendants of anti-Semitism, rather than the reinforcement of national and cultural stereotypes, and by incorrectly tying their misconduct to their written description defense.  Because Defendants have failed to demonstrate that a substantial injustice did not occur, a new trial is appropriate.

---

[2] Trial Tr. at 68:3-70:5, 70:11-71:3, 74:9-21, 114:2-115:10, 116:8-118:8, 184:5-18, 185:7-10, 355:11-360:22, 594:22-595:10, 898:23-899:8, 901:10-13, 1404:15-1406:5, 1411:1-10, 1411:16-19, 1419:5-1421:5, 1432:16-1434:10, 1435:7-1436:25 (Defendants referring to filing dates).

                                        Respectfully submitted,

Dated: September 29, 2021              By:  */s/ Lisa Kobialka*
                                                      Paul J. Andre (*Pro Hac Vice*)
                                                      Lisa Kobialka (*Pro Hac Vice*)
                                                      James Hannah (*Pro Hac Vice*)
                                                      KRAMER LEVIN NAFTALIS
                                                        & FRANKEL LLP
                                                      990 Marsh Road
                                                      Menlo Park, CA 94025
                                                      Telephone: (650) 752-1700
                                                      Facsimile: (650) 752-1800
                                                      pandre@kramerlevin.com
                                                      lkobialka@kramerlevin.com
                                                      jhannah@kramerlevin.com

                                                      John Palmer
                                                      Texas Bar No. 15430600
                                                      NAMAN HOWELL SMITH & LEE PLLC
                                                      400 Austin Ave., Suite 800, P.O. Box 1470
                                                      Waco, TX 76703
                                                      Telephone: (254) 755-4100
                                                      Facsimile: (254) 754-6331
                                                      palmer@namanhowell.com

                                                      *Attorneys for Plaintiffs,*
                                                      FRESHUB, INC. and FRESHUB, LTD.

## CERTIFICATE OF SERVICE

The foregoing document was filed electronically on September 29, 2021, with the Clerk of Court using the Court's CM/ECF system, which will send a Notice of Electronic Filing on counsel of record for all other parties who have appeared in this action on the date of such service.

>  */s/ Lisa Kobialka*
>  Lisa Kobialka