1                  IN THE UNITED STATES DISTRICT COURT

2                  FOR THE WESTERN DISTRICT OF TEXAS

3                            WACO DIVISION

4   FRESHUB, INC., AND FRESHUB,  )(
    LTD.,                        )(
5        PLAINTIFFS,             )(    CIVIL ACTION NO.
                                 )(    6:21-CV-00511-ADA
6   VS.                          )(    WACO, TEXAS
                                 )(
7   AMAZON.COM, INC., a DELAWARE )(
    CORPORATION, AMAZON.COM      )(
8   SERVICES LLC, a DELAWARE     )(
    LIMITED LIABILITY COMPANY,   )(
9   AND WHOLE FOODS MARKET       )(    OCTOBER 19, 2021
    SERVICES, INC., a TEXAS      )(    9:28 A.M.
10  CORPORATION,                 )(
         DEFENDANTS.             )(

11

12                          MOTIONS HEARING

13                BEFORE THE HONORABLE ALAN D ALBRIGHT

                     UNITED STATES DISTRICT JUDGE
14

15  FOR THE PLAINTIFFS:      Mr. Paul J. Andre
                             Mr. James Hannah
16                           KRAMER LEVIN NAFTALIS & FRANKEL LLP
                             990 Marsh Road
17                           Menlo Park, CA 94025

18                           Mr. John P. Palmer
                             NAMAN HOWELL SMITH & LEE, PLLC
19                           P.O. Box 1470
                             Waco, TX 76703
20
    COURT REPORTER:          Ms. Shelly Holmes, CSR, TCRR
21                           Certified Shorthand Reporter
                             2593 Myrtle Road
22                           Diana, Texas 75640
                             (903) 720-6009
23                           shellyholmes@hotmail.com

24

25  (Proceedings recorded by mechanical stenography, transcript
    produced on a CAT system.)

```
 1   FOR THE DEFENDANTS:      Mr. J. David Hadden
                              Ms. Saina S. Shamilov
 2                            Mr. Allen Wang
                              FENWICK & WEST, LLP
 3                            801 California Street
                              Mountain View, CA 94041
 4
                              Mr. Barry Shelton
 5                            SHELTON COBURN, LLP
                              311 Ranch Road 620 S
 6                            Suite 205
                              Austin, TX 78734
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            THE COURT:  Good morning, everyone.

 2            Katherine, if you'd call the case, please.

 3            COURTROOM DEPUTY:  Good morning, Judge.

 4            Court calls Waco 6:21-CV-511, Freshub, Inc.,

 5   et al., versus Amazon.com -- .com, Inc., et al., for a

 6   Motion Hearing.

 7            THE COURT:  Mr. Andre, if you want to announce for

 8   Plaintiffs.

 9            MR. ANDRE:  Good morning, Your Honor.  Paul Andre

10   for Freshub.  With me today is James Hannah, who will be

11   arguing the Defendants' motion.  I'll be arguing our

12   motion.  And, of course --

13            MR. HANNAH:  Good morning, Your Honor.

14            MR. ANDRE:  Of course, John Palmer is with us, as

15   well.

16            THE COURT:  And for Defense?  Mr. Hadden, I see

17   you.

18            MR. HADDEN:  Good morning, Your Honor, Dave Hadden

19   for Amazon.  With me is my partner, Saina Shamilov, and

20   also my colleague, Allen Wang.  I will be arguing our

21   motion and part of Freshub's motion on the JMOL.

22   Ms. Shamilov will be arguing the new trial motion.

23            THE COURT:  Okay.

24            MS. SHAMILOV:  Good morning, Your Honor.

25            THE COURT:  Good morning.
```

1          I'm happy to have -- Mr. Andre, we're going to

2     start with y'all's motions.

3          MR. ANDRE:  Thank you, Your Honor.

4          And let me start with saying how much I enjoy the

5     jury system in the United States.  We're the only country

6     in the world that tries patent cases to a jury, and I am a

7     huge advocate of the jury system.

8          But the jury system, obviously, relies upon both

9     parties playing by the rules.  And when they don't, the

10    jury system can go awry.  And that's what we're arguing in

11    this case has happened.

12         We think that Amazon provided the jury with a lot

13    of irrelevant and highly prejudicial, unfairly prejudicial

14    material.  They asked the jury to nullify the overwhelming

15    facts of the case.  They basically said that this case was

16    an assault on not only U.S. companies but the U.S.

17    Constitution itself.

18         And so with our motions for Rule 50, for the

19    judgment as a matter of law, we're going to focus on three

20    issues.

21         And, Your Honor, I'll share my screen so you can

22    see the slides.

23         Can you see that okay?

24         THE COURT:  Yes, sir, I can.

25         MR. ANDRE:  Okay.  Great.

1          So for the Rule 50 motion, we're going to focus on

2     three independent reasons why the Court should enter a

3     motion for judgment as a matter of law of infringement.

4          The first one is that the Defendants failed to

5     rebut Freshub's infringement proofs, including they failed

6     to address the infringement by Doctrine of Equivalents

7     altogether.  They didn't cross-examine our witness on it.

8     They did not put forward any evidence whatsoever.

9          In this case, they -- the Defendants conceded the

10    vast majority of the claim elements.  There's no contest to

11    those.  The only thing they -- they contended were not

12    there were the claim term "verbal order" and "item" of the

13    patents.

14         For the '408, they also talked about the matching,

15    but that was only half-hearted.

