# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

FRESHUB, INC.,  FRESHUB, LTD.,                     §
        *Plaintiffs*                               §
                                §
-vs-                                               §            6:21-CV-00511-ADA
                                §
AMAZON.COM INC.,  AMAZON DIGITAL                   §
SERVICES, LLC,  PRIME NOW, LLC,  WHOLE             §
FOODS MARKET INC.,  WHOLE FOODS                    §
MARKET SERVICES, INC.,  AMAZON.COM                 §
SERVICES LLC,                                      §
        *Defendants*

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs Freshub, Inc. and Freshub, Ltd's (collectively "Freshub")

Motion for Judgement as A Matter of Law under Fed. R. Civ. P. 50(b) and Motion for New Trial

on Infringement and Damages under Fed. R. Civ. P. 59(a). Dkt. 277. The Court heard the parties'

arguments on October 19, 2021. After careful considerations of the relevant facts, applicable law,

and the parties' oral arguments, the Court **DENIES** both of Freshub's Motions.

## I.      BACKGROUND

Plaintiff Freshub initiated this patent infringement action on June 24, 2019, against

Defendants Amazon.com Inc., Amazon.com Services, LLC, Prime Now LLC, (collectively,

"Amazon") and Whole Foods Market Services, Inc. ("Whole Foods") (together, "Defendants").

Freshub accuses Defendants of infringing claims 1 and 6 of U.S. Patent No. 9,908,153 ("the '153

Patent"), claim 1 of U.S. Patent No. 10,213,810 ("the '810 Patent"), and claims 20 and 30 of U.S.

Patent No. 10,232,408 ("the '408 Patent") (collectively, the "asserted patents").

Jury trial commenced on May 17, 2021. Dkt. 48. At the conclusion of a five-day trial, the

jury returned a verdict finding that all asserted claims are valid, but none of the asserted claims

1

were infringed by Defendants. Dkt. 254 (Jury Verdict Form). On August 11, 2021, Freshub filed the instant motions (Dkt. 277), which were subsequently fully briefed (Dkt. 284, Opposition; Dkt. 291, Reply). The Court heard arguments regarding the motions on October 19, 2021 (Dkts. 295, 296).

## II.     MOTION FOR JUDGEMENT AS A MATTER OF LAW

### A.     Legal Standard

"Under Rule 50, a court should render judgment as a matter of law [(JMOL)] when . . . there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prod., Inc*., 530 U.S. 133, 149 (2000) (quoting Fed. R. Civ. P. 50(a)(1)). "In the Fifth Circuit, JMOL is appropriate if the facts and inferences point so strongly and overwhelmingly in favor of one party that a reasonable jury could not have concluded otherwise." *Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1294 (Fed. Cir. 2012) (citing *Armendariz v. Pinkerton Tobacco Co*., 58 F.3d 144, 148 (5th Cir.1995)). "There must be a conflict in substantial evidence to create a jury question," which means that "a jury's determination must be supported by substantial evidence." *Id*. (citations omitted). If "reasonable persons could differ in their interpretations of the evidence, then the motion should be denied." *EEOC v. EmCare, Inc*., 857 F.3d 678, 682 (5th Cir. 2017) (quoting *Bryant v. Compass Grp. USA Inc*., 413 F.3d 471, 475 (5th Cir. 2005)). A court must be "'especially deferential' to jury verdicts . . . unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Id*. at 683 (quoting *EEOC v. Boh Bros. Constr. Co*., 731 F.3d 444, 451 (5th Cir. 2013)).

Similar to a motion for summary judgment, when considering a motion for a judgment as a matter of law a "court must draw all reasonable inferences in favor of the nonmoving party, and

it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id*. at 151. "That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Id*. (quotation and citation omitted).