16         There was overwhelming evidence that we provided

17    through our case-in-chief that every element was met.  Our

18    expert, Dr. Nenad Medvidovic, provided the testimony and

19    ample evidence, both in the form of source code, testimony,

20    the engineers, and confidential and public documents.

21         What was probably the most telling aspect of the

22    infringement case was not only did our witness put forward

23    the overwhelming evidence, but they put forward no really

24    compelling opposition to the -- to the issue we talked

25    about.  We were able to refute those in our case-in-chief.

1          So that issue alone is enough for the Court to

2    grant a motion for judgment as a matter of law.

3          Any one of these three would be enough.  Probably

4    the most powerful evidence that you -- the Court saw was

5    when the Defendants' fact witness, Dr. Ström, actually

6    admitted infringement.  This was a -- one of their vice

7    presidents, the man who developed the infringing

8    technology, took the stand, and my partner, James Hannah,

9    cross-examined him.  And I -- I've cut and pasted the

10   testimony that we provided to the Court on Pages 5 and 6 of

11   our brief.

12         Now, we put this in, almost two pages of a chart

13   on a 20-page JMOL, and that's very valuable real estate, as

14   Your Court -- Your Honor knows.  And I thought this was

15   extremely important because this is admission by a party.

16   This doesn't -- credibility doesn't factor into it.  This

17   is just a party admission.  We put this in our brief.  I

18   used it in closing argument.  And this is an actual

19   admission of infringement on every single claim element.

20   There's no ambiguity here.

21         In our brief, we put it on JMOL, Amazon didn't

22   even address it in their opposition.  They completely

23   ignored these -- this chart on Pages 5 and 6 of our brief

24   and the evidence cited therein.  And I think that speaks

25   volumes.

1          This is not an issue where the jury could weigh

2   credibility, because it is a party admission.  It's not one

3   expert saying one thing and another expert saying another

4   thing.  This is just a straight out admission of

5   infringement.  And there's no ambiguity about those claim

6   elements.

7          That issue alone is enough to grant JMOL as well,

8   as well as the overwhelming evidence.

9          The third aspect or reason the Court should grant

10  the JMOL is because their expert, Dr. Johnson, applied a

11  special meaning to the claim terms.  I cross-examined

12  Dr. Johnson on this issue, and you can see on the slide,

13  this was the testimony he provided.  And I said very

14  clear -- I said:  Let me be very clear -- I said:  Let me

15  be very clear.  When the patent claims a verbal order

16  comprising at least one item -- I asked him:  The word

17  "verbal order" has special meaning, and you based your

18  reading of the patents on that?

19          And he said:  Sure.  That's fine, yeah.

20          So he didn't use the Court's plain and ordinary

21  meaning.  He went to the specification and applied special

22  meaning to them.

23          He did the same thing with the term "item."

24          When I asked him:  You applied a special meaning

25  to the term "item," you did not use the Court's plain and

1   ordinary meaning?

2          He said:  Yeah, I did.  I applied a special

3   meaning based on his reading of the specification.

4          That's the third reason why the JMOL should be

5   granted.  Like I said, any one of those three would be more

6   than sufficient to grant a JMOL.

7          So that leaves us with the -- the dilemma, why did

8   the jury find non-infringement when the evidence was

9   overwhelming, we had a party admission, and the fact that

10  their expert -- I have testimony their expert didn't use

11  the claim construction?

12         And the reason being is that the themes that were

13  developed through the case -- and this was not just one

14  time, this was throughout the entirety of the case, from

15  the opening statement to the closing statement -- was that

16  the Defendant developed a theme of "us versus them."  They

17  said:  This is an assault on U.S. companies by a foreign

18  entity.  This is assault on the U.S. Constitution by a

19  foreign entity.

20         And they played on biases of those foreign

21  entities.  And that's what they -- they based their whole

22  case on because they did not have any adequate defenses to

23  non-infringement or invalidity.

24         So that leads us to the reason why the jury would

25  have found non-infringement, and it -- also the reason why

1   we're entitled to a motion for new trial.

2          The -- the theme of Defendants' whole case was

3   "us versus them."  And there are four independent bases for

4   Defendants to use the "us versus them" theme.

5          One, they -- the Defendants pitted the community

6   against a foreign company.  They made it very clear that

7   we're a foreign company coming after the U.S. companies.

8          Two, the Defendants encouraged the jury to make

9   policy decisions --

10         THE COURT:  Let me -- let me stop you there.

11         When -- when they allegedly pitted a company or

12   community against a foreign company, when did you -- at

13   what point did you object during the trial?

14         MR. ANDRE:  We made multiple objections on

15   relevancy grounds, and we also made a motion that they

16   would not -- a motion in limine they would not bring in

17   these type of disparaging issues.  They would not be

18   bringing in the fact that -- I mean, this was really

19   highlighted in the closing argument.  This is how they

20   pulled it together.  So --

21         THE COURT:  Did you object during closing

22   argument?

23         MR. ANDRE:  No, Your Honor.  I think as Your Honor

24   is very well aware that during closing argument, it came --

25   it hit very, very quickly.  And after the fact, it would

1  have been -- well...

2       THE COURT:  I don't remember a single time you

3  objected on the basis that the Defendant was pitting a

4  community against a foreign company, not once.

5       MR. ANDRE:  Well, Your Honor, it was something --

6  like I said, it came into the -- the closing argument.  And

7  you're right, I did not.