### B.    Discussion

Freshub moves for judgment as a matter of law under Fed. R. Civ. P. 50(b) that Defendants have infringed the asserted patents. As an initial matter, Freshub as the plaintiff bears the burden at trial to show that the accused devices practice every element of the asserted claims. 35 U.S.C. § 271(a); *see also Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc*., 631 F.3d 1279, 1284 (Fed. Cir. 2011). The absence of even a single limitation defeats a charge of infringement. *Gen. Am. Transp. Corp. v. Cryo-Trans, Inc*., 93 F.3d 766, 771 (Fed. Cir. 1996). "A determination of infringement is a question of fact that is reviewed for substantial evidence when tried to a jury." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co*., 501 F.3d 1307, 1311 (Fed. Cir. 2007).

Freshub argues in its motion that the jury had substantial evidence of Defendants' infringement of the asserted patents. Dkt. 277 at 2–9. However, the correct standard is whether there is substantial evidence to support the jury's verdict of non-infringement. *Mettler-Toledo*, 671 F.3d at 1294 ("[A] jury's determination must be supported by substantial evidence."). The Court finds that Defendants presented substantial evidence during trial that at least some of the claim elements were not met by the accused products and therefore the jury's determination of non-infringement is supported by substantial evidence. Accordingly, the Court finds that Freshub's motion for judgment as a matter of law should be denied.

### 1. The "non-transitory memory" claim limitation ('153 cl. 1 and 6; '810 cl. 1; '408 cl.30)

Freshub asserts that Amazon's Echo, Fire TV, and Fire Tablet devices have infringed the asserted patents. Freshub's expert Dr. Medvidovic agreed that the claimed "non-transitory memory" is a physical structure, like a hard drive, and under his theory the server-side "non-transitory memory" is in those remote cloud servers that power the Alexa functionality. Dkt. 284 at 4. Defendants' expert Dr. Johnson testified at trial that the accused devices "do not include any parts of the server" and therefore do not infringe, but Freshub contends that it has always accused the consumer Alexa devices with the backend Alexa system of infringement. *Id*. at 4; Dkt. 291 at 3. The jury heard competing testimonies from experts from both sides, weighed their credibility, and eventually found for the Defendants. Drawing all reasonable inferences in favor of the Defendants, the nonmoving party, the Court finds that there is substantial evidence to support the jury's determination. *See Reeves*, 530 U.S. at 150 (When considering a motion for JMOL a "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.").

Freshub contends that Defendants' first fact witness, Dr. Strom, admitted infringement of claim 1 of the '153 patent and produced a table comparing each element of that claim with Dr. Strom's testimony. Dkt. 277 at 5–6; Dkt. 291 at 1. However, when asked about the claim element "a first computer; non-transitory memory that stores instructions . . .," the evidence produced by Freshub only shows that Dr. Strom admitted that the Echo product "has memory" — he did not admit that the Echo product has "***non-transitory*** memory." *Id*. at 5. Similarly, regarding the claim element "a second computer; non-transitory memory that stores instructions . . .," the produced testimony only shows that Dr. Strom admitted that "they [the accused products] contain

4

memory"— not "non-transitory memory" as required by the claims. *Id*. at 6. Thus, the Court does not find that the evidence overwhelmingly favors Freshub.

### 2. The *"identify an item corresponding to the text" claim limitation ('153 cl. 1, 6)*

Claims 1 and 6 of the '153 patent require computer instructions to "identify an item corresponding to the text" translated from the "digitized order" and adding the item to a list. Defendants contend that the accused Alexa feature "does not infringe because users can only add ***words*** to their Alexa shopping list, not '***item[s]*** corresponding to' those words." Dkt. 284 at 7. Defendants point out that Dr. Medvidovic testified at trial that "if a user says: Alexa, add 'sad' to my shopping list, the word 'sad' will appear on the list," and John Love, Director of Alexa Shopping, testified that his six-year-old added the word "poopy poop" to their Alexa shopping list, but words "sad" and "poopy poop" are not an "item corresponding to the text" as the claims require. *Id*. Dr. Johnson also testified that the claims require the translated "text" and the "item corresponding to the text" to be separate. *Id*. at 7–8.