8       THE COURT:  So -- so was -- during the course of

9  the trial, was there any evidence where the Defendant

10  pitted the community against a foreign company when they

11  were putting on their evidence where you objected on the

12  record to them doing that?

13       MR. ANDRE:  Your Honor, we did make motions in

14  limine that were -- and --

15       THE COURT:  Mr. Andre, I'm going to ask one -- I'm

16  going to ask you one more time.

17       MR. ANDRE:  Yeah.

18       THE COURT:  During the course of the trial, when

19  you say the Defendant pitted the community against a

20  foreign company, did you -- on behalf of your client, did

21  you ever object?  Because I don't remember you objecting.

22  Had you done so, I'm sure I would have remembered it at

23  least, and I certainly would have taken it seriously.

24       So you'll agree with me that on behalf of your

25  client, you never objected during the course of the trial

 1  when evidence was coming in; is that correct?

 2      MR. ANDRE:  Your Honor, I think that -- I would

 3  agree with that statement.

 4      THE COURT:  Okay.

 5      MR. ANDRE:  And I'll --

 6      THE COURT:  Now, during the closing argument,

 7  also, you didn't object, and you didn't ask me to say

 8  anything to the jury to try and alleviate the problem; is

 9  that correct?

10      MR. ANDRE:  That's correct, Your Honor.

11      THE COURT:  Okay.  You can keep going on No. 2.

12      MR. ANDRE:  Okay.  Well, this was the part of the

13  closing argument I was talking about, Your Honor, where it

14  says, you know -- and one of the reasons it needs to stop

15  is because we know this is the tip of the iceberg.

16      That's not me saying it, that's Mr. Zohar saying

17  it.  And we did object to that evidence, but it came in

18  nonetheless.

19      Who comes next?  Google, Apple, dot, dot, dot.

20  Every U.S. technology company they can find.  And that's

21  why we're here.  I can't stop it.  Amazon can't stop it.

22  Only you folks can stop it.

23      They're putting this out there that this was an

24  attack on a U.S. company, and that was closing argument,

25  and we did object to that testimony coming in from

1  Mr. Zohar.

2          THE COURT:  But you did not -- you did not object

3  during the closing argument?

4          MR. ANDRE:  That's correct.  The object -- the

5  objection from Mr. Zohar's testimony -- we did object.

6  That was overruled.  And so when it came out in closing

7  argument, I did not make that objection during closing

8  argument, that's correct, Your Honor.

9          The second issue is that they sought to make

10  jury -- make policy decisions on the U.S. patent system.

11  And this was something that we raised on multiple grounds.

12  They kept talking about how this is an attack on the U.S.

13  patent system and the Constitution itself.

14          They said:  This is the purpose of the U.S.

15  Constitution, to ask you to go through and listen to the

16  evidence in this case, ask yourself whether or not the

17  process is really promoting science.  The patent system was

18  not set up for someone to file patents four or five years

19  after someone else had already introduced them -- a product

20  and attempted claim that you had a solution a decade ago

21  when you really didn't.

22          Now, they're arguing that this type of

23  information -- and this was the common theme throughout.

24  They asked about -- so rather than doing it a normal way,

25  hard work and innovation, we're going to go to the

1    courthouse.  And that's why we're here, because this

2    conduct needs to stop.  This is not what the patent system

3    was designed for.  The preservation of the constitutional

4    patent system and the integrity of it, it's a play.  And

5    this is not what it's about, and this needs to stop.

6         So they're saying that the jury had to stop this

7    abuse of the United States Constitution.

8         THE COURT:  They're -- they're saying that the

9    jury has to stop companies from doing what they argued --

10   and it's argument, it's not evidence.  They argued that

11   your company had gotten -- had filed for a patent in the

12   2000s, and then after their product came out, your company

13   went back and filed for a patent, knowing what the product

14   was, and intentionally got a patent that read on a product

15   that you -- that you were aware of.  And that's not what

16   the patent system is intended to do.

17        I don't have a problem with any of that argument.

18   I have no problem with that argument.  It's -- number one,

19   it's argument.  But, number two, it was completely

20   consistent with exactly what your company did.

21        MR. ANDRE:  Yeah, but, Your Honor --

22        THE COURT:  Those were the facts.

23        MR. ANDRE:  Yeah, it is the facts, Your Honor, and

24   we don't -- we don't deny that.  It is something that --

25   does a company have a right to go back and do exactly as

1   you said?  And if it does, is that abuse of the patent

2   system?

3           They filed this patent in 2005.  They got priority

4   back to 2005.  And this is a case -- Your Honor knows quite

5   well how the patent system works, that continuation patents

6   get filed all the time.

7           And the fact that these patents were filed years

8   after Amazon released its product, it's not abuse of the

9   patent system.  That's how the patent system is designed to

10  work.  You don't have to go through and identify every

11  single embodiment of the invention and the claims at the

12  first -- your very first initial patent application.

13          So this is an example of irrelevant information,

14  regardless whether it be true or not, that's what happened.

15  For a jury, this biases them against it because it's not an

16  assault on the constitution.  It's not an assault on the

17  patent system.  This is exactly how the patent system is

18  designed.

19          They continued on with this.  They said:  The

20  patent system was not created to print patents.  It was

21  created to generate lawsuits.  It was not -- it wasn't

22  created to generate lawsuits.  It was created to advance

23  science.