Freshub contends that Dr. Strom referred to the word "milk" on Alexa shopping list as an "item" on cross examination, and therefore admitted that the element was met. Dkt. 277 at 11. Defendants counter that Dr. Johnson testified that while it may be normal to say "milk is an item on my shopping list," the asserted patents use the word "item" to refer to what is identified from the translated text. Dkt. 284 at 8. Freshub asserts that Dr. Johnson applies a special meaning to the claim term "item" and his opinion was therefore "critically flawed because it was based on a legally improper construction." Dkt. 277 at 10. However, the Court did not provide any construction for the claim term "item" and Dr. Johnson applied the ordinary meaning of "item" based on his understanding of the term in view of its use in the patent. Thus, the Court does not see any critical

5

flaw in his opinion and the jury is free to judge the credibility of the witnesses and weigh their testimonies.

### 3. The "match[] . . . text . . . to a text description" ('408 cl. 20, 30) and "use the text . . . to identify an item corresponding to the text description" ('810 cl. 1) claim limitations

Freshub argues that these claims are infringed when users use Alexa to add products to a shopping cart. Dr. Medvidovic testified that Alexa's Intelligence Choice Engine ("ICE") uses the text translated from the automatic speech recognition ("ASR") to match or identify a text description associated with a unique product identifier. Dkt. 277 at 8; Dkt. 291 at 4. On the other hand, Dr. Johnson testified that these claims are not infringed because by the time Alexa uses ICE to search for potentially relevant products, the ASR text output is "long gone." Dkt. 284 at 9. Instead, ICE uses intents created by the natural language understanding ("NLU") component—not text from ASR—to search for an item. *Id*.

Further, Dr. Johnson testified that that if Alexa were to work in the same way as the claims, it would use the words in an utterance like "Alexa, I want to buy a PS4 game," to find a matching text description, but Alexa instead determines the meaning of the request, e.g., that the user wants a video game and that a PS4 is a type of game system, and then uses additional contextual information like popularity, purchase history, and delivery preferences to recommend a game. *Id*. at 10. Therefore, Alexa's recommendation may or may not include one or more words spoken by the user. *Id*. Similarly, Mr. Love, Director of Alexa Shopping, testified that "what you'll often find is the No. 1 ranked product has no relationship textually to the request." *Id*. As an example, he testified that a request for "best book" will result in a specific title—e.g. "Where Do the Crawdads Sing paperback," which is a "zero percent match" to the text. *Id*. And, "kid's aspirin" may result in "Motrin with acetaminophen" or "Tylenol," neither of which matches the text. *Id*. Mr. Love

further explained why matching text would not work for Alexa—it would result in an unmanageable list of far too many products based on the large number of items in Amazon's catalog, and it would also return less relevant products, such as a book literally called "best book" instead of a book awarded best book of the year. *Id.*

Again, the jury heard competing testimonies from witnesses from both sides, weighed the witnesses' credibility, and eventually found for Defendants. And there was substantial evidence to support the jury's determination. *See Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013) (affirming jury verdict as supported by substantial evidence despite competing testimony).

### 4.  Doctrine of equivalence

To assert infringement under the doctrine of equivalents ("DOE"), a plaintiff must prove either that the differences between the accused devices and claims are "insubstantial" or address "on a limitation-by-limitation basis" the function/way/result test for "each claim limitation." *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1360 (Fed. Cir. 2009); *UCB, Inc. v. Watson Labs. Inc.*, 927 F.3d 1272, 1284 (Fed. Cir. 2019); *Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1374 (Fed. Cir. 2014). Both approaches require "particularized testimony and linking argument." *Gemalto*, 754 F.3d at 1374.

Freshub contends that Defendants failed to address infringement under DOE for the '153 Patent. Dkt. 277 at 7. For its proof of infringement under DOE, Freshub states that Dr. Medvidovic explained how the "identify" element is met under DOE because the Accused Alexa Products "basically [] figure out which part of the user's utterance corresponds to the specific thing that needs to be included in the shopping list," "rel[y] on the textual characterization . . . to figure out what element is actually important . . . like apples," and "the output of that process would be

7

substantially the same result which would be the addition of that element to a shopping list." *Id*. However, these conclusory statements from Dr. Medvidovic are not sufficient to create a jury issue on DOE infringement. *See Akzo Nobel Coatings, Inc. v. Dow Chem. Co*., 811 F.3d 1334, 1343 (Fed. Cir. 2016) ("Broad conclusory statements offered by [an] expert are not evidence that satisfies this standard") (quotation and citation omitted).