24          Once again, this is irrelevant information.  It

25  has nothing to do whether there's infringement or validity

1   or damages.  This is -- we played by the rules, and they

2   said that we didn't.  They said:  It has to be of their own

3   doing.

4        Then they also -- the Defendants also played on

5   cultural stereotypes to bias the jury.  This was something

6   that we moved in limine to exclude this information by

7   Mr. Zohar and Mr. Douer.

8        Now, in their opening statement, they mentioned

9   that Mr. Zohar and Mr. Douer cooked up this plan to get

10  rich.  Now, the undertones of that cannot be denied.  They

11  made it very clear that this was a foreign company, an

12  Israeli company that was coming to the United States.  They

13  were cooking up these two witness --

14        THE COURT:  Where -- where does it -- no,

15  you're -- you've got this dog whistle theory.  Where does

16  it say anything in here about an Israeli company coming in

17  here to get rich?

18        MR. ANDRE:  Well, when it says -- they made it

19  clear before this that it was an Israeli company, and when

20  they say that Mr. Zohar came with a plan in 2017, and his

21  plan was cooked up with Mr. Douer --

22        THE COURT:  Okay.

23        MR. ANDRE:  And it says that they were trying to

24  get rich --

25        THE COURT:  Are you presuming that -- I have no

1    idea what ethnicity Mr. Zohar is or Mr. Douer.  Are they --

2    are they Jewish?  I don't know.  And -- but you're

3    presuming a dog whistle here that because they used these

4    names that it's racist?

5         MR. ANDRE:  No, Your Honor, I'm not saying it's

6    racist.  I'm saying it's playing on cultural stereotypes.

7         THE COURT:  No, racism, cultural ster -- whatever

8    you want to call it.  It's anti-Israel.

9         I don't see anything in here that has anything to

10   do with anything that is ethnic or racial or anti-Israeli

11   or anything.  I don't see anything in here that's like

12   that.

13        MR. ANDRE:  Well, there was a series of questions

14   about Mr. Douer, who was going stand to make over $120

15   million.  This was a question of one of our witnesses.

16        THE COURT:  Okay.

17        MR. ANDRE:  Now, Mr. Douer was not a witness in

18   this case.

19        THE COURT:  Because he avoided service.  And he

20   wouldn't -- he intentionally -- he's the guy that wouldn't

21   take service, right?

22        MR. ANDRE:  That's correct.

23        THE COURT:  And so he owns a hundred percent.

24   He's going to make $120 million, and he -- and he's not

25   going to show up at trial.  And he, in fact, avoided

1   getting -- having his deposition taken so they wouldn't

2   have his testimony.  And the reason he didn't want his

3   testimony taken, in my opinion, it was pretty clear, was

4   because of the concerns that you-all had that if he was

5   asked about what he did in terms of the continuation

6   patents and what existed back in the 2000s, those answers

7   might not be very good for you.

8        But there's nothing in this that has anything to

9   do with -- again, with anything that's of any ethnicity or

10  racism or prejudice.  There's nothing here.

11       MR. ANDRE:  Your Honor, I don't know what

12  relevance -- and there was a series of questions along this

13  line.  I won't go through --

14       THE COURT:  You don't know what relevance it had

15  to a person that owns 100 percent of the company and owns

16  51 percent of the Plaintiff hid from being served and

17  refused to come to trial, and he's going to make $120

18  million?  You don't know what relevance that might have?

19       MR. ANDRE:  Well, Your Honor, it's not relevant to

20  whether or not Amazon infringes.  It's not relevant --

21       THE COURT:  It's -- it is totally relevant to

22  the -- the main issue in the case, which was how did they

23  go about getting this patent after they'd already seen the

24  product?  It was totally relevant.

25       And the fact that the person who -- the single

1   person who had that information made it impossible for

2   himself to be deposed and would not come to trial was

3   absolutely, absolutely relevant.  And if it weren't,

4   there's no objection here.

5          MR. ANDRE:  Your Honor, we'd already moved in

6   limine on this and lost.

7          THE COURT:  I -- limine has nothing to do with

8   this.  Limine has nothing to do with this.

9          The question was asked and answered.  You didn't

10  come up and say, Judge, they violated the motion in limine

11  here, did you?

12         MR. ANDRE:  No, Your Honor, this was within the

13  motion in limine.  We lost on the motion in limine.  We

14  moved --

15         THE COURT:  So -- so --

16         MR. ANDRE:  -- to exclude this testimony from

17  Mr. Douer, anything regarding --

18         THE COURT:  So there's -- there's no objection

19  here to relevance, is there?

20         MR. ANDRE:  No, Your Honor, there's not.

21         THE COURT:  Okay.

22         MR. ANDRE:  Your Honor, and I guess I'm catching

23  the tone from Your Honor, so I won't waste too much more of

24  your time on this, but I do want to say that they

25  continue -- repeatedly argued the irrelevant issues to the

1   jury about the abandonment issue.  You did give a curative

2   instruction, but they nonetheless continued to argue it.

3          And they also continued to bring up the fact that

4   this was filed years after, which I think Your Honor,

5   obviously, has already decided that that's -- would have

6   been relevant.  We don't think it's relevant.  We think we

7   played within -- by the rules.

8          THE COURT:  What I want you to focus on, because

9   of the allegations that you made, is any evidence that you

10  have that the lawyers on behalf of Amazon took -- took --

11  did anything during the course of trial that was the basis

12  of anyone on Freshub's ethnicity or heritage or race or

13  anything like that.