In response, Defendants offered evidence from three witnesses explaining how the accused devices are different from the claimed invention and therefore do not infringe under DOE. Dkt. 284 at 12. Dr. Johnson testified that how Alexa discerns a user's intent solves a "massively different" problem of processing utterances without knowing "what comes next," i.e., Alexa does not merely ask the user to state what they want to buy and expect to receive an item name to identify from text. *Id*. Dr. Strom also discussed Alexa's use of far-field speech recognition and neural networks to understand user utterances— problems essential for Alexa to determine a user's intent but which are not solved by the asserted claims or part of their process of identifying an item from text. *Id*. And Mr. Love explained that the purpose of the Alexa shopping list—the sole accused feature for the '153 patent—is to "capture needs" at "different levels" depending on user preferences, not to find a product. *Id*. Even if Dr. Medvidovic's testimony for infringement under DOE is sufficient to create a jury issue, there are competing testimonies from witnesses from both sides, and therefore there is substantial evidence to support the jury's determination of non-infringement.

In view of the foregoing, the Court finds that there is substantial evidence and sufficient evidentiary basis for a reasonable jury to find that Defendants did infringe the asserted patents. *See Reeves*, 530 U.S. at 149. Regarding Defendants' non-infringement theories discussed above, the parties presented to the jury competing testimonies, which the jury weighed and eventually found

for Defendants. And the Court does not find that "the facts and inferences point so strongly and overwhelmingly in favor" of Freshub to warrant a JMOL. *See Mettler-Toledo*, 671 F.3d at 1294. Accordingly, the Court **DENIES** Freshub's Motion for Judgment as a Matter of Law.

### III.    MOTION FOR NEW TRIAL

#### A.    Legal Standard

The Court has discretion to grant a new trial "based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985). "A new trial will not be granted based on trial error unless, after considering the record as a whole, the court concludes that manifest injustice will result from letting the verdict stand." *Foradori v. Harris*, 523 F.3d 477, 506 (5th Cir. 2008). "To justify a reversal based on improper comments of counsel, the conduct must be such as to gravely impair the calm and dispassionate consideration of the case by the jury." *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585 (5th Cir. 1985). The moving party must timely object and show that the conduct went "far beyond the bounds of accepted advocacy before [the] court must grant a new trial." *Geoffrion v. Nationstar Mortg. LLC*, 182 F. Supp. 3d 648, 673 (E.D. Tex. 2016) (citing *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 284 (5th Cir. 1975)); *see also Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012). The burden is on the moving party to show a new trial is warranted. *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999).

#### B.    Discussion

Freshub's main basis for its Motion for New Trial under Fed. R. Civ. P. 59(a) is that Defendants "played on the stereotype of greedy Jewish executives of an Israeli company allegedly taking advantage of U.S. companies, to trigger religious biases and deepen the 'us vs. them' nationalistic divide in the minds of the jurors." Dkt. 277 at 15. To support its allegation, Freshub

asserts that it is unfairly prejudicial for Defendants to refer to Freshub as an Israeli company and to emphasize "irrelevant facts about Freshub's lack of profitability (and doing so in terms of Israeli shekels)." *Id*. at 14. However, as Defendants correctly point out, Freshub is in fact an Israeli company and Defendants only mentioned Israel when relevant or necessary to rebut Freshub's own statements at trial, including, e.g., discussing the fact that Freshub applied for funding from the Israeli government in response to Freshub's statement about its application for funding, and cross-examining a witness regarding meetings between Amazon and Freshub in Israel after Freshub asked about the same meetings on direct examination. Dkt. 284 at 16. Further, Defendants' counsel, herself a Jewish woman, asked about Freshub's financial records reflecting significant losses in Israeli shekels only because Freshub's financial records were reported in Israeli shekels. *Id*.