14         I want you to focus on whatever you have.  Because

15  I'll tell you, when I got that, I was extremely offended by

16  these allegations.  And why?  Because it intimates that I

17  would have, as a trial judge, allowed that kind of evidence

18  to come in and not done anything about it, which means

19  you're alleging that I'm complicit in it.

20         And I went -- I've gone back everything I can do

21  to remember if there was any moment where, first, I thought

22  anything inappropriate was said.  I don't.

23         But, number two, was there any moment where you

24  did -- you did what you were supposed to do, which was

25  object to it during the course of the trial?  If something

1   had been said, we could have addressed it.  If necessary, I

2   could have given a curing objection.  None of that.  This

3   issue was never raised during trial, not once.

4         And so I want you to tell me what happened during

5   trial that was inappropriate that Amazon -- that Amazon did

6   and your basis for making the allegations that you did,

7   because they're serious.

8         And, you know, I'm not certain that I don't have

9   to take some action with respect to you making these kind

10   of allegations against them if they're unfounded.

11         So this is your chance to -- to -- to explain to

12   me why you would make these kind of allegations against

13   Amazon and their lawyers, and me, since I was sitting

14   there, and I also took no action.

15         MR. ANDRE:  Your Honor, let me be very clear here.

16   This is not any allegations against the Court.  And maybe I

17   should have objected.  Let me be very, very clear here.  We

18   don't think the Court was complicit in this at all.  We

19   think most of this happened in the closing argument.  We

20   think it was tied together.  And maybe -- it's been always

21   my policy, it is argument.  And --

22         THE COURT:  Tell me anything -- any place where

23   the lawyers for Amazon did any -- asked a question, put on

24   evidence, did anything that is the foundation for your

25   argument that you deserve a new trial because of

1  inappropriate ethnic or heritage comments or evidence that

2  was put in.

3       MR. ANDRE:  Your Honor, I think the majority of

4  our brief was -- was focused on that we needed a new trial

5  because of the attack on the Constitution.

6       THE COURT:  Mr. Andre, I'm going to give you one

7  more chance.

8       MR. ANDRE:  What I'm saying, but with respect to

9  the -- I think our brief, we made it very clear, they asked

10 questions that were -- in the closing argument -- they

11 asked about the money, the situation of how much money the

12 inventor would make.

13      THE COURT:  And what -- how is -- how does that

14 relate to his ethnicity or his heritage?

15      MR. ANDRE:  Well, Your Honor, I don't --

16      THE COURT:  I haven't had a trial where the

17 person -- someone has been asked how much money they're

18 going to make.  And it goes -- that's -- so I want you --

19 this is your last chance because we're going to move on.

20      You've made incredibly harsh accusations against

21 the lawyers.  And I'm always reminded of -- there was

22 someone who -- a political person who said:  Where do I go

23 to get my reputation back?

24      If you are, on behalf of your client -- and this

25 goes to every lawyer on your team that signed off on this

1   by filing of the pleading in my Court that intimates that

2   anyone on behalf of Amazon or Amazon did anything that was

3   inappropriate because of your client's ethnicity or

4   heritage or race, this is your chance to tell me what that

5   was.  Because, again, I'm taking it -- I'm taking -- if you

6   are unsuccessful in persuading me, I'm taking very

7   seriously into consideration what I have to do in response

8   to your having filed this kind of motion.

9        MR. ANDRE:  Your Honor, let me start by saying,

10  this is -- the buck stops with me, and this is on me.  So

11  Paul Andre is the guy that you need to -- to direct any

12  attention to.  The team -- this is my call.

13        Second, the information we provided in our brief,

14  I think, was such that the -- the question of coming to the

15  courthouse and cooking up a scheme to get rich and the fact

16  of how much money they were making, I think that is a --

17  once again, it was not meant to be any type of

18  anti-religious or anything else, it was just plain old

19  cultural stereotypes.

20        That being said, the closing argument, I think, is

21  very telling.  I think that's something maybe I should have

22  objected.  I thought it was too late to do so, maybe it was

23  the wrong tactic.  But the closing argument was very

24  telling.

25        The assault on the patent system, the assault on

1   the fact that these people are coming to here, and this is
2   the tip of the iceberg, this was a company coming in to get
3   rich and go after all U.S. companies.  I think that is
4   something that you cannot -- you should not be able to say
5   in closing arguments.
6           I cannot for the life of me figure out why those
7   type of statements were made, and -- and obviously -- and,
8   Your Honor, this was -- it was in the heat of the moment.
9   I probably should have objected, but as a policy, I didn't.
10  Closing arguments, they are arguments, and I didn't make
11  any such -- didn't make any such objection.  I'm sorry now
12  that I didn't.
13          THE COURT:  Is there anything else you wanted to
14  add in support of your motion?
15          MR. ANDRE:  Your Honor, I think I've said what I
16  came -- said what I had to say, so...
17          THE COURT:  Mr. Hadden, who's going to argue this
18  on behalf of Amazon?
19          MR. HADDEN:  Your Honor, I was going to argue the
20  JMOL and non-infringement, if I could, at first.  If you'd
21  you rather hear my new trial motion, my partner, Saina
22  Shamilov, will handle that.
23          THE COURT:  Yeah, I'd like a response to what
24  Mr. Andre just said, if that would be okay.
25          MR. HADDEN:  Go ahead, Ms. Shamilov.

1        MS. SHAMILOV:  Thank you, Mr. Hadden.

2        Good morning, Your Honor.  Saina Shamilov on

3   behalf of Amazon.

4        This is a difficult argument for me because the

5   allegations -- I submitted a declaration of my background,

6   and the allegations that were made hit right in my heart.

7        At no point during trial did anyone on our team

8   raise any Jewish stereotypes, mention Judaism, any

9   religious affiliations of anyone, or presented anything

10  that the Waco community would interpret as a dog whistle,

11  right?  What -- on the cultural stereotypes, there was

12  absolutely nothing in the record.

13        Now, that the company was from Israel is a fact.

14  Freshub's counsels -- counsel themselves offered that to

15  the jury, right?  Repeatedly, through multiple examinations

16  of witnesses, the Israeli affiliation was put in by

17  Freshub's counsel to the jury.

18        Now, the issues that Paul Andre, Mr. Andre just

19  raised as supposedly attacks on Jewish stereotypes were not

20  that at all, right?  They were -- just as Your Honor just

21  noticed, they were about biases, they were about why

22  someone who has an interest and control was not there and

23  dodged service, right?  They were about facts directly

24  relevant to the issues in the case that the jury had to

25  resolve.

```
1              And the filing of this brief alleging an
2   incredibly serious -- right?  These are very serious
3   allegations -- not only tarnished, you know, or went to our
4   representation, but they were actually picked up by press,
5   including a very reputable Jewish publication.  The
6   title -- it's titled with anti-Semitism in it, mentioning
7   me personally as someone involved who was cross-examining a
8   witness and was talking about financial statements, making
9   sure that the jury understood that the figures were not in
10  dollars but in shekels, right?
11             The consequence of this brief is not just asking
12  for a new trial.  The consequence of this brief is
13  affecting reputation personally of the lawyers of our team
14  that went beyond just the filing.  It's now out there --
15             THE COURT:  My recollection -- help me on this.
16  My recollection was that the reason that the
17  dollars/shekels issue came up is because one of the
18  document -- something you-all were talking about had to do
19  with a number, and you -- that you-all were simply letting
20  the jury know that you had to -- I think they were in
21  shekels, and they had to be translated into dollars.
22             But it was -- it was nothing more -- it could have
23  been pesos or yen, but it happened to be shekels because
24  that's the form that that money was in.  That was my
25  recollection of it.
```

1          MS. SHAMILOV:  That was exactly that, Your Honor.

2    Those were financial statements -- yearly financial

3    statements that included figures, profits, losses, right,

4    revenue generated, and they were just numbers, and the jury

5    needed to know what these numbers are, right?  I mean,

6    otherwise, you think four million is $4 million instead

7    of --

8          THE COURT:  Right.

9          MS. SHAMILOV:  -- something different.  That was

10   the only reason that question was asked, right?

11         THE COURT:  That was -- that was my recollection,

12   as well.  I just wanted to confirm.

13         MS. SHAMILOV:  That's exactly it, Your Honor.

14         And -- and you've already alluded to that when

15   Mr. Andre was talking, but if you look -- read their brief

16   with respect to new trial, this -- there were so many wrong

17   things that we've done, right?

18         And -- and Mr. Andre again said it started at

19   opening all the way through the closing.  And not once, not

20   once did they object on the basis that they raised the

21   wrongs were made in their brief, right?  There was not a

22   single objection on "us versus them," which was absolutely

23   not the theme that was put by us.  There was no objection

24   on us drawing Jewish stereotypes, cultural stereotypes, any

25   of that, right?

 1         I mean, if you're -- to me, if you're a lawyer

 2    representing counsel -- you know, client, and someone does

 3    something that you think is a dog whistle, you'll be up

 4    immediately objecting to it, right?  You wouldn't just sit

 5    there and then only object or raise the issue after the

 6    jury went against you, right?

 7         None of the -- not a single objection was made on

 8    the basis that they say we've committed the wrongdoing so

 9    egregious that requires a new trial, so egregious --

10    because they acknowledge the objection was not made -- that

11    it violated the integrity of our legal system and of this

12    Court, and the only remedy is a new trial, right?  That was

13    just not the reality that took place during the trial.

14         I can go on, Your Honor, and address individual

15    statements that Paul Andre -- Mr. Andre put on, and I

16    apologize for the emotional response.  It just became very

17    personal.

18         THE COURT:  Here's the way I see it.  The attack,

19    as you just noted, was against you-all.  And -- and like I

20    said, I -- I took it the same way against me.  And the idea

21    that you-all would have been allowed to make these -- I

22    guess sometimes if you're not the dog, you don't hear the

23    dog whistle, but, you know -- because I certainly heard

24    nothing during the course of the trial that I -- I mean, I

25    was paying attention.  I remember the discussion about

1   having to say it was shekels and -- and all that, but I

2   remember nothing that was in any way anti-Semitic,

3   anti-Israel, anything.

4           And -- and so I'll take Mr. Andre at his word that

5   that wasn't what they intended.  But since the attack was

6   against you and your firm, you certainly -- you are welcome

7   to say whatever you care to.  You don't need to, probably,

8   but if you feel it'd be better for you to say anything else

9   to get it on the record, I'm happy to give you whatever

10  time you want to respond.

11          I'm also happy for you to pass -- to pass the

12  microphone back to Mr. Andre and get this -- and we can

13  move on from this motion.

14          MS. SHAMILOV:  I don't think I need to say

15  anything more, Your Honor, on the new trial.

16          THE COURT:  Mr. Andre, anything else on the new

17  trial?

18          MR. ANDRE:  Nothing on it, Your Honor.  I just

19  want to say that there was no -- it was never meant to be a

20  personal attack on any individual lawyer at Amazon, or

21  obviously, as I said earlier, I have nothing but respect

22  for the -- Your Honor and the Court and --

23          THE COURT:  Well, how would you -- Mr. Andre, if

24  the tables were turned and -- and this motion had been

25  filed against you and your firm, how would you have taken

1   it?  Would you not have taken offense?

2           MR. ANDRE:  Probably not, Your Honor, to be candid

3   with you, just because I've been called everything under

4   the sun by opposing counsel.  So I don't take this very

5   personal.

6           THE COURT:  Okay.

7           MR. ANDRE:  Just -- that's just who I am maybe.  I

8   thought this was an issue where the evidence was so

9   powerful -- I mean, as I sit through this trial, I watched

10  witnesses perform, I cannot explain the -- the jury

11  verdict.  I just simply can't explain it because the

12  evidence was so overwhelming.

13          And so the -- the thought that the theme of the

14  case was an "us versus them" I thought was very clear.  It

15  was never meant to be anything about anti-religion or

16  anti-Semitic.  And to the extent that was taken, we tried

17  to clear it up in the reply report.  We -- if anyone took

18  it that way, I do apologize, and it was not my intent.

19          It was simply to say that there were -- you know,

20  there are issues that came up at trial, and maybe we should

21  have objected more vigorously and not relied simply on the

22  good graces of the Court.

23          So I do apologize if Your Honor took any offense

24  whatsoever.  That brief, it was clearly not meant to insult

25  the Court or Your Honor, to say you were complicit.  It was

1   just an attempt to explain how a jury in Texas could have

2   found non-infringement given the record that was before it.

3          THE COURT:  I'll be back in a few seconds.

4          MR. ANDRE:  Thank you, Your Honor.

5          (Pause in proceedings.)

6          THE COURT:  The Court is going to deny the motion

7   for new trial filed by the Plaintiff.  We'll get a more

8   robust order out hopefully fairly quickly on that.

9          The next motion is -- and I'm also denying the

10  JMOL with respect to the fact that there was of evidence of

11  infringement.

12         I think -- help me out, Mr. Hadden, if I have it

13  right, if my clerk did me right, the -- the next motion is

14  yours for 101; is that correct?

15         MR. HADDEN:  Yes, Your Honor.

16         THE COURT:  And is there anything -- let me bounce

17  back just for a second to Mr. Andre or Mr. Palmer.

18         Is there anything else we need to take up behalf

19  of the Plaintiff?

20         MR. ANDRE:  No, Your Honor, just the -- the JMOL

21  and the motion for new trial.  You covered everything.

22  Thank you.  I appreciate your time.

23         THE COURT:  You bet.

24         Mr. Hadden?

25         MR. HADDEN:  Yes, Your Honor.

1        So these patents are ineligible under 101 as a

2   matter of law.  The claims recite only generic instructions

3   for achieving functional results, receiving a digital

4   order, translating the spoken order to text, and then

5   identifying or matching text to identify an item.

6        At this point, Your Honor, you know, those claims

7   that are generic and functional fail under both Step 1 and

8   Step 2.  There has been no waiver in this case.  Freshub's

9   argument that this was a jury issue and, therefore, was

10  subject to the deadline triggered by the verdict rather

11  than through a judgment is not correct.

12       Of course, patent ineligibility is a question of

13  law, not a jury issue.  Both Step 1 and Step 2 are

14  questions of law, not jury issues.  So that limit doesn't

15  apply.

16       And then with respect to the jury's failure to

17  fill out the verdict form on the conventionality questions,

18  that is not a waiver of the ultimate issue of patent

19  ineligibility.  It does prevent Your Honor or us asking

20  Your Honor to enter facts that the jury was asked to find

21  in that verdict form.  But Amazon's position has been since

22  the beginning of this case, when we filed our motion to

23  dismiss and also at summary judgment, that this is not a

24  case in which auxiliary fact-finding by the jury was

25  required to determine the 101 issue.

1          This is a case where the patents are ineligible on

2     their face based on the intrinsic record.  And so those

3     findings are not required to reach the ultimate issue that

4     the patents are ineligible.

5          THE COURT:  I couldn't tell, Mr. Hadden, if you're

6     finished.

7          MR. HADDEN:  I'm finished, Your Honor.

8          THE COURT:  Okay.  Thank you, sir.

9          A response, Mr. Hannah?

10          MR. HANNAH:  Yes, Your Honor.  Thank you.

11          Your Honor, there's absolutely waiver in this

12     case.  Rule 50(b) is relentless.  It specifically requires

13     Amazon to file within 28 days on an issue that the jury did

14     not decide.  The case law is clear, if you're a day late,

15     you're too late.  And that's -- that's just the way that

16     the federal rules read.  So there's absolutely a waiver

17     because the motion was filed late.  It was filed three

18     weeks late, and we can't get around 62 of the federal

19     rules.

20          And, furthermore, this is a classic case of

21     waiver.  We all sat in the courtroom in which the -- Your

22     Honor read the verdict, and there was a blank space on

23     Question 3.  And we all looked over, and Your Honor gave

24     Amazon's a chance -- counsel a chance to send the -- send

25     it back.

1          And so we looked over.  They talked about it.

2    There was a pause.  Everyone was silent in the courtroom.

3    And they looked at Your Honor, and they said:  It's fine.

4    We're just going to let it stand.

5          That is textbook waiver.  They're sitting there.

6    They considered it.  Your Honor gave them an opportunity to

7    address it right -- right then and there, and they said:

8    No, thank you.

9          And so that right there is dispositive of the

10   issue.  The question went to the jury.  It was not

11   answered, and they did nothing about it.  They waived their

12   right to be heard on the 101 issue.

13         And then we get their motion.  And even setting

14   aside the waiver issues, they don't even address Step 1 in

15   the motion.  They just assumed that Your Honor had granted,

16   when there's no order, there was nothing about that.  So

17   they were required to put an analysis under Step 1 in their

18   opening brief, and they failed to do so.

19         Looking at the patents, they do not describe an

20   abstract idea.  You can look at, for instance, the '810

21   patent, Claim 1 talks about a distributed system, a voice

22   processing system.  It teaches you exactly how to form this

23   system with a network interface, a computer.  It tells you

24   exactly what to do.  You associate a unique identifier with

25   the remote system.  It tells you how you're going to

1   process this.  And then you send it to the back end.

2          And then the back-end system, it also describes --

3   it tells you exactly what the components are and how you're

4   going to do this.  In terms of receiving the -- the order,

5   you're going to do something with that.  And here in the

6   '810 patent, you translate only a portion of that to text.

7   You use that text to do something.  It tells you what to do

8   to identify an item.

9          Then what are you going to do after you identify

10  that item?  You're going to associate it with a user, and

11  you're going to enable it to be displayed on a -- on a

12  device.  And then you're going to send it to an item

13  provider.

14         So it tells you exactly what the system is, what

15  the components are, and how you're going to do that, which

16  is not an abstract idea.  This is -- it's a concrete

17  solution.

18         And then, furthermore, when we get to Step 2,

19  which Your Honor knows we don't need to get to if we get

20  past Step 1, but Step 2, again, was not fully -- was not

21  fully addressed.

22         For No. 1, again, there's a factual finding --

23  there's no factual finding from the jury that this was

24  not -- that this was a conventional technique.  And, in

25  fact, the jury's verdict confirmed that it was not

1  conventional, and that they found that the patents were

2  valid over all the different components and the testimony

3  that they found that was offered during -- during the

4  trial.

5       The Defendants, in their brief, again, they don't

6  even address the ordered combination of the elements and

7  how those interplay together.  And they don't specifically

8  address each claim and all of the elements, which is what

9  Your Honor has told the -- told Amazon they needed to do

10 time and time again throughout this case.

11      And so there's just a complete lack of proof and a

12 lack of analysis, particularly in -- in their motion.

13      And then I think finally is, you know, this

14 argument that they say that this technology preempts

15 everything, but then they also argued that there are --

16 their system does not infringe.

17      I think that cuts against them on their argument,

18 and specific -- specifically with regard to Step 2 and

19 there being this idea that there's a preempt --

20 preemptive -- that it's going to cover all technologies

21 related to voice processing.

22      There's a specific system and a specific order,

23 and that's what the Court -- that's what the jury found in

24 their validity finding, and -- and we don't have a verdict

25 from the jury finding otherwise.

1          Unless Your Honor has any -- any questions --

2          THE COURT:  I don't.

3          Mr. Hadden?

4          MR. HADDEN:  Yes, Your Honor.  I'm not going to

5    address the merits of the 101 analysis.  Again, we've

6    briefed that a couple times to Your Honor.  I'm not going

7    to waste your time on that.

8          Of course, our view is that this is a case where

9    the intrinsic evidence alone is dispositive.  So there was

10   no need for the jury fact-finding that they didn't make,

11   and so the legal issue is preserved.

12         And the -- Rule 50(b), this is not a jury issue.

13   The jury was not asked to decide either ineligibility

14   overall or even the Step 2 issue of whether there was an

15   inventive concept.  There is just a special verdict to

16   answer this specific factual question regarding

17   conventionality.  That's not required for a finding of

18   ineligibility in this case, Your Honor.

19         THE COURT:  I'll be back in just a second.

20         MR. HADDEN:  Thank you, Your Honor.

21         (Pause in proceedings.)

22         THE COURT:  The Court's going to deny Amazon's

23   motion.

24         And I believe that's all that we have for this

25   morning; is that correct?

1        MR. HADDEN:  Yes, Your Honor.

2        MR. HANNAH:  Yes, Your Honor.

3        THE COURT:  Thank you -- I'm sorry, Mr. Andre, is

4   that everything we have?

5        MR. ANDRE:  It is, Your Honor.  Thank you for your

6   time.

7        THE COURT:  Thank you.

8        MR. HADDEN:  Thank you, Your Honor.

9        THE COURT:  Thank you-all.

10        MS. SHAMILOV:  Thank you, Your Honor.

11        THE COURT:  Hope to see you-all again.  Take care.

12        (Hearing concluded.)

1                          <u>CERTIFICATION</u>

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9    <u>/S/ Shelly Holmes        </u>          <u>10/22/2021  </u>
     SHELLY HOLMES, CSR, TCRR                  Date
10   CERTIFIED SHORTHAND REPORTER
     State of Texas No.: 7804
11   Expiration Date: 10/31/2021

12

13

14

15

16

17

18

19

20

21

22

23

24

25