Significantly, while Freshub makes these bold allegations in its Motion for New Trial that "*[t]hroughout trial*, Defendants advanced 'us versus them' arguments along national and religious lines that biased the jury" and that "Defendants blew this Jewish stereotype 'dog whistle' *at every opportunity* to unfairly bias the jury" (Dkt. 277 at 12 and 14 (emphasis added)), Freshub never objected to Defendants' alleged play of the Jewish stereotype or pitting the community against a foreign company during the whole trial. Indeed, during the October 19, 2021, hearing, Freshub's counsel Paul J. Andre admitted that Freshub did not make a single objection on the basis that Defendants were pitting a community against a foreign company during either the trial or the closing argument. Dkt. 296 (Hearing Transcript) at 9–11.

It is an "elementary principle of federal law" that a party cannot raise misconduct objections for the first time on a motion for new trial. *See Curtis Publ'g Co. v. Butts*, 351 F.2d 702, 714 (5th Cir. 1965). Therefore, because Freshub did not object, its Motion for New Trial can be

granted only if it establishes that this is an "exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Reese v. Mercury Marine Div. of Brunswick Corp.*, 793 F.2d 1416, 1429 (5th Cir. 1986). Freshub thus asserts, at least implicitly, that the Court must grant a new trial to preserve its own integrity and public reputation. In making such an assertion, Freshub essentially accuses the Court of turning a blind eye to Defendants' highly prejudicial "arguments along the national and religious lines" "[t]hroughout the trial" made "at every opportunity." *See* Dkt. 277 at 12. The Court did not turn a blind eye to any racist or anti-Semitic conduct, because indeed there was none. Throughout the October 19, 2021 hearing, Freshub's counsel could not point to any concrete evidence—or indeed, any evidence at all—that Defendants made arguments that intentionally played into Freshub's Israeli ties or any Freshub witnesses' race, heritage, or religion. Dkt. 296 (Hearing Transcript) at 19–21. Freshub's counsel failed to articulate any coherent argument as to how Defendants' counsel engaged in any racist or anti-Semitic conduct at trial. Without any evidentiary support, these serious allegations are particularly disturbing.

The Court finds that Freshub's inflammatory allegations are nothing but baseless attacks on the integrity of this Court and the reputation of Defendants' counsel. Freshub's motion is apparently the result of its dissatisfaction with the verdict and counsel's difficulty in making sense of the unfavorable outcome, which is apparent from Mr. Andre's statements during the October 19 hearing: "I cannot explain the . . . jury verdict. I just simply can't explain it because the evidence was so overwhelming." Dkt. 296 (Hearing Transcript) at 29. However, a bitter losing party's difficulty in explaining its loss is never a proper basis for counsel to invoke baseless allegations of racism and anti-Semitism to request a new trial. Such vitriolic and unsubstantiated allegations are

not only shocking, but also offensive to this Court. And accusing Defendants' counsel of engaging in this conduct, without any evidentiary support, is similarly unacceptable.

By making such baseless allegations, Freshub's counsel has breached their duty to the Court. In fact, this is not the first time that Freshub's national counsel improperly conducted themselves before a federal district court. *See Finjan Inc. v. Juniper Networks, Inc.,* No. C 17-05659 WHA, Dkt. 669 at *7–8 (N.D. Cal. July 26, 2021) ("In no way does this order vindicate attorneys James R. Hannah, Lisa Kobialka, and Paul J. Andre. Their conduct was improper and frustrated the fairness of the proceedings. Judges in the future should take this into account when dealing with them in future cases."). Therefore, to preserve the integrity of the judicial process and to deter future improper conducts, the Court feels compelled to impose sanctions on all attorneys who signed Freshub's Motion for New Trial.

## IV.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Freshub's Motion for Judgment as a Matter of Law and Motion for New Trial (Dkt. 277). It is **ORDERED** that every attorney who signed Freshub's Motion for New Trial (i.e., Paul J. Andre, Lisa Kobialka, and James Hannah of Kramer Levin Naftalis & Frankel LLP, and John Palmer of Naman Howell Smith & Lee PLLC) shall complete thirty (30) hours of Continuing Legal Education (CLE) of legal ethics and shall certify his/her completion of the CLE hours to the Court within six months from the date of this Order.

**SIGNED** this 17th day of December, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